E-FILED on   1/4/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAMBUS INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR, L.P.,<br><br>    Defendants. | No. C-05-02298 RMW<br><br>ORDER GRANTING RAMBUS'S MOTION TO DISMISS SAMSUNG'S AMENDED COUNTERCLAIMS AND GRANTING RAMBUS'S MOTION TO STRIKE<br><br>[Re Docket No. 48] |

    Plaintiff Rambus Inc. ("Rambus") moves to dismiss counterclaims in Counts IV, V, VI, and VII in the First Amended Answer, Affirmative Defenses, and Counterclaims ("FAA") filed by defendants Samsung Electronics Co., Ltd., Samsung America Electronics, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, L.P. ("Samsung"). Rambus further moves to strike Samsung's ninth affirmative defense of patent misuse and Samsung's counterclaim in Count X to the extent based on allegations of patent misuse or inequitable conduct.[1] Samsung

---

[1] Samsung's counterclaims in the FAA are brought by only Samsung Electronics Co., Ltd. and Samsung America Electronics, Inc.

1 opposes the motion. The court has reviewed the papers and considered the arguments of counsel.
2 For the reasons discussed below, the court GRANTS plaintiff's motion to dismiss and GRANTS
3 plaintiff's motion to strike with the understanding that Count X does state a viable claim for
4 prosecution laches. Samsung has twenty (20) days to amend its counterclaims.

## I. BACKGROUND

Rambus designs memory interface technology which it licenses to third parties for use in the manufacture of memory devices including memory components, memory modules, memory controllers and memory systems. Compl. ¶ 9. Rambus's complaint alleges Samsung's infringement of certain patents issued to Rambus by the United States Patent and Trademark Office. *Id.* ¶¶ 12-21.[2]

Among other businesses, Samsung makes, uses, offers for sale, sells and imports dynamic random access memory ("DRAM") components and modules. These include SDR SDRAM components or modules, Mobile-SDR SDRAM components, SDR SGRAM components, DDR SDRAM components and modules, Mobile-DDR SDRAM components, DDR SGRAM components, GDDR1 SDRAM components, and Uni-Transistor RAM components. FAA ¶¶ 10-11.

Until August 1998 Samsung employed Neil Steinberg ("Steinberg"), an attorney, full-time as in-house counsel. *Id.* ¶ 100. During "the Spring and Summer of 1998" Steinberg's employment with Samsung was covered by a written employment contract with Samsung for a specific term pursuant to which Steinberg was to work only for Samsung unless otherwise permitted. *Id.* ¶ 111. The FAA does not allege when Steinberg began his employment with Samsung or when he executed an employment agreement. In February 1998, without Samsung's knowledge, Rambus engaged Steinberg to provide "legal advice and strategies for the enforcement of legal claims, including patent claims against DRAM manufacturers, such as Samsung." *Id.* ¶ 101. Samsung alleges that at Rambus's request, Steinberg

---

[2] Samsung is also named as a defendant in related case C-05-00334 in which Rambus also alleges infringement by Hynix Semiconductor Inc. and Nanya Technologies of these and other patents.

>actively worked to help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs, including Samsung. Further, . . . Steinberg used information about Samsung's business and DRAM products in working for Rambus while he was under contractual and fiduciary duties not to disclose such information about Samsung's business or to use it contrary to Samsung's interests, regardless of whether such information was trade secret.

*Id.* ¶ 103. Neither Rambus nor Steinberg ever informed Samsung of Steinberg's "dual employment" by both Samsung and Rambus. *Id.* ¶¶ 105, 107. Samsung was not asked for and did not give informed consent to Steinberg's legal representation of Rambus during this time period. *Id.*

In August 1998 Steinberg ended his employment with Samsung. *Id.* ¶ 121. Thereafter, Steinberg continued his work for Rambus, including applying for and planning prosecution strategies for patents, document handling and retention and "extracting" royalties. *Id.* ¶ 123. In his representation of Rambus, Steinberg used information about Samsung's business and DRAM products. *Id.* During this time Steinberg did not inform Samsung of the nature or scope of his representation of Rambus and did not obtain the informed consent of Samsung relating to any work or representation of Rambus. *Id.* ¶¶ 124-25. Rambus did not inform Samsung of the nature of Steinberg's representation of Rambus, including the extent to which Steinberg handled matters adverse to the interest of Samsung. *Id.* ¶ 130.

Samsung alleges improper conduct on Rambus's part with respect to patent claims and patent enforcement. During the 1990s Rambus actively participated in meetings of the Joint Electron Device Engineering Council ("JEDEC"), a standard setting organization for the semiconductor industry, and improperly took information from those meetings to secure patent claims. *Id.* ¶ 142. In 1998 Rambus developed a litigation strategy to secure licenses of its patents that covered technical features of the SDRAM and DDR SDRAM standards that included destruction of documents relevant to its lawsuits. *Id.* ¶¶ 143-147. The litigation strategy included document destruction that allegedly occurred first in September 1998 and then at various times in 1999 and 2000. *Id.* ¶¶ 148, 150, 154, 157. In addition, during December 2000 Rambus was "actively litigating against numerous companies on antitrust, fraud, and patent claims." *Id.* ¶ 157.

1    In October 2000 Samsung entered into an SDR/DDR license agreement with Rambus to
2 license technologies covered by Rambus's patents, including specific aspects of SDRAM and DDR
3 technologies. ¶ 96. It is unclear whether Steinberg was still counsel for Rambus during this time.
4    Samsung alleges that Rambus has made assertions that Samsung was a "valuable business
5 partner" and Rambus wanted to "promote the valuable business alliance between them." *Id.* ¶ 98.[3]
6 Samsung also alleges that Rambus's continued silence regarding Steinberg's dual employment,
7 Steinberg's alleged use of Samsung confidential information, and Rambus's plan to extract royalties
8 from DRAM manufacturers constitute false representations to Samsung that Rambus was "still
9 interested in faithfully remaining a business partner with Samsung in their valuable business
10 alliance." *Id.* ¶¶ 109, 119, 132.
11    In 2005 Steinberg's representation of Rambus, including during the time of his employment
12 with Samsung, was "publicly revealed" during the legal proceedings in Rambus's patent
13 infringement suit against Infineon Technologies A.G., another DRAM manufacturer. *Id.* ¶ 110.
14 Rambus's destruction of documents in anticipation of litigation "and the full nature and extent of
15 unfair conduct by Rambus" were also publicly revealed. *Id.* ¶ 166.

## II.   ANALYSIS

17    Rambus moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss with prejudice Samsung's
18 amended counterclaims alleging (1) aiding and abetting breach of fiduciary duty to a current client
19 (Count IV), (2) aiding and abetting breach of fiduciary duty to a former client (Count V), (3)
20 intentional interference with contract (Count VI), and (4) violation of Cal. Bus. & Prof. Code
21 § 17200 *et seq*. ("Section 17200") (Count VII).
22    Rambus moves pursuant to Fed. R. Civ. P. 12(f) to strike (1) Samsung's Ninth Affirmative
23 Defense of patent misuse and (2) Samsung's counterclaim for declaratory judgment of

---

[3] In stating its Seventh Affirmative Defense - Estoppel, Samsung explains, "Rambus and Samsung, through a series of licenses and other ties, formed a valuable business alliance in which Samsung supplied products based on Rambus technologies to the marketplace." FAA ¶ 72. Samsung avers that as a result of this alliance Samsung became a major supplier of Rambus products. *Id.* It remains unclear, however, what licenses and ties there were between Rambus and Samsung other than the specifically alleged October 2000 SDR/DDR license, if any.

ORDER GRANTING RAMBUS'S MOTION TO DISMISS SAMSUNG'S AMENDED COUNTERCLAIMS AND GRANTING RAMBUS'S MOTION TO STRIKE
C-05-02298 RMW
SPT                                          4

unenforceability (Count X) to the extent based on allegations of patent misuse and inequitable conduct.

### A. Legal Standard

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept the facts alleged in the complaint as true. *Id.* "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Fed. R. Civ. P. 12(f) provides that the court may upon motion by a party "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

### B. Statute of Limitations

Rambus first argues that Samsung's counterclaims for a violation of Cal. Bus. Prof. Code Section 17200, aiding and abetting breach of fiduciary duty, and intentional interference with contract are time barred. The parties do not dispute that the factual allegations and events underlying the counterclaims at issue occurred outside the applicable statute of limitations.[4] Samsung contends, however, that its claims are not time barred because the discovery rule and the doctrine of equitable tolling apply to its counterclaims.

#### 1. Discovery Rule

As an initial matter, Rambus argues that the discovery rule, even if it were applicable, does not apply to Samsung's Section 17200 unfair competition claim. The discovery rule "delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise

---

[4] The statute of limitations is four years for an action pursuant to Section 17200. Cal. Bus. Prof. Code § 17208. The statute of limitations applicable to the claims of aiding and abetting breach of fiduciary duty and intentional interference with contract is two years. Cal. Code Civ. P. § 339.

1  to the claim." *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal.

2  App. 4th 884, 891 (2002).  In addressing a Section 17200 claim, a California court of appeals stated,

3  "[t]he 'discovery rule' . . . does not apply to unfair competition actions.  Thus, 'the statute begins to

4  run . . . irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke

5  the equitable tolling doctrine.'"  *Id.* (*quoting Stutz Motor Car of Am. v. Reebok Int'l, Ltd.*, 909 F.

6  Supp. 783, 795 (C.D. Cal. 1995)).  While Samsung might be able to rely upon the equitable tolling

7  doctrine, it cannot rely upon the discovery rule for its Section 17200 claim.  Samsung does not

8  contest this point in its current papers.

9         Second, Rambus argues that Samsung has failed to meet its burden to specifically plead facts

10  establishing that the discovery rule applies.  Where the complaint, on its face, would be time barred

11  unless the discovery rule were to apply, the claimant must "specifically plead facts to show the time

12  and manner of discovery *and* the inability to have made earlier discovery despite reasonable

13  diligence."  *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999) (emphasis in

14  original) (citations omitted).  *McKelvey* sets forth a three prong test for invoking the discovery rule.

15  The claimant must plead facts showing "(a) lack of knowledge; (b) lack of means of obtaining

16  knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an

17  earlier date); [and] (c) how and when he did actually discover the fraud or mistake."  *Id.* at 160 n.11

18  (citation omitted).  Moreover, "[t]he burden is on the plaintiff to show diligence, and conclusory

19  allegations will not withstand demurrer."  *Id.* at 160 (citations omitted).

20         In *McKelvey*, the plaintiffs claimed injuries caused by the defendant's pollution and

21  contamination of the area surrounding defendant's testing facilities.  The plaintiffs argued that they

22  had "no actual knowledge or suspicion about the full nature of their injuries or [defendant's]

23  responsibility for those injuries."  *Id.* at 161.  The court concluded that the plaintiffs had failed to

24  establish the applicability of the discovery rule because it was undisputed that there were newspaper

25  accounts of the contamination which, whether true or not, served as sufficient notice to put a

26  reasonable person on inquiry.  *Id.* at 161-62.  The court held that a party is charged with a suspicion

27  of wrongdoing "once he has 'notice or information' of circumstances to put a reasonable person on

28

ORDER GRANTING RAMBUS'S MOTION TO DISMISS SAMSUNG'S AMENDED COUNTERCLAIMS AND GRANTING
RAMBUS'S MOTION TO STRIKE
C-05-02298 RMW
SPT                                                                6

inquiry" and thereafter "the period of limitations will run without regard to whether the plaintiff is aware of the specific facts necessary to establish his claim." *Id.* at 160.

### a.  Period prior to August 1998

It is undisputed that Steinberg, as an attorney, owes a fiduciary duty to clients he has undertaken to represent.  Samsung's counterclaim that Rambus aided and abetted Steinberg's breach of fiduciary duty to a current client (Count IV) and that Rambus interfered with the Samsung-Steinberg contract (Count VI) are premised on events that occurred between February 1998 and August 1998.[5]  From February 1998 through August 1998 Rambus allegedly aided and abetted Steinberg's breach of fiduciary duty to Samsung as a current client by knowingly engaging Steinberg to represent Rambus's interests without disclosure to or obtaining the informed consent of Samsung. During this same period Steinberg was employed full-time as in-house counsel for Samsung pursuant to a written contract that prohibited employment elsewhere at the same time.

For Counts IV and VI, Samsung invokes the discovery rule on the basis that it did not know about Steinberg's dual employment because Steinberg failed to provide the requisite disclosure or to obtain Samsung's informed consent as Samsung would have expected in such circumstances. Further, Samsung argues it was not placed on inquiry because during the period of dual employment (1) Steinberg was otherwise obligated under an employment contract to represent only Samsung, (2) during that time period Steinberg continued working full-time for Samsung, (3) both Steinberg and Rambus chose to keep the Rambus-Steinberg relationship secret, and (4) Samsung expected Steinberg, as its attorney and pursuant to both ethical and contractual obligations, would make disclosure of, or request informed consent from, Samsung about the undertaking of representation adverse to Samsung.  Thus, Samsung argues, it did not know and could not have reasonably been alerted to inquire of Steinberg's dual employment until that fact was made public in the *Rambus v. Infineon* legal proceedings in 2005.

---

[5]  As Samsung points out, there are two distinct counterclaims of Rambus's allegedly aiding and abetting Steinberg's breach of fiduciary duty.

ORDER GRANTING RAMBUS'S MOTION TO DISMISS SAMSUNG'S AMENDED COUNTERCLAIMS AND GRANTING RAMBUS'S MOTION TO STRIKE
C-05-02298 RMW
SPT                                                                                   7

### b. Period after August 1998

In Count V, Samsung contends that Rambus aided and abetted Steinberg's breach of fiduciary duty to Samsung as a former client. Steinberg ended his employment with Samsung in August 1998 and "in late 1998" Samsung learned that Steinberg had joined Rambus.[6] Samsung's Opp. Pl.'s Mot. Dismiss at 2. Despite its awareness that Steinberg had left Samsung to join Rambus, Samsung argues that it nevertheless was not put on inquiry of any wrongdoing because Steinberg did not disclose that he was using Samsung confidential information for Rambus and did not obtain Samsung's informed consent before representing Rambus. During this time Steinberg was no longer party to an employment contract with Samsung, but still owed ethical duties to Samsung as a former client.

Whether Samsung was put on inquiry of any wrongdoing after it became aware in late 1998 that Steinberg had joined Rambus must be viewed in light of the facts that are alleged. *See, e.g., McKelvey*, 74 Cal. App. 4th at 161 (finding in that case that "[i]n light of the facts they *do* allege, [the] omissions [of specifically pleaded facts] are fatal"). Here, the wrongdoing includes Steinberg's breach of fiduciary duties to Samsung by, among other things, representing interests adverse to Samsung and using confidential Samsung information. Nevertheless, Samsung argues it did not become aware of any wrongdoing until 2005 because:

> while Samsung may have known of Mr. Steinberg's subsequent exclusive employment with Rambus, Samsung had no opportunity to discover facts revealing that, as part of his representation of Rambus, Mr. Steinberg breached his separate duty to Samsung as a former client, until such facts were revealed in [the] 2005 *Infineon* trial.

Samsung's Opp. Pl.'s Mot. Dismiss at 2.

However, as the *McKelvey* court held, a party is charged with a suspicion of wrongdoing "once he has 'notice or information' of circumstances to put a reasonable person on inquiry" and thereafter "the period of limitations will run without regard to whether the plaintiff is aware of the

---

[6] Samsung's FAA does not allege when it found out Steinberg had joined Rambus, but it states in its Opposition to Rambus's Motion to Dismiss that it became aware in late 1998. Samsung's Opp. Pl.'s Mot. Dismiss at 2.

1  specific facts necessary to establish his claim." 74 Cal. App. 4th at 160.  By late 1998 Samsung
2  knew that Steinberg was exclusively representing Rambus.  By October 2000 Rambus and Samsung
3  had entered into an SDR/DDR license agreement.  Rambus and Samsung, through a series of
4  licenses and other ties, had formed a valuable business alliance in which Samsung supplied products
5  based on Rambus technologies to the marketplace.  Two parties to a license agreement could
6  reasonably be considered "adverse parties" in the context of legal representation.  *See, e.g.*, Model
7  Rules of Prof'l Responsibility R. 7.1 cmt. 7.  To the extent Steinberg was still employed by Rambus
8  during negotiations or signing of the license agreement, Samsung's pleadings are unclear why it was
9  not put on inquiry by October 2000 when Steinberg was representing the opposing party to a license
10 agreement.[7]  Samsung does not allege specifically what it learned in the *Infineon* litigation about
11 Steinberg's alleged use of confidential Samsung information.  Without a specific allegation
12 describing what specific Samsung confidential information Steinberg used for Rambus's benefit, it is
13 impossible to determine whether Samsung was on inquiry notice of a potential claim against
14 Rambus and Steinberg in late 1998, October of 2000, at some point in the *Infineon* litigation or at
15 some other point in time.

16             **2.      Doctrine of Equitable Tolling/Fraudulent Concealment**

17         The statute of limitations may also be equitably tolled under a "fraudulent concealment"
18 theory.  *Snapp*, 96 Cal. App. 4th at 890.  To invoke the doctrine, the claimant must "allege facts
19 showing affirmative conduct upon the part of the defendant which would, under the circumstances
20 of the case, lead a reasonable person to believe that he did not have a claim for relief." *Rutledge v.*
21 *Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978); *Stutz*, 909 F. Supp. at 1363
22 (*citing Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987)).  "Silence or passive
23 conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a
24 duty upon the defendant to make disclosure." *Rutledge*, 576 F.2d at 250.  Steinberg unquestionably
25 had an obligation to inform Samsung of any conflict of interest he had while working for Samsung

---

[7]  As noted earlier, it is unclear from the pleadings whether Steinberg was still employed by Rambus when the license agreement was negotiated and signed.

ORDER GRANTING RAMBUS'S MOTION TO DISMISS SAMSUNG'S AMENDED COUNTERCLAIMS AND GRANTING RAMBUS'S MOTION TO STRIKE
C-05-02298 RMW
SPT                                                        9

1  and a duty thereafter not to undertake representation materially adverse to Samsung without its fully
2  informed consent.  Nevertheless, because fraud is the underlying theory of the doctrine of fraudulent
3  concealment, the heightened pleading requirements of Fed. R. Civ. P. 9(b) applies.  *See Snapp*, 96
4  Cal. App. 4th at 890 (comparing the doctrine of fraudulent concealment to the California statutory
5  rule of delayed accrual for fraud cases).

### a. Section 17200 claim

7  Rambus argues that Samsung has failed to meet the Fed. R. Civ. P. 9(b) heightened pleading
8  requirements for fraud.  Samsung contends its pleadings taken as a whole "detailed the concerted
9  actions of Mr. Steinberg and Rambus to mislead Samsung and to conceal from Samsung the
10 existence of their duplicitous conduct until 2005."  Samsung's Opp. Pl.'s Mot. Dismiss at 16.  In
11 particular, to support its equitable tolling argument for its Section 17200 claim Samsung points to its
12 allegations that (1) Steinberg hid his representation of Rambus from Samsung while still a Samsung
13 employee, (2) Rambus knowingly concealed its hiring of Steinberg while Steinberg was still
14 employed by Samsung, (3) Rambus made affirmative statements to Samsung that Samsung was still
15 a faithful business partner, (4) Steinberg used  "information about Samsung's business and DRAM
16 products in working for Rambus," (5) Rambus secretly claimed JEDEC standards in the early 1990s,
17 and (6) Rambus destroyed documents during 1998, 1999, and 2000.
18 Samsung's allegations lack the specificity required to show fraudulent concealment of
19 information which would have otherwise put Samsung on notice of its claims.  Without a specific
20 description of the confidential Samsung information allegedly used by Rambus, the fact that
21 Steinberg worked for Rambus does not necessarily give rise to a claim or demonstrate that the
22 conduct of Steinberg and Rambus prevented Samsung from, by the exercise of diligence,
23 discovering the claims it had against Rambus and Steinberg.  Steinberg's concealment of information
24 from Samsung and Steinberg's use of Samsung information in working for Rambus did not
25 necessarily constitute fraudulent conduct by Rambus which covered up Samsung's potential claims.
26 Samsung's allegations that Rambus represented to Samsung that Samsung was a valuable business
27 partner lack any indicia of the context in which such statements were made and otherwise fail to
28

show they were made to defraud. Notably, none of Steinberg's alleged duties at Rambus – patent applications, patent prosecution strategies, extracting royalties for its patents – constitute wrongful activities by themselves.[8]

Likewise, Samsung does not allege affirmative conduct by Rambus at JEDEC that fraudulently concealed a potential claim against Rambus by Samsung or that Rambus fraudulently remained silent in face of a specific duty to disclose information to Samsung.  Finally, while Samsung alleges that Rambus destroyed large amounts of documents relevant to litigation, it does not allege how the documents that were destroyed perpetrated a fraud upon Samsung or what wrongs were consequently concealed from Samsung.[9]

### b.     Aiding and abetting

Like the discovery rule, the doctrine of fraudulent concealment "does not come into play, whatever lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Snapp*, 96 Cal. App. 4th at 890-91 (citations omitted).  Similarly, "[a] plaintiff is under a duty to reasonably investigate, and a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause, commences the limitations period." *Id.* at 891.  As noted above, Samsung's allegations fail to explain why it was not on inquiry notice by at least October 2000 when it had executed the SDR/DDR license with Rambus.  For this same reason, Samsung's invocation of the equitable tolling doctrine fails as to its claims of aiding and abetting.

### C.     Motion to Strike

Because Rambus has agreed in co-pending litigation between the parties in the Eastern District of Virginia to not sue under either of the two patents underlying Samsung's patent misuse defense, the parties agree that Samsung's ninth affirmative defense for patent misuse is rendered

---

[8] Because the court does not find that Samsung's pleadings invokes equitable tolling of its Section 17200 claim based on fraudulent concealment, the court does not reach the question of whether Samsung's pleadings adequately state a claim for violation of Section 17200.

[9] Samsung's pleadings are also unclear as to why it was not put on inquiry earlier by, for example, the "numerous litigation" in December 2000 by Rambus against DRAM manufacturers.

ORDER GRANTING RAMBUS'S MOTION TO DISMISS SAMSUNG'S AMENDED COUNTERCLAIMS AND GRANTING RAMBUS'S MOTION TO STRIKE
C-05-02298 RMW
SPT                                                             11

moot by the dismissal of Rambus's claims under those two patents. The court therefore strikes Samsung's ninth affirmative defense as immaterial.

Rambus also moves to strike Samsung's references to "inequitable conduct" in its counterclaim for declaratory judgment of unenforceability (Count X). In Count X, Samsung states "Rambus unfairly and inequitably filed multiple continuation applications over a long period of time" in the context of alleging that Rambus failed to timely prosecute the patents-in-suit. FAA ¶ 268. Rambus argues that such reference is conclusory and that declaratory judgment of unenforceability premised on inequitable conduct requires Samsung to meet the Fed. R. Civ. P. 9(b) heightened pleading requirements. However, Samsung argues that Count X is not premised on inequitable conduct and the term "inequitable" is used adjectivally in relation to Samsung's prosecution laches theory. Because Samsung does not dispute that Count X is premised on inequitable conduct, Rambus's motion to strike the reference to inequitable conduct is granted with the understanding that Count X does state a claim for prosecution laches.

### D.    Leave to Amend

"Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires.'" *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) (citing Fed. R. Civ. P. 15(a)). There is a strong policy permitting leave to amend. *Id.* However, a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *Id.*

Rambus urges that the subject counterclaims be dismissed with prejudice. Although Samsung has amended its counterclaims once, there is no indication that further amendment would be prejudicial, in bad faith, futile, or cause undue delay. In fact, there are troubling aspects of Rambus's and Steinberg's alleged conduct which, with additional specifically alleged facts, may give rise to viable claims despite the age of those claims. Samsung's motion for leave to amend is granted. Samsung shall have twenty (20) days to file its amended counterclaims.

ORDER GRANTING RAMBUS'S MOTION TO DISMISS SAMSUNG'S AMENDED COUNTERCLAIMS AND GRANTING RAMBUS'S MOTION TO STRIKE
C-05-02298 RMW
SPT                                                                        12

### III. ORDER

For the foregoing reasons, the court GRANTS plaintiff's motion to dismiss and GRANTS plaintiff's motion to strike with the understanding that Count X does state a viable claim for prosecution laches. Samsung has twenty (20) days to amend its counterclaims.

DATED: 1/4/07

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Jeannine Y. Sano | jsano@dbllp.com |
| Craig N. Tolliver | ctolliver@deweyballantine.com |
| Kevin S. Kudlac | kkudlac@dbllp.com |
| Pierre J. Hubert | phubert@dbllp.com |
| Brian K. Erickson | berickson@dbllp.com, |
| David C. Vondle | dvondle@deweyballantine.com |
| Saxon S. Noh | snoh@dbllp.com |
| Gregory P. Stone | gregory.stone@mto.com |
| Carolyn Hoecker Luedtke | luedtkech@mto.com |
| Peter A. Detre | detrepa@mto.com |
| Burton Alexander Gross | burton.gross@mto.com, |
| Steven McCall Perry | steven.perry@mto.com |
| James E. Lyons | jlyons@skadden.com |
| Raoul D. Kennedy | rkennedy@skadden.com |
| Jeffrey G. Randall | jrandall@skadden.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Matthew D. Powers | matthew.powers@weil.com |
| David J. Healey | david.healey@weil.com |
| Edward R. Reines | edward.reines@weil.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     1/4/07                                         SPT
                                                                 **Chambers of Judge Whyte**