Gregory P. Stone (SBN 078329)
Steven M. Perry (SBN 106154)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Tel: (213) 683-9100 • Fax: (213) 687-3702
E-mail: *Gregory.Stone@mto.com, Steven.Perry@mto.com*

Peter A. Detre (SBN 182619)
Carolyn Hoecker Luedtke (SBN 207976)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Tel: (415) 512-4000 • Fax: (415) 512-4077
E-mail: *Peter.Detre@mto.com; Carolyn.Luedtke@mto.com*

Pierre J. Hubert (Pro Hac Vice)
Craig N. Tolliver (Pro Hac Vice)
McKOOL SMITH PC
300 West 6th Street, Suite 1700
Austin, TX 78701
Tel: (512) 692-8700 • Fax: (512) 692-8744
Email: *phubert@mckool.com; ctolliver@mckool.com*

Attorneys for Plaintiff/Counterclaim Defendant RAMBUS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAMBUS INC., | CASE NO. C 05 02298 RMW |
| Plaintiff, | **RAMBUS INC.'S REPLY TO SAMSUNG'S SECOND AMENDED ANSWER AND COUNTERCLAIMS** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P., | |
| Defendants. | |
| AND RELATED CROSS-ACTIONS. | |

1    Rambus Inc. ("Rambus") replies to the Second Amended Counterclaims asserted by

2    Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor,

3    Inc., and Samsung Austin Semiconductor, L.P. (collectively "Samsung") as follows:

4                                **INCORPORATED ALLEGATIONS**

5    Rambus hereby replies to the allegations in Samsung's Second Amended Answer that are

6    incorporated by reference by Samsung in Samsung's Second Amended Counterclaims, in

7    corresponding numbered paragraphs as follows:

8                                          **PARTIES**

9    **PARAGRAPH NO. 1:**

10   Defendants admit that Rambus is a corporation organized and existing under the laws of

11   Delaware. Defendants lack sufficient knowledge to admit or deny the remaining allegations in

12   Paragraph 1 of the Complaint, and, on that basis, deny the same.

13   **RESPONSE TO PARAGRAPH NO. 1:**

14   Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

15   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

16   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

17   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

18   denials are well taken.

19   **PARAGRAPH NO. 2:**

20   Defendants admit that Samsung Electronics Co., Ltd. is a corporation organized and

21   existing under the laws of Korea, with a principal place of business at 250, 2-Ka, Taepyung-Ro,

22   Chung-Ku, Seoul, South Korea, 100-742.  Defendants admit that Samsung Electronics America,

23   Inc. is a wholly owned subsidiary of Samsung Electronics Co., Ltd., with its principal place of

24   business at 105 Challenger Road, Ridgefield Park, NJ 07660.  Defendants admit that Samsung

25   Semiconductor, Inc. is a wholly owned subsidiary of Samsung Electronics Co., Ltd., with its

26   principal place of business at 3655 North First Street, San Jose, CA 95134. Defendants admit that

27   Samsung Austin Semiconductor, L.P. is a limited partnership owned by Samsung Electronics Co.,

28   Ltd., with its principal place of business at 12100 Samsung Boulevard, Austin, TX 78754.

3159620.2

1    Defendants deny that they transact substantial business in this district on an ongoing basis.

2    **RESPONSE TO PARAGRAPH NO. 2:**

3        Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

4    Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

5    paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

6    deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

7    denials are well taken.

8    **PARAGRAPH NO. 3:**

9        Defendants deny the allegations in Paragraph 3 of the Complaint.

10   **RESPONSE TO PARAGRAPH NO. 3:**

11       Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

12   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

13   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

14   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

15   denials are well taken.

16               **NATURE OF THE ACTION**

17   **PARAGRAPH NO. 4:**

18       Defendants admit that the Complaint purports to be an action for patent infringement, but

19   deny any wrongdoing or liability.

20   **RESPONSE TO PARAGRAPH NO. 4:**

21       Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

22   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

23   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

24   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

25   denials are well taken.

26   **PARAGRAPH NO. 5:**

27       Defendants deny the allegations in Paragraph 5 of the Complaint.

28

**RESPONSE TO PARAGRAPH NO. 5:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**JURISDICTION AND VENUE**

**PARAGRAPH NO. 6:**

Defendants admit that the Complaint purports to be an action for patent infringement, but deny any wrongdoing or liability.  Defendants admit that this Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

**RESPONSE TO PARAGRAPH NO. 6:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 7:**

Defendants do not contest personal jurisdiction in this Court.  To the extent not expressly admitted herein, Defendants deny the remaining allegations of Paragraph 7 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 7:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 8:**

Defendants do not contest that venue is proper in this Court. To the extent not expressly

1   admitted herein, Defendants deny the remaining allegations of Paragraph 8 of the Complaint.

2   **RESPONSE TO PARAGRAPH NO. 8:**

3   Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

4   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

5   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

6   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

7   denials are well taken.

8   **PURPORTED FACTUAL BACKGROUND**

9   **PARAGRAPH NO. 9:**

10   Defendants admit that Rambus has executed licenses in the past.   To the extent not

11   expressly admitted herein, Defendants deny the remaining allegations in Paragraph 9 of the

12   Complaint.

13   **RESPONSE TO PARAGRAPH NO. 9:**

14   Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

15   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

16   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

17   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

18   denials are well taken.

19   **PARAGRAPH NO. 10:**

20   Defendants admit that they are each in one way or another in the business of, *inter alia*,

21   making, using, selling, importing, and/or offering for sale SDR SDRAM components or modules,

22   Mobile-SDR SDRAM components, SDR SGRAM components, DDR SDRAM components and

23   modules, Mobile-DDR SDRAM components, DDR SGRAM components, GDDR1 SDRAM

24   components, and Uni-Transistor RAM components.   Defendants lack sufficient information to

25   admit or deny the remaining allegations in Paragraph 10 of the Complaint, and on that basis, deny

26   the same.

27   **RESPONSE TO PARAGRAPH NO. 10:**

28   Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

3159620.2

Rambus's First Amended Complaint into its Second Amended Counterclaims. As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein. Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 11:**

Defendants admit that they have each in one way or another made, used, sold, imported, or offered for sale products consisting of or including SDR SDRAM components or modules, Mobile-SDR SDRAM components, SDR SGRAM components, DDR SDRAM components and modules, Mobile-DDR SDRAM components, DDR SGRAM components, GDDR1 SDRAM components, and Uni-Transistor RAM components. Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 11 of the Complaint, and on that basis, deny the same.

**RESPONSE TO PARAGRAPH NO. 11:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims. As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein. Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 12:**

Defendants admit that on its face, U.S. Patent No. 5,915,105 (the "'105 Patent") purports to have issued on June 22, 1999, and to be entitled "Integrated Circuit I/O Using a High Performance Bus Interface," but deny it was duly and legally issued. All other allegations of Paragraph 12 not specifically admitted herein are denied.

**RESPONSE TO PARAGRAPH NO. 12:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims. As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein. Rambus denies, however, that Samsung's

1   denials are well taken.

2   **PARAGRAPH NO. 13:**

3       Defendants admit that on its face, U.S. Patent No. 5,953,263 (the "'263 Patent") purports

4   to have issued on September 14, 1999, and to be entitled "Synchronous Memory Device Having a

5   Programmable Register and Method of Controlling Same," but deny it was duly and legally

6   issued. All other allegations of Paragraph 13 not specifically admitted herein are denied.

7   **RESPONSE TO PARAGRAPH NO. 13:**

8       Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

9   Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these

10  paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

11  deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

12  denials are well taken.

13  **PARAGRAPH NO. 14:**

14      Defendants admit that on its face, U.S. Patent No. 6,034,918 (the "'918 Patent") purports

15  to have issued on March 7, 2000, and to be entitled "Method of Operating a Memory Having a

16  Variable Data Output Length and a Programmable Register," but deny it was duly and legally

17  issued. All other allegations of Paragraph 14 not specifically admitted herein are denied.

18  **RESPONSE TO PARAGRAPH NO. 14:**

19      Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

20  Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these

21  paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

22  deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

23  denials are well taken.

24  **PARAGRAPH NO. 15:**

25      Defendants admit that on its face, U.S. Patent No. 6,038,195 (the "'195 Patent") purports

26  to have issued on March 14, 2000, and to be entitled  "Synchronous Memory Device Having a

27  Delay Time Register and Method of Operating Same," but deny it was duly and legally issued.

28  All other allegations of Paragraph 15 not specifically admitted herein are denied.

3159620.2

1  **RESPONSE TO PARAGRAPH NO. 15:**

2  Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

3  Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these

4  paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

5  deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

6  denials are well taken.

7  **PARAGRAPH NO. 16:**

8  Defendants admit that on its face, U.S. Patent No. 6,067,592 (the "'592 Patent") purports

9  to have issued on May 23, 2000, and to be entitled "System Having a Synchronous Memory

10  Device," but deny it was duly and legally issued.  All other allegations of Paragraph 16 not

11  specifically admitted herein are denied.

12  **RESPONSE TO PARAGRAPH NO. 16:**

13  Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

14  Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these

15  paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

16  deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

17  denials are well taken.

18  **PARAGRAPH NO. 17:**

19  Defendants admit that on its face, U.S. Patent No. 6,101,152 (the "'152 Patent") purports

20  to have issued on August 8, 2000, and to be entitled "Method Of Operating A Synchronous

21  Memory Device," but deny it was duly and legally issued.  All other allegations of Paragraph 17

22  not specifically admitted herein are denied.

23  **RESPONSE TO PARAGRAPH NO. 17:**

24  Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

25  Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these

26  paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

27  deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

28  denials are well taken.

1    **PARAGRAPH NO. 18:**

2        Defendants admit that on its face, U.S. Patent No. 6,324,120 (the "'120 Patent") purports

3    to have issued on November 27, 2001, and to be entitled "Memory Device Having a Variable

4    Data Output Length," but deny it was duly and legally issued.  All other allegations of Paragraph

5    18 not specifically admitted herein are denied.

6    **RESPONSE TO PARAGRAPH NO. 18:**

7        Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

8    Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

9    paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

10   deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

11   denials are well taken.

12   **PARAGRAPH NO. 19:**

13       Defendants admit that on its face, U.S. Patent No. 6,378,020 (the "'020 Patent") purports

14   to have issued on April 23, 2002, and to be entitled "System Having Double Data Transfer Rate

15   and Intergrated [*sic*] Circuit Therefor," but deny it was duly and legally issued. All other

16   allegations of Paragraph 19 not specifically admitted herein are denied.

17   **RESPONSE TO PARAGRAPH NO. 19:**

18       Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

19   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

20   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

21   deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

22   denials are well taken.

23   **PARAGRAPH NO. 20:**

24       Defendants admit that on its face, U.S. Patent No. 6,426,916 (the "'916 Patent") purports

25   to have issued on July 30, 2002, and to be entitled "Memory Device Having a Variable Data

26   Output Length and a Programmable Register," but deny it was duly and legally issued. All other

27   allegations of Paragraph 20 not specifically admitted herein are denied.

28

**RESPONSE TO PARAGRAPH NO. 20:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 21:**

Defendants admit that on its face, U.S. Patent No. 6,452,863 (the "'863 Patent") purports to have issued on September 17, 2002, and to be entitled "Method Of Operating a Memory Device Having a Variable Data Input Length," but deny it was duly and legally issued. All other allegations of Paragraph 21 not specifically admitted herein are denied.

**RESPONSE TO PARAGRAPH NO. 21:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 22:**

Defendants admit the allegations in Paragraph 22 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 22:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 23:**

Defendants deny the allegations in Paragraph 23 of the Complaint.

3159620.2

1    **RESPONSE TO PARAGRAPH NO. 23:**

2    Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

3    Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

4    paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

5    deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

6    denials are well taken.

7    **PARAGRAPH NO. 24:**

8    Defendants deny the allegations in Paragraph 24 of the Complaint.

9    **RESPONSE TO PARAGRAPH NO. 24:**

10   Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

11   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

12   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

13   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

14   denials are well taken.

15   **PARAGRAPH NO. 25:**

16   Defendants deny the allegations in Paragraph 25 of the Complaint.

17   **RESPONSE TO PARAGRAPH NO. 25:**

18   Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

19   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

20   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

21   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

22   denials are well taken.

23   **PARAGRAPH NO. 26:**

24   Defendants lack sufficient information to admit or deny the allegations in Paragraph 26 of

25   the Complaint, and on that basis, deny the same.

26   **RESPONSE TO PARAGRAPH NO. 26:**

27   Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

28   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 27:**

Defendants deny the allegations in Paragraph 27 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 27:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 28:**

Defendants deny the allegations in Paragraph 28 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 28:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**COUNT 1: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,915,105**

**PARAGRAPH NO. 29:**

Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-28 above.

**RESPONSE TO PARAGRAPH NO. 29:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

3159620.2

1    denials are well taken.

2    **PARAGRAPH NO. 30:**

3        Defendants deny the allegations in Paragraph 30 of the Complaint.

4    **RESPONSE TO PARAGRAPH NO. 30:**

5        Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

6    Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these

7    paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

8    deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

9    denials are well taken.

10   **COUNT 2: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,953,263**

11   **PARAGRAPH NO. 31:**

12       Defendants refer to and incorporate herein its answers as provided in Paragraphs 1-30

13   above.

14   **RESPONSE TO PARAGRAPH NO. 31:**

15       Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

16   Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these

17   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

18   deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

19   denials are well taken.

20   **PARAGRAPH NO. 32:**

21       Defendants deny the allegations in Paragraph 32 of the Complaint.

22   **RESPONSE TO PARAGRAPH NO. 32:**

23       Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

24   Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these

25   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

26   deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's

27   denials are well taken.

28

1    **COUNT 3: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,034,918**

2    **PARAGRAPH NO. 33:**

3         Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-32

4    above.

5    **RESPONSE TO PARAGRAPH NO. 33:**

6         Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

7    Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

8    paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

9    deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

10   denials are well taken.

11   **PARAGRAPH NO. 34:**

12        Defendants deny the allegations in Paragraph 34 of the Complaint.

13   **RESPONSE TO PARAGRAPH NO. 34:**

14        Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

15   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

16   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

17   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

18   denials are well taken.

19   **COUNT 4: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,038,195**

20   **PARAGRAPH NO. 35:**

21        Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-34

22   above.

23   **RESPONSE TO PARAGRAPH NO. 35:**

24        Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

25   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

26   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

27   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

28   denials are well taken.

3159620.2

**PARAGRAPH NO. 36:**

Defendants deny the allegations in Paragraph 36 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 36:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**COUNT 5: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,067,592**

**PARAGRAPH NO. 37:**

Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-36 above.

**RESPONSE TO PARAGRAPH NO. 37:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 38:**

Defendants deny the allegations in Paragraph 38 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 38:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**COUNT 6: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,101,152**

**PARAGRAPH NO. 39:**

Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-38 above.

**RESPONSE TO PARAGRAPH NO. 39:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims. As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein. Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 40:**

Defendants deny the allegations in Paragraph 40 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 40:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims. As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein. Rambus denies, however, that Samsung's denials are well taken.

**COUNT 7: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,324,120**

**PARAGRAPH NO. 41:**

Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-40 above.

**RESPONSE TO PARAGRAPH NO. 41:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims. As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein. Rambus denies, however, that Samsung's denials are well taken.

3159620.2

**PARAGRAPH NO. 42:**

Defendants deny the allegations in Paragraph 42 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 42:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**COUNT 8: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,378,020**

**PARAGRAPH NO. 43:**

Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-42 above.

**RESPONSE TO PARAGRAPH NO. 43:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**PARAGRAPH NO. 44:**

Defendants deny the allegations in Paragraph 44 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 44:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

1   **COUNT 9: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,426,916**

2   **PARAGRAPH NO. 45:**

3       Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-44

4   above.

5   **RESPONSE TO PARAGRAPH NO. 45:**

6       Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

7   Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

8   paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

9   deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

10  denials are well taken.

11  **PARAGRAPH NO. 46:**

12      Defendants deny the allegations in Paragraph 46 of the Complaint.

13  **RESPONSE TO PARAGRAPH NO. 46:**

14      Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

15  Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

16  paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

17  deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

18  denials are well taken.

19  **COUNT 10: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,452,863**

20  **PARAGRAPH NO. 47:**

21      Defendants refer to and incorporate herein their answers as provided in Paragraphs 1-46

22  above.

23  **RESPONSE TO PARAGRAPH NO. 47:**

24      Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to

25  Rambus's First Amended Complaint into its Second Amended Counterclaims.   As to these

26  paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and

27  deny certain of Rambus's allegations as stated therein.   Rambus denies, however, that Samsung's

28  denials are well taken.

**PARAGRAPH NO. 48:**

Defendants deny the allegations in Paragraph 48 of the Complaint.

**RESPONSE TO PARAGRAPH NO. 48:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**DENIAL OF RAMBUS'S PRAYER FOR RELIEF**

**PARAGRAPH NO. 49:**

Defendants deny that Rambus is entitled to be awarded any of the relief sought in its prayer for relief against Defendants.  Defendants have not directly, indirectly, contributorily, and/or by inducement, literally and/or by the doctrine of equivalents, infringed— willfully or otherwise—any of the patents asserted by Rambus.  Rambus is not entitled to recover statutory damages, compensatory damages, or accounting, injunctive relief, costs, fees, interest, or any other type of recovery from Defendants.  Rambus's prayer should, therefore, be denied in its entirety and with prejudice, and Rambus should take nothing therefore.  Defendants asks that judgment be entered for them and that they be awarded attorneys' fees in defending against the Complaint, together with such other and further relief the Court deems appropriate.

**RESPONSE TO PARAGRAPH NO. 49:**

Samsung has incorporated paragraph nos. 1-49 of its Second Amended Answer to Rambus's First Amended Complaint into its Second Amended Counterclaims.  As to these paragraphs, Rambus admits that Samsung purports to admit certain of Rambus's allegations and deny certain of Rambus's allegations as stated therein.  Rambus denies, however, that Samsung's denials are well taken.

**First Affirmative Defense – Failure to State a Claim**

**PARAGRAPH NO. 50:**

The Complaint fails to state a claim upon which relief can be granted because Defendants have not performed any act or thing and are not proposing to perform any act or thing in violation of any rights validly belonging to Plaintiff.

**RESPONSE TO PARAGRAPH NO. 50:**

Rambus denies the allegations contained in paragraph no. 50.

**Second Affirmative Defense – Noninfringement**

**PARAGRAPH NO. 51:**

The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are invalid and unenforceable, as set forth herein.

**RESPONSE TO PARAGRAPH NO. 51:**

Rambus denies the allegations contained in paragraph no. 51.

**PARAGRAPH NO. 52:**

Defendants do not infringe and have not infringed, either directly or indirectly, do not and have not contributed to infringement, and do not and have not induced the infringement of any claim of the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents.

**RESPONSE TO PARAGRAPH NO. 52:**

Rambus denies the allegations contained in paragraph no. 52.

**Third Affirmative Defense – Patent Invalidity**

**PARAGRAPH NO. 53:**

The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are invalid for failure to meet the "Conditions for Patentability" of 35 U.S.C. §§ 102 and 103 because the alleged inventions thereof are taught by, suggested by, and/or are obvious in view of, the prior art, and no claim of the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents can be validly construed to cover any Samsung device, system or operating method related to DRAM memory.

1   **RESPONSE TO PARAGRAPH NO. 53:**

2       Rambus denies the allegations contained in paragraph no. 53.

3   **PARAGRAPH NO. 54:**

4       The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are invalid for

5   failure to meet the "Specification" requirements of 35 U.S.C. § 112 because the written

6   specifications thereof do not describe the alleged inventions and the manner and process of

7   making and using them in the form required by § 112, and no claim of the '105, '263, '918, '195,

8   '592, '152, '120, '020, '916, and '863 Patents can be validly construed to cover any Samsung

9   device, system or operating method related to DRAM memory.

10  **RESPONSE TO PARAGRAPH NO. 54:**

11      Rambus denies the allegations contained in paragraph no. 54.

12          **Fourth Affirmative Defense – Prosecution Laches**

13  **PARAGRAPH NO. 55:**

14      Rambus's claims for relief and prayer for damages in the Complaint are barred, in whole

15  or in part, because the equitable doctrine of prosecution laches renders the '105, '263, '918, '195,

16  '592, '152, '120, '020, '916, and '863 Patents unenforceable.

17  **RESPONSE TO PARAGRAPH NO. 55:**

18      Rambus denies the allegations contained in paragraph no. 55.

19           **Fifth Affirmative Defense – Unclean Hands**

20  **PARAGRAPH NO. 56:**

21      Rambus's claims for relief and prayer for damages in the Complaint are barred, in whole

22  or in part, because the equitable doctrine of unclean hands renders the '105, '263, '918, '195,

23  '592, '152, '120, '020, '916, and '863 Patents unenforceable.

24  **RESPONSE TO PARAGRAPH NO. 56:**

25      Rambus denies the allegations contained in paragraph no. 56.

26          **Sixth Affirmative Defense – Equitable Estoppel**

27  **PARAGRAPH NO. 57:**

28      Rambus's claims for relief and prayer for damages in the Complaint are barred, in whole

or in part, because the doctrine of equitable estoppel renders the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents unenforceable.

**RESPONSE TO PARAGRAPH NO. 57:**

Rambus denies the allegations contained in paragraph no. 57.

**Seventh Affirmative Defense - Estoppel**

**PARAGRAPH NO. 58:**

Rambus is estopped by its conduct during the course of its membership in JEDEC from asserting, amongst others, any of the patents that originate from the 1990 Farmwald '898 application or the October, 1995 Ware '294 application, including but not limited to the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents against Samsung's SDRAM products, the facts and circumstances of which are set forth herein.

**RESPONSE TO PARAGRAPH NO. 58:**

Rambus denies the allegations contained in paragraph no. 58.

**PARAGRAPH NO. 59:**

JEDEC with its associated committees is and, at all time relevant herein, has been the engineering standardization body for solid-state products in the United States and is part of the larger Electronic Industries Alliance ("EIA").  JEDEC has 300 member companies and 1800 individual committee participants.  Standards promulgated by JEDEC, particularly for memories, are the predominant standards world-wide.

**RESPONSE TO PARAGRAPH NO. 59:**

Rambus admits that in 1991 and throughout the time that Rambus attended JEDEC meetings, JEDEC was an activity within the EIA engineering department that published standards for certain semiconductor devices.  Except as expressly admitted, Rambus denies the allegations of paragraph no. 59.

**PARAGRAPH NO. 60:**

At all times relevant herein, the semiconductor industry relied on JEDEC to develop the memory interface standard(s) for DRAMs and other memories, which are used predominantly in successive generations of computers, including mainframe, workstation, desktop, and laptop

3159620.2

1  computers as well as many other electronic devices.  JEDEC operated and continues to operate

2  through committees populated by industry representatives with a background in the engineering

3  and marketing requirements of the industry.  In choosing standards, proposals for inclusion in or

4  changes to existing standards or standards under consideration would be made at JEDEC

5  meetings by its members.  In the intervals between meetings, members would invest time and

6  resources evaluating these proposals for suitability.  Over a series of meetings, input from

7  industry participants would be considered.  Gradually, a consensus would tend to emerge on the

8  specific set of features that best suited the then-current requirements of the market by cost and

9  performance measures.  JEDEC was always pushed to move the standard ahead at the pace

10  desired by the market, and to promulgate new and evolving standards in advance of their actual

11  need in the market.

12  **RESPONSE TO PARAGRAPH NO. 60:**

13  Rambus denies the allegations of paragraph no. 60.

14  **PARAGRAPH NO. 61:**

15  JEDEC has rules and procedures designed to guarantee that JEDEC (and its rules) is not

16  used by its members for anticompetitive or illegal purposes.  One specific kind of anticompetitive

17  effect that JEDEC guards against its unintended inclusion in a JEDEC standard of patented

18  elements or requirements.  JEDEC does not prohibit standards that require the use of patented

19  technology, but JEDEC does require that any decision to incorporate a patented element in a

20  JEDEC standard be made with knowledge and full disclosure of the fact that a proposed standard

21  includes or requires patented technology and any consequently required patent licenses that

22  would be needed to implement the standard.  JEDEC's policy is neutral on incorporation of

23  patented elements in a standard so long as:  (a) the standard setting committee has a full and fair

24  opportunity to evaluate the existence of the patent or possible patent, and (b) the purported owner

25  of the patent or possible patent is willing to license the patent royalty free or on reasonable and

26  non-discriminatory terms.

27  **RESPONSE TO PARAGRAPH NO. 61:**

28  Rambus denies the allegations of paragraph no. 61.

**PARAGRAPH NO. 62:**

Recognizing that no written rule can be so clear and precise that someone cannot find a way to evade or subvert its intent, JEDEC's procedure relied on the good faith participation of its members.

**RESPONSE TO PARAGRAPH NO. 62:**

Rambus denies the allegations of paragraph no. 87.

**PARAGRAPH NO. 63:**

In 1992, Rambus joined JEDEC. Rambus became interested in joining JEDEC for two reasons. First, it provided Rambus with insight into the industry's efforts to develop a state-of-the-art open DRAM memory interface standard. Second, it presented Rambus with an opportunity to meet prospective customers and pitch RDRAM license agreements to those customers.

**RESPONSE TO PARAGRAPH NO. 63:**

Rambus admits that in late 1991 or early 1992, it paid the fees necessary to allow it to attend certain committee meetings held by JEDEC. Except as expressly admitted, Rambus denies the allegations contained in paragraph no. 63.

**PARAGRAPH NO. 64:**

Rambus joined JEDEC at the time when many JEDEC members were advocating the adoption of a synchronous memory interface for DRAMs in place of the then-dominant asynchronous (or "conventional") DRAM interface. JEDEC's work on synchronous DRAM interface technology was independent of any work by Rambus in this area.

**RESPONSE TO PARAGRAPH NO. 64:**

Rambus is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 64, and, on that basis, denies the same. Rambus denies the allegations of paragraph no. 64.

**PARAGRAPH NO. 65:**

The first SDRAM standard was adopted in JEDEC in 1993.

**RESPONSE TO PARAGRAPH NO. 65:**

Rambus admits the allegations contained in paragraph no. 65.

**PARAGRAPH NO. 66:**

The current SDRAM products represent foreseeable extensions and improvements of the base SDRAM standard which were known to or anticipated by Rambus and other JEDEC members when the base SDRAM standard was adopted at JEDEC in 1993.  Many of the features first required by the JEDEC DDR SRAM, DDR2 SDRAM, and/or GDDR3 SDRAM interface standards were first included or proposed for inclusion during JEDEC's consideration, while Rambus was a JEDEC member, of standards for SDRAM and for DRAMs that would follow SDRAMs in the market.  Other features required by the JEDEC DDR SDRAM, DDR2 SDRAM, GDDR3, and/or related interface standards were originally included in and required by the JEDEC standards for SDRAM.

**RESPONSE TO PARAGRAPH NO. 66:**

Rambus denies the allegations of paragraph no. 66.

**PARAGRAPH NO. 67:**

As a result of its membership in JEDEC, Rambus agreed, both explicitly and implicitly, that it would abide by the rules governing JEDEC members.  These rules, among other things, required JEDEC members, including Rambus, to disclose to other JEDEC members any patents, patent applications or intentions to file patents that might bear upon standards being considered by JEDEC committees.

**RESPONSE TO PARAGRAPH NO. 67:**

Rambus denies the allegations of paragraph no. 67.

**PARAGRAPH NO. 68:**

By participating as a JEDEC member, Rambus knew or should have known that Samsung would be reasonably induced to rely upon Rambus's promises and representations that it would disclose any patents, patent applications, or intentions to file patents that may bear upon standards being considered by JEDEC.

3159620.2

**RESPONSE TO PARAGRAPH NO. 68:**

Rambus denies the allegations of paragraph no. 68.

**PARAGRAPH NO. 69:**

Samsung reasonably relied upon Rambus's promises and representations and was induced to design many of its products in accordance with standards adopted by JEDEC.

**RESPONSE TO PARAGRAPH NO. 69:**

Rambus denies the allegations of paragraph no. 69.

**PARAGRAPH NO. 70:**

Rambus's infringement allegations arise, at least in part, as a result of Samsung implementing one or more SDRAM standards adopted by JEDEC, through the design, manufacture, and sale of memory products complying with the JEDEC standards for, among others, SDRAM components and/or modules.   Samsung memory products complying with JEDEC standards are sometimes referred to herein as "JEDEC standard products."

**RESPONSE TO PARAGRAPH NO. 70:**

Rambus is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 70, and, on that basis, denies the same.   Rambus denies the allegations of paragraph no. 70.

**PARAGRAPH NO. 71:**

Samsung is informed and believes that Rambus never disclosed to other JEDEC committee members its intention to file any of the patents, or claims of the type or scope contained in patents that originated with the 1990 Farmwald '898 application, and/or the 1995 Ware '294 application, including, but not limited to the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents asserted herein against Samsung's SDRAM products or other products, thereby breaching its duties of disclosure and good faith toward JEDEC and the members of JEDEC and, specifically, Samsung.

**RESPONSE TO PARAGRAPH NO. 71:**

Rambus denies the allegations of paragraph no. 71.

1

**PARAGRAPH NO. 72:**

2       Through a series of licenses that began in 1994 and other ties that included Samsung's

3 active promotion of Rambus technology and marketing of Rambus products at substantial

4 expense to Samsung,[1] Rambus and Samsung formed a valuable business alliance in which

5 Samsung supplied products based on Rambus technologies to the marketplace. During one of the

6 numerous "partner meetings" that executives of Samsung and Rambus attended together to

7 discuss, among other things, the status of their joint plans for Samsung's manufacture, sale, and

8 advertising of RDRAMs, Dave Mooring, president of Rambus at the time, stated that "Samsung

9 continues to be a very strong and valuable partner for Rambus." Rambus encouraged Samsung to

10 develop products based on Rambus's patents. As a result, Samsung became the largest maker and

11 supplier of Rambus products.[2] The valuable business alliance between Rambus and Samsung

12 allowed Rambus to market its company and products based on Rambus technology that could not

13 otherwise have been done successfully without Samsung's assistance.

14

**RESPONSE TO PARAGRAPH NO. 72:**

15       Rambus admits that it entered into a license agreement with Samsung in 1994. Rambus

16 further admits that it believed that business relationship would be valuable. Rambus further

17 admits that Samsung was and is a large maker and supplier of Rambus products and that Samsung

18 has paid and continues to pay Rambus royalties for the use of its patented technologies in certain

19 products including RDRAM and XDR. Rambus is without knowledge or information sufficient

20 to form a belief as to the truth of the allegations in footnote 1 with respect to how much Samsung

21 has spent on Rambus-related research, development, advertising, and marketing, and, on that

22 basis, denies the same. Rambus is also without knowledge or information sufficient to form a

23 belief as to the truth of the allegation that Samsung has sold $3.2 billion worth of Rambus DRAM

24 products to customers, and, on that basis, denies the same. Rambus is also without knowledge or

25

---

26 [1] Samsung has spent over $200,000,000 on Rambus-related research, development, advertising, and marketing. Meanwhile, Samsung has sold $3.2 billion worth of Rambus DRAM products to customers such as Sony for use in its Playstations, and has paid Rambus royalties of $39.8 million for use of Rambus DRAM technology.

27

28 [2] From 1995 until 2005, Samsung was the largest maker and seller of Rambus DRAM.

1  information sufficient to form a belief as to the truth of the allegations about what Dave Mooring

2  may have said at a meeting with Samsung, and, on that basis, denies the same.   Except as

3  otherwise expressly admitted, Rambus denies the allegations of paragraph no. 72.

4  **PARAGRAPH NO. 73:**

5        Given  the  extensive  and  friendly  business  relationship  outlined  above,  Samsung

6  reasonably relied on Rambus's assertions that Samsung was a valued business partner and was

7  dealing with Samsung in good faith and with the intent to promote the valuable business alliance

8  between them.  As a result, Samsung was misled by Rambus into promoting Rambus technology

9  in faithful adherence to the business alliance.  Samsung was further misled into believing that

10  Rambus was dealing with Samsung honestly, in good faith, and was not secretly taking actions

11  that would harm Samsung's business.  Moreover, each of the several contracts carried with them

12  duties of good faith and fair dealing that further led Samsung to believe that its business ally,

13  Rambus, would not secretly work against Samsung's interests.

14  **RESPONSE TO PARAGRAPH NO. 73:**

15        Rambus denies the allegations of paragraph no. 73.

16  **PARAGRAPH NO. 74:**

17        As a direct and proximate result of Rambus's failure to perform its duties and Rambus's

18  misrepresentations, Samsung has been damaged in that it has been required to pursue its legal

19  remedies, including this suit, at great expense.  Moreover, if Rambus is allowed to assert its

20  patents in breach of its duties of disclosure and good faith to Samsung and other JEDEC

21  members, and is successful, Samsung will be damaged in the amount sought by Rambus as

22  license fees, which, as yet, is unknown.

23  **RESPONSE TO PARAGRAPH NO. 74:**

24        Rambus denies the allegations of paragraph no. 74.

25              **Eighth Affirmative Defense – Implied License**

26  **PARAGRAPH NO. 75:**

27        Because of its conduct during the course of its membership in JEDEC as outlined herein,

28  Rambus's claims of infringement of any of the patents that originate from the 1990 Farmwald

1   '898 application or the October, 1995 Ware '294 application, including but not limited to the

2   '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents against Samsung's SDRAM

3   products, are barred by the doctrine of implied license.

4   **RESPONSE TO PARAGRAPH NO. 75:**

5       Rambus denies the allegations of paragraph no. 75.

6   **PARAGRAPH NO. 76:**

7       Because of its conduct in JEDEC and/or during the course of its business alliance with

8   Samsung as outlined herein, Rambus's claims of infringement of any of the patents that originate

9   from the 1990 Farmwald '898 application or the October, 1995 Ware '294 application, including

10   but not limited to the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents

11   against Samsung's SDRAM products, are barred by the doctrine of implied license.

12   **RESPONSE TO PARAGRAPH NO. 76:**

13       Rambus denies the allegations of paragraph no. 76.

14       **Ninth Affirmative Defense – Marking and Limitations**

15   **PARAGRAPH NO. 77:**

16       Rambus's claims for relief and prayer for damages are barred, in whole or in part, by 35

17   U.S.C. §§ 286 and 287.

18   **RESPONSE TO PARAGRAPH NO. 77:**

19       Rambus denies the allegations of paragraph no. 77.

20       **SECOND AMENDED COUNTERCLAIMS**

21   **PARAGRAPH NO. 78:**

22       Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the

23   laws of Korea, with a principal place of business at 250, 2-Ka, Taepyung-Ro, Chung-Ku, Seoul,

24   South Korea, 100-742. Samsung Electronics America, Inc. ("SEA") is a corporation organized

25   and existing under the laws of New Jersey, with a principal place of business at 105 Challenger

26   Road, Ridgefield Park, New Jersey, 07660.

27   **RESPONSE TO PARAGRAPH NO. 78:**

28       Rambus is without knowledge or information sufficient to form a belief as to the truth of

1  the allegations of paragraph no. 78, and on that basis denies the allegations contained therein.

2  **PARAGRAPH NO. 79:**

3  Rambus is a corporation incorporated and existing under the laws of Delaware. Rambus's

4  principal place of business is at 4440 El Camino Real, Los Altos, California, 94022.

5  **RESPONSE TO PARAGRAPH NO. 79:**

6  Rambus admits that at the present time, it is a Delaware corporation with its principal

7  place of business at 4440 El Camino Real, Los Altos, California, 94022.

8  **JURISDICTION AND VENUE**

9  **PARAGRAPH NO. 80:**

10  This Court has subject matter jurisdiction over SEC's and SEA's patent counterclaims,

11  which arise under the patent laws of the United States pursuant to 28 U.S.C. §§ 1331, 1338, 2201,

12  and 2202. This Court has subject matter jurisdiction over SEC's and SEA's state law claims

13  pursuant to 28 U.S.C. §§ 1332 and 1337, as SEC is a foreign citizen, SEA is a citizen of the State

14  of New Jersey, Rambus is a citizen of the States of California and Delaware, and the amount in

15  controversy exceeds $75,000; further, some or all of these claims fall within the Court's

16  supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because some of these claims are so

17  related to the patent claims that they form part of the same case or controversy.

18  **RESPONSE TO PARAGRAPH NO. 80:**

19  Rambus admits that the United States District Court for the Northern District of California

20  has subject matter jurisdiction over this action.  Rambus denies that this Court has supplemental

21  jurisdiction over state law claims pursuant to 28 U. S. C. § 1367.  Except as expressly admitted,

22  Rambus denies the allegations contained in paragraph no. 80.

23  **PARAGRAPH NO. 81:**

24  This Court has personal jurisdiction over Rambus at least because Rambus filed its claim

25  for patent infringement in this Court, in response to which these counterclaims are filed.

26  **RESPONSE TO PARAGRAPH NO. 81:**

27  Rambus admits that this Court has personal jurisdiction over Rambus because Rambus is

28  a resident of the State of California.  Except as expressly admitted, Rambus denies the allegations

- 29 -

1   of paragraph no. 81.

2   **PARAGRAPH NO. 82:**

3       Venue is established in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

4   Venue is additionally proper in this Court because Rambus has consented to the propriety of

5   venue in this Court by filing its claims for patent infringement in this Court, in response to which

6   these counterclaims are filed.  Further, Rambus is a resident of the State of California and is

7   generally present here.

8   **RESPONSE TO PARAGRAPH NO. 82:**

9       Rambus admits that venue is proper in this judicial district.

10  **GENERAL ALLEGATIONS**

11  **PARAGRAPH NO. 83:**

12      On or about October 31, 2000, SEC and Rambus entered into an agreement entitled

13  "SDR/DDR IC and SDR/DDR Memory Module Patent License Agreement Between Rambus Inc.

14  and Samsung Electronics Co., Ltd." (the "SDR/DDR License").

15  **RESPONSE TO PARAGRAPH NO. 83:**

16      Rambus admits the allegations of paragraph no. 83.

17  **PARAGRAPH NO. 84:**

18      Rambus claims to be the owner by assignment of U.S. Patent No. 5,915,105 (the "'105

19  Patent"), which is entitled "Integrated Circuit I/O Using A High Performance Bus Interface," and

20  which issued on June 22, 1999.

21  **RESPONSE TO PARAGRAPH NO. 84:**

22      Rambus admits the allegations contained in paragraph no. 84.

23  **PARAGRAPH NO. 85:**

24      Rambus claims to be the owner by assignment of U.S. Patent No. 5,953,263 (the "'263

25  Patent"), which is entitled "Synchronous Memory Device Having A Programmable Register And

26  Method of Controlling Same," and which issued on September 14, 1999.

27  **RESPONSE TO PARAGRAPH NO. 85:**

28      Rambus admits the allegations contained in paragraph no. 85.

1  **PARAGRAPH NO. 86:**

2      Rambus claims to be the owner by assignment of U.S. Patent No. 6,034,918 (the "'918

3  Patent"), which is entitled "Method of Operating A Memory Having A Variable Data Output

4  Length And A Programmable Register," and which issued on March 7, 2000.

5  **RESPONSE TO PARAGRAPH NO. 86:**

6      Rambus admits the allegations contained in paragraph no. 86.

7  **PARAGRAPH NO. 87:**

8      Rambus claims to be the owner by assignment of U.S. Patent No. 6,038,195 (the "'195

9  Patent"), which is entitled "Synchronous Memory Device Having A Delay Time Register and

10 Method of Operating Same," and which issued on March 14, 2000.

11 **RESPONSE TO PARAGRAPH NO. 87:**

12     Rambus admits the allegations contained in paragraph no. 87.

13 **PARAGRAPH NO. 88:**

14     Rambus claims to be the owner by assignment of U.S. Patent No. 6,067,592 (the "'592

15 Patent"), which is entitled "System Having A Synchronous Memory Device," and which issued

16 on May 23, 2000.

17 **RESPONSE TO PARAGRAPH NO. 88:**

18     Rambus admits the allegations contained in paragraph no. 88.

19 **PARAGRAPH NO. 89:**

20     Rambus claims to be the owner by assignment of U.S. Patent No. 6,101,152 (the "'152

21 Patent"), which is entitled "Method Of Operating A Synchronous Memory Device," and which

22 issued on August 8, 2000.

23 **RESPONSE TO PARAGRAPH NO. 89:**

24     Rambus admits the allegations contained in paragraph no. 89.

25 **PARAGRAPH NO. 90:**

26     Rambus claims to be the owner by assignment of U.S. Patent No. 6,324,120 (the "'120

27 Patent"), which is entitled "Memory Device Having A Variable Data Output Length," and which

28 issued on November 27, 2001.

- 31 -

**RESPONSE TO PARAGRAPH NO. 90:**

Rambus admits the allegations contained in paragraph no. 90.

**PARAGRAPH NO. 91:**

Rambus claims to be the owner by assignment of U.S. Patent No. 6,378,020 (the "'020 Patent"), which is entitled "System Having Double Data Transfer Rate And Intergrated [sic] Circuit Therefor," and which issued on April 23, 2002.

**RESPONSE TO PARAGRAPH NO. 91:**

Rambus admits the allegations contained in paragraph no. 91.

**PARAGRAPH NO. 92:**

Rambus claims to be the owner by assignment of U.S. Patent No. 6,426,916 (the "'916 Patent"), which is entitled "Memory Device Having A Variable Data Output Length And A Programmable Register," and which issued on July 30, 2002.

**RESPONSE TO PARAGRAPH NO. 92:**

Rambus admits the allegations contained in paragraph no. 92.

**PARAGRAPH NO. 93:**

Rambus claims to be the owner by assignment of U.S. Patent No. 6,452,863 (the "'863 Patent"), which is entitled "Method Of Operating A Memory Device Having A Variable Data Input Length," and which issued on September 17, 2002.

**RESPONSE TO PARAGRAPH NO. 93:**

Rambus admits the allegations contained in paragraph no. 93.

**PARAGRAPH NO. 94:**

Samsung and Rambus executed the first license between them, which granted Samsung a license to use Rambus's RDRAM technology, in November of 1994.  This marked the beginning of what would be, at least until the litigation between them began, an extensive and cooperative business relationship.  After two years of close cooperation on marketing and engineering to develop, market, and sell Samsung's RDRAM, the parties negotiated a First Addendum to the RDRAM license in February of 1997.  Samsung continued for the next three-and-a-half years to promote and manufacture Rambus's product, and in July 2000 the parties negotiated a Second

1  Addendum to the RDRAM license.  Samsung is still licensed to use RDRAM technology and

2  continues to manufacture and sell RDRAMs today.

3  **RESPONSE TO PARAGRAPH NO. 94:**

4      Rambus admits that Samsung and Rambus executed a license in November 1994 which

5  granted Samsung a license to use Rambus's RDRAM technology.  Rambus admits that Samsung

6  and Rambus negotiated a First Addendum to the RDRAM license that was entered in February

7  1997.  Rambus admits that in July 2000, Samsung and Rambus entered into a Second Addendum

8  to the RDRAM license.  Rambus admits that Samsung is still licensed to use RDRAM technology

9  and continues to manufacture and sell RDRAM technology.  Except as expressly admitted,

10  Rambus denies the allegations of paragraph no. 94.

11  **PARAGRAPH NO. 95:**

12      Samsung and Rambus executed the SDR/DDR License to Rambus's patents that allegedly

13  cover, among other things, specific aspects of SDRAM and DDR DRAM technologies, in

14  October 2000. This was the first time that the parties' relationship involved mainstream memory

15  technologies, rather than just RDRAM.  The SDR/DDR License required Rambus to notify

16  Samsung if another, later license included a lower effective royalty rate; and, further to adjust

17  Samsung's rate to the lower effective rate.  (Section 3.8).  Further, the SDR/DDR License also

18  required good faith negotiation of a renewal.  (Section 8.5).  Finally, there is a duty of good faith

19  and fair dealing in the SDR/DDR License.

20  **RESPONSE TO PARAGRAPH NO. 95:**

21      In October 2000, Samsung and Rambus entered into the "SDR/DDR IC and SDR/DDR

22  Memory Module Patent License Agreement Between Rambus Inc. and Samsung Electronics Co.,

23  Ltd.."  Rambus admits that Section 3.8 provided: "If at any time during this Agreement, the

24  royalty rate agreed to be paid or ordered to be paid by a Third Party, whether by settlement or by

25  court or agency order, for products corresponding to SDR SDRAM, SDR SGRAM, DDR

26  SDRAM, or DDR SGRAM is lower than that specified in Section 3.1(b) of this Agreement,

27  Rambus shall notify Samsung, in writing, within ten (10) days of the effective date of such lower

28  royalty rate and such lower royalty rate shall be effective for this Agreement the first day of the

- 33 -

royalty reporting period in which written notice by Rambus is made.  If the lower royalty rate is limited geographically due to a court or agency order, then Samsung's lower royalty rate shall be similarly limited to sales in the same geographic area.  Should, by agreement, subsequent order, or amendment, modification, or reversal of the court or agency order (whether on appeal or otherwise), the lower royalty rate of any litigant change, then the royalty rate for Samsung shall change correspondingly, but not to exceed the rates specified in Section 3.1(b)."  Rambus further admits that Section 8.5 provided: "Assuming that this Agreement has not been terminated and that Samsung is not in breach hereof, the parties shall meet, six (6) months before the expiration of this Agreement, to negotiate in good faith with a view to achieving a mutually satisfactory patent license agreement under the Rambus Patents with respect to the Licensed Products, including, without limitation, an extension hereof or a new agreement."  Except as expressly admitted, Rambus denies the allegations of paragraph no. 95.

**PARAGRAPH NO. 96:**

The SDR/DDR License to Rambus's patents, executed between Samsung and Rambus, was just the most recent in a series of agreements that evidenced what Samsung believed to be a valuable business alliance between Samsung and Rambus in which both parties shared common business objectives.

**RESPONSE TO PARAGRAPH NO. 96:**

Rambus is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 96 about Samsung's belief, and, on that basis, denies the same. Rambus denies the allegations of paragraph no. 96.

**PARAGRAPH NO. 97:**

Samsung's belief in Rambus's intentions towards Samsung to maintain a profitable business alliance was further bolstered by Rambus's assertions during their numerous "partner meetings" that Samsung was a valued business partner and was dealing with Samsung in good faith and with the intent to promote the valuable business alliance between them.  Samsung was further and justifiably misled into believing that Rambus was dealing with Samsung honestly, in good faith, and was not secretly taking actions that would harm Samsung's business.

**RESPONSE TO PARAGRAPH NO. 97:**

Rambus is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 97 about Samsung's belief, and, on that basis, denies the same. Rambus denies the allegations of paragraph no. 97.

**PARAGRAPH NO. 98:**

Samsung, on the basis of its justified understanding that Rambus and Samsung were valuable business partners in a profitable business alliance, did not suspect and could not have expected Rambus to behave in a way that would jeopardize that relationship nor that its business ally, Rambus, would secretly work against Samsung's interests.

**RESPONSE TO PARAGRAPH NO. 98:**

Rambus denies the allegations of paragraph no. 98.

**Rambus's Aiding and Abetting Neil Steinberg's
Breach of Fiduciary Duties Owed to Samsung, a Current Client**

**PARAGRAPH NO. 99:**

Mr. Neil Steinberg began work for Samsung as an in-house attorney on or about November 16, 1994. He remained at Samsung as in-house counsel until on or about August 7, 1998. At all relevant times during his employment by Samsung, Mr. Steinberg had an employment agreement with Samsung.  The First Employment Agreement, dated November 16, 1994, was effective until November 16, 1996.  A Second Employment Agreement was effective from November 16, 1996, until Mr. Steinberg resigned from Samsung in August 1998.  Both agreements contained a provision prohibiting Mr. Steinberg from engaging in any alternative employment during the term of the agreement without prior written consent from Samsung.[3]

**RESPONSE TO PARAGRAPH NO. 99:**

Rambus is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 99, and, on that basis, denies the same.  Rambus denies the allegations of paragraph no. 99.

---

[3] A copy of Mr. Steinberg's Second Employment Agreement is attached as Exhibit A.

3159620.2

**PARAGRAPH NO. 100:**

Upon information and belief, by February of 1998, Rambus had secretly engaged Mr. Steinberg to actively work for it as an outside attorney, providing legal advice and strategies for the enforcement of legal claims, including patent claims against DRAM manufacturers, such as Samsung, notwithstanding the fact that Rambus knew Mr. Steinberg was employed as a full-time, in-house counsel for Samsung.

**RESPONSE TO PARAGRAPH NO. 100:**

Rambus denies the allegations of paragraph no. 100.

**PARAGRAPH NO. 101:**

As an in-house attorney for Samsung, Mr. Steinberg owed Samsung a fiduciary duty of utmost good faith and fair dealing and undivided loyalty and honesty in fact.

**RESPONSE TO PARAGRAPH NO. 101:**

The allegations in paragraph no. 101 constitute conclusions of law and therefore do not require a response.  To the extent the allegations are deemed to constitute allegations of fact, Rambus denies the allegations of paragraph no. 101.

**PARAGRAPH NO. 102:**

Upon information and belief, at the request of Rambus, Mr. Steinberg actively worked to help Rambus, both as its outside and in-house counsel, to plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs, including Samsung.  Further, upon information and belief, Mr. Steinberg used information about Samsung's business and DRAM products in working for Rambus while he was under contractual and fiduciary duties not to disclose such information about Samsung's business or to use it contrary to Samsung's interests, regardless of whether such information was trade secret.

**RESPONSE TO PARAGRAPH NO. 102:**

Rambus admits that Neil Steinberg worked as both in-house and outside counsel on intellectual property matters, including licensing and patent prosecution.  Except as expressly

1   admitted, Rambus denies the allegations of paragraph no. 102.

2   **PARAGRAPH NO. 103:**

3   More specifically, upon information and belief, Rambus's efforts to extract royalties from

4   Samsung for its SDR and DDR SDRAM sales began in 1997, when Rambus hired Mr. Joel Karp,

5   a senior managing director at Samsung who negotiated, among other licenses, the RDRAM

6   license with Rambus on behalf of Samsung.  Because Samsung was not privy to Rambus's patent

7   acquisition and enforcement strategies and had no way to know that Rambus was planning to

8   target Samsung's products, it had no reason to be alarmed when Rambus, its strategic business

9   partner, hired Mr. Karp to be its Vice President of Intellectual Property.  Also unknown to

10  Samsung at the time was the fact that, after Mr. Karp left Samsung, he stayed in touch with an in-

11  house Samsung attorney, Neil Steinberg.  Indeed, while he was still at Samsung (and Mr. Karp

12  was at Rambus), Mr. Steinberg spoke with Mr. Karp on the phone three to four times a week,

13  oftentimes about Samsung matters.  Such frequent conversations could not be explained as

14  merely friendly chats, given that Samsung's subsequent internal investigation has confirmed that

15  Mr. Karp and Mr. Steinberg were not close social friends and infrequently socialized during their

16  mutual employment at Samsung.

17  **RESPONSE TO PARAGRAPH NO. 103:**

18  Rambus admits that while Mr. Steinberg was working for Samsung, Joel Karp and Mr.

19  Steinberg spoke on the telephone.  Rambus further admits that it hired Joel Karp in 1997.  Except

20  as expressly admitted, Rambus denies the allegations of paragraph no. 103.

21  **PARAGRAPH NO. 104:**

22  Upon information and belief, due to Mr. Steinberg's role as Samsung's trusted in-house

23  counsel, Mr. Steinberg was privy to extensive Samsung confidential and proprietary information

24  that he discussed with Mr. Karp while still employed by Samsung.  In particular, during his

25  employment with Samsung, Mr. Steinberg primarily worked on Samsung patents relating to

26  DRAM technology and was also involved in litigation regarding patents being asserted against

27  Samsung.  Mr. Steinberg, therefore, was privy to confidential and sensitive information about

28  DRAM products, including SDRAM and DDR SDRAM, that were still in development at

1    Samsung, as well as confidential information about inventions and innovations that Samsung

2    included in its DRAM products.  For example, Mr. Steinberg helped draft patent claims during

3    prosecution of a patent application that issued as U.S. Patent No. 5,835,956 (the "'956 Patent").

4    The '956 Patent relates to DRAM technology and is asserted as prior art to the patents-in-suit in

5    co-pending patent litigation.  In fact, Mr. Steinberg prosecuted at least eight Samsung DRAM

6    patents, including U.S. Patent Nos. 6.438,083, 6,343,036, 6,279,116, 5,838,990, 5,835,956,

7    5,703,828, 5,631,871, and 559,008.

8    **RESPONSE TO PARAGRAPH NO. 104:**

9         Rambus is without knowledge or information sufficient to form a belief as to the truth of

10   the allegations in paragraph no. 104, and, on that basis, denies the same.  Rambus denies the

11   allegations of paragraph no. 104.

12   **PARAGRAPH NO. 105:**

13        Mr. Steinberg was also made aware of Samsung's then-future development plans for

14   DRAM products through his use of product roadmaps in discovery in litigation and in patent

15   licensing endeavors.  In addition, Mr. Steinberg was intimately familiar with Samsung's

16   proprietary patent prosecution and licensing strategies, which he implemented while employed as

17   Samsung's in-house counsel.  Further, Mr. Steinberg had worked with Samsung employees on a

18   strategy to draft patent claims to protect Samsung's specific implementation of JEDEC standard

19   features of SDRAM and DDR SDRAM Technology, and was intimately familiar with how

20   Samsung's implementation of JEDEC features was done in its products and how Samsung

21   planned to protect those features.  The '956 patent was work product as part of this effort to

22   protect Samsung's implementation of its JEDEC-compliant products and features.

23   **RESPONSE TO PARAGRAPH NO. 105:**

24        Rambus is without knowledge or information sufficient to form a belief as to the truth of

25   the allegations in paragraph no. 105, and, on that basis, denies the same.  Rambus denies the

26   allegations of paragraph no. 105.

27   **PARAGRAPH NO. 106:**

28        Armed with this wealth of knowledge, Mr. Steinberg was speaking to Mr. Karp at Rambus

1    about Samsung matters three to four times a week, including such times when he was working on

2    patent protection for Samsung's implementation of JEDEC standards, such as the '956 patent

3    application and other projects.  Upon information and belief, because Mr. Karp's job at Rambus

4    was to implement a patent-enforcement strategy against DRAM manufacturers, including

5    Samsung, Mr. Karp was particularly interested in learning proprietary information from Mr.

6    Steinberg about Samsung's DRAM products and product plans.  Samsung did not even know

7    about these communications at the time, and certainly not of their content.  Upon information and

8    belief, however, the matters discussed between Mr. Steinberg and Mr. Karp during those secret

9    conversations included the projects that Mr. Steinberg was working on while at Samsung from

10   late 1997 to August 1998, as well as proprietary information relating to Samsung's DRAM

11   products and technology and related inventions and innovations, future products, legal strategies,

12   and Samsung patent prosecution and licensing strategies.

13   **RESPONSE TO PARAGRAPH NO. 106:**

14        Rambus admits that while Mr. Steinberg was working for Samsung, Joel Karp and Mr.

15   Steinberg spoke on the telephone.  Rambus is without knowledge or information sufficient to

16   form a belief as to the truth of the allegations in paragraph no. 106 about whether Samsung knew

17   the extent that Mr. Steinberg and Mr. Karp spoke by telephone, and, on that basis, denies the

18   same.  Except as expressly admitted, Rambus denies the allegations of paragraph no. 106.

19   **PARAGRAPH NO. 107:**

20        It is particularly notable that, at this same time, Mr. Karp was secretly meeting with

21   outside counsel for Rambus to plan suits against Samsung and others.  Indeed, contemporaneous

22   internal Rambus documents, revealed for the first time during the *Infineon* unclean-hands trial in

23   2005, state that Rambus was making itself "battle ready" for litigation, and was pursuing patent

24   coverage that would include features of non-Rambus DRAMs.  This "strategic licensing and

25   litigation" strategy was being planned by Mr. Karp and presented to the Rambus Board of

26   directors at the same time that Mr. Karp was speaking with Mr. Steinberg three to four times a

27   week about Samsung matters.  Documents revealed for the first time during the *Infineon* 2005

28   trial showed that during the winter and spring of 1998, Rambus had under Mr. Karp's supervision

1   reverse engineered Samsung products to analyze them for infringement lawsuits.

2   **RESPONSE TO PARAGRAPH NO. 107:**

3     Rambus denies the allegations of paragraph no. 107.

4   **PARAGRAPH NO. 108:**

5     After Mr. Steinberg officially resigned from Samsung in August 1998, he continued

6   working for Rambus as outside counsel, eventually joining Rambus full-time as in-house counsel.

7   Although Mr. Steinberg was no longer employed as in-house counsel for Samsung, he still owed

8   continuing duties to safeguard Samsung's confidential and proprietary information.  These duties

9   arose from Mr. Steinberg's employment contract, which imposed continuing duties of

10  confidentiality, as well as from Mr. Steinberg's ethical obligations owed to Samsung as a former

11  client.  Upon information and belief, Mr. Steinberg violated these duties by continuing to disclose

12  and use Samsung proprietary information in his work for Rambus.   In particular, upon

13  information and belief, Mr. Steinberg continued to make disclosure and use of Samsung

14  information when he was an outside attorney for Rambus and prosecuting Rambus patents

15  relating to SDRAM and DDR SDRAM technology.  Further, upon information and belief, Mr.

16  Steinberg also disclosed and used Samsung information as in-house counsel for Rambus, where

17  he reported to Mr. Karp and was handling patent prosecution, licensing, and litigation matters

18  relating to SDRAM and DDR SDRAM technologies.

19  **RESPONSE TO PARAGRAPH NO. 108:**

20    Rambus admits that in August 1998, Mr. Steinberg worked for Rambus as outside counsel

21  and later joined Rambus full-time as in-house counsel.  Rambus is without knowledge or

22  information sufficient to form a belief as to the truth of the allegations in paragraph no. 108 about

23  Mr. Steinberg's employment contract, if such a contract exists, and, on that basis, denies the

24  same.  Except as expressly admitted, Rambus denies the allegations of paragraph no. 108.

25  **PARAGRAPH NO. 109:**

26    Rambus's change in its patent posture is evidence of Mr. Steinberg's revelations of

27  Samsung confidential information to Rambus.  Before Mr. Steinberg was requested to breach his

28  fiduciary and contractual duties to Samsung and disclose Samsung information to Mr. Karp and

1   Rambus in 1997 and 1998, Rambus's patent claims were focused on Rambus's own proprietary

2   RDRAM technology. Up until that time, moreover, Rambus's patent portfolio was not asserted

3   against features of DRAMs made by Samsung.  As a result of Mr. Steinberg's disclosures to

4   Rambus, however, Rambus was able to draft new patent claims that Rambus now alleges are

5   infringed by Samsung DRAM products.  In fact, Mr. Steinberg has testified that he was the one

6   who came up with the idea for Rambus's Strategic Patent Portfolio Project, which was designed

7   to obtain patents that could be used as a part of a licensing and enforcement strategy against

8   DRAM manufacturers, including Samsung.  In undertaking the Strategic Patent Portfolio Project,

9   Mr. Steinberg aggressively pursued patent applications to cover DRAM technology.  As a part of

10  this Project, Rambus continued to reverse engineer Samsung products.

11  **RESPONSE TO PARAGRAPH NO. 109:**

12      Rambus admits that Neil Steinberg worked as both in-house and outside counsel on

13  intellectual property matters, including licensing and patent prosecution.  Except as expressly

14  admitted, Rambus denies the allegations of paragraph no. 109.

15  **PARAGRAPH NO. 110:**

16      Rambus was aware that Mr. Steinberg was still employed as an attorney by Samsung

17  when Rambus engaged his services.  Rambus was further aware of the fiduciary capacity in

18  which Mr. Steinberg worked for Samsung, and of the duties that Mr. Steinberg owed to Samsung.

19  Mr. Steinberg's duties to Samsung included an obligation to disclose violations of those duties.

20  **RESPONSE TO PARAGRAPH NO. 110:**

21      Rambus denies the allegations of paragraph no. 110.

22  **PARAGRAPH NO. 111:**

23      Mr. Steinberg remained silent and concealed from Samsung his work for Rambus in

24  contravention of his on-going obligations with Samsung, including information about his dual

25  employment with Samsung and Rambus.  Rambus likewise mislead Samsung as to its true

26  intentions regarding their strategic alliance, allowing Samsung to invest heavily in manufacturing,

27  marketing, and otherwise promoting their joint projects in RDRAM while secretly reverse

28  engineering Samsung parts for infringement lawsuits, making itself "battle ready" for a suit

1   against Samsung, and secretly consulting with Mr. Steinberg against Samsung's interests.

2   **RESPONSE TO PARAGRAPH NO. 111:**

3   Rambus denies the allegations of paragraph no. 111.

4   **PARAGRAPH NO. 112:**

5   Samsung justifiably relied on Mr. Steinberg faithfully fulfilling his duties owed to

6   Samsung, including the obligation to disclose violations of those duties.   Samsung further

7   justifiably relied on Mr. Steinberg's silence as indication that he did not violate his duties.

8   Samsung likewise relied upon the representations by Rambus that it was working with Samsung

9   in a strategic alliance to their mutual benefit and Rambus's encouragement that Samsung continue

10   to invest money and manpower in this strategic alliance.

11   **RESPONSE TO PARAGRAPH NO. 112:**

12   Rambus denies the allegations of paragraph no. 112.

13   **PARAGRAPH NO. 113:**

14   Rambus was aware of Mr. Steinberg's failure to disclose his dual employment to

15   Samsung, in contravention of his duties to Samsung.   Nevertheless, Rambus secretly engaged Mr.

16   Steinberg's services when Rambus was aware that Mr. Steinberg was still employed as an

17   attorney by Samsung and facilitated Mr. Steinberg's silence on his dual employment and, upon

18   information and belief, his use of information about Samsung's business and DRAM products in

19   working for Rambus.   Rambus likewise kept its litigation planning against Samsung and its

20   retention of Mr. Steinberg secret from Samsung.

21   **RESPONSE TO PARAGRAPH NO. 113:**

22   Rambus denies the allegations of paragraph no. 113.

23   **PARAGRAPH NO. 114:**

24   Rambus knew or should have known that hiring Mr. Steinberg while he was still

25   employed by Samsung would be considered contrary to the purpose of maintaining a profitable

26   business alliance between Rambus and Samsung.   Nevertheless, Rambus concealed from

27   Samsung that it had secretly engaged Mr. Steinberg's services when Rambus was aware that he

28   was still employed as an attorney by Samsung and facilitated Mr. Steinberg's silence on his dual

3159620.2

1    employment and, upon information and belief, his use of information about Samsung's business
2    and DRAM products in working for Rambus.

3    **RESPONSE TO PARAGRAPH NO. 114:**

4        Rambus denies the allegations of paragraph no. 114.

5    **PARAGRAPH NO. 115:**

6        Rambus, by its concealment, falsely represented to Samsung that it was still interested in
7    faithfully remaining a business partner with Samsung in their profitable business alliance at a
8    time when, as a result of its knowledge that Mr. Steinberg was breaching his fiduciary duties to
9    Samsung at Rambus's request and on its behalf, and because Rambus sponsored false testimony,
10   and upon information and belief continues to sponsor false testimony, as well as destruction of
11   documents, to conceal this wrongdoing, Rambus had a duty to speak.

12   **RESPONSE TO PARAGRAPH NO. 115:**

13       Rambus denies the allegations of paragraph no. 115.

14   **PARAGRAPH NO. 116:**

15       The existence of Mr. Steinberg's dual employment with Samsung and Rambus was
16   publicly revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District
17   Court for the Eastern District of Virginia in 2005, and could not have been discovered by
18   Samsung before that time.  Specifically, heavily redacted legal invoices from Mr. Steinberg to
19   Rambus dated in June and July of 1998, two months before Mr. Steinberg resigned from
20   Samsung, were produced by Rambus for the very first time in connection with the *Infineon*
21   unclean-hands trial in early 2005. Furthermore, Mr. Steinberg testified in a deposition introduced
22   by video at the unclean-hands trial that he performed legal services for Rambus beginning in June
23   1998. These documents and facts were not discoverable by Samsung or anyone else outside of
24   Rambus before 2005, and would remain concealed today if Rambus had not included as entries
25   on its *Infineon* privilege log two documents prepared by Mr. Steinberg in June and July of 1998.
26   Indeed, Mr. Steinberg had previously falsely testified in 2001 and again in 2004 that he had not
27   performed any legal work for Rambus prior to August 17, 1998, the date he resigned from
28   Samsung.  Mr. Steinberg's perjury was a specific act of fraud that concealed Rambus's aiding and

1    abetting of Mr. Steinberg's breaches of his fiduciary duties to Samsung, its intentional

2    interference with Mr. Steinberg's employment contract with Samsung, and Rambus's unfair

3    business practices. Rambus and Mr. Steinberg have likewise testified in this Court that Mr.

4    Steinberg's representation of Rambus while employed by Samsung was limited to a single

5    unrelated project one weekend in early June 1998.  However, documents produced by Rambus

6    clearly imply this testimony is false as they show meetings and/or interactions between Rambus

7    and Mr. Steinberg while Mr. Steinberg was employed by Samsung for business purposes at times

8    other than this one weekend. Upon information and belief, this testimony presented by Rambus

9    and Mr. Steinberg as recently as 2006 in this Court is part of a continuing fraud and deception to

10   cover up Rambus's and Mr. Steinberg's wrongful acts.

11   **RESPONSE TO PARAGRAPH NO. 116:**

12           Rambus admits that Mr. Steinberg testified in a videotaped deposition, introduced in 2005

13   at the unclean hands trial in *Rambus v. Infineon* in the Eastern District of Virginia, that he

14   performed legal services for Rambus in June 1998.  Rambus further admits that Rambus's

15   30(b)(6) designee and Mr. Steinberg have testified that Mr. Steinberg's representation of Rambus

16   prior to August 7, 1998 was 4.5 hours of work over one weekend on a project unrelated to the

17   issues in this litigation.  Rambus further admits that Mr. Steinberg testified in 2001 and April

18   2004 that the first legal work he recalled doing for Rambus was on or about August 17, 1998.

19   Rambus further admits that Mr. Steinberg signed a declaration on December 2, 2004 stating that

20   after providing that earlier testimony, Mr. Steinberg had the opportunity to review certain

21   documents that he had not seen prior to his earlier testimony and after his review of those

22   documents, Mr. Steinberg then testified that he believed the first legal work that he performed for

23   Rambus was on June 6 and 8, 1998.  Except as expressly admitted, Rambus denies the allegations

24   of paragraph no. 116.

25                      **Rambus's Aiding and Abetting Neil Steinberg's**
                        **Breach of Contractual Duties Owed to Samsung**
26

27   **PARAGRAPH NO. 117:**

28           During the Spring and Summer of 1998, Mr. Steinberg, in-house counsel for Samsung,

had a written employment contract with Samsung for a specific term, which permitted Mr. Steinberg to work only for Samsung during the term of that contract unless Samsung gave him permission otherwise.  This contract also included specific obligations of nondisclosure and confidentiality, in addition to those imposed ethically and by law on Mr. Steinberg through his fiduciary capacity as an attorney.  Specifically, the contract prohibited Mr. Steinberg from disclosing "any processes, formulas, improvements, inventions, discoveries, trade secrets, or other proprietary information" to any person without Samsung's prior written consent.

**RESPONSE TO PARAGRAPH NO. 117:**

Rambus is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 117, and, on that basis, denies the same.  Rambus denies the allegations of paragraph no. 117.

**PARAGRAPH NO. 118:**

Rambus was aware that Mr. Steinberg was employed as in-house counsel for Samsung under a written employment contract for a specific term.  Rambus was further aware that at the time Mr. Steinberg's employment began with Rambus, his written employment contract had not been terminated and was still in effect.  Also during this time, Rambus knew that Mr. Steinberg's contract included nondisclosure clauses and restrictions on additional employment, and that Samsung had not consented to (and was unaware of) Mr. Steinberg's employment by Rambus.

**RESPONSE TO PARAGRAPH NO. 118:**

Rambus denies the allegations of paragraph no. 118.

**PARAGRAPH NO. 119:**

Nevertheless, contrary to Mr. Steinberg's express contractual obligations to Samsung, Rambus employed Mr. Steinberg to perform work on behalf of Rambus.  Upon information and belief, at the request of Rambus Mr. Steinberg actively worked to help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs, including Samsung, as outlined in paragraphs 102-109 above.  Further, upon information and belief, Mr. Steinberg used information

1    about Samsung's business and DRAM products in working for Rambus, as outlined in paragraphs

2    102-109 above, including but not limited to facts developed for the prosecution of the '956 patent

3    and strategies for protection of Samsung's JEDEC-compliant products as partially implemented

4    in the '956 patent, product roadmaps (plans for development of future products and plans for their

5    release), and Samsung's own internal licensing discussions and internal litigation strategy

6    discussions, while he was under contractual and fiduciary duties not to disclose such information

7    about Samsung's business or use it contrary to Samsung's interests, regardless of whether such

8    information was trade secret.  As a result, Rambus intentionally interfered with the Steinberg-

9    Samsung employment contract by hiring Mr. Steinberg in February of 1998.

10   **RESPONSE TO PARAGRAPH NO. 119:**

11   Rambus admits that Neil Steinberg worked as both in-house and outside counsel on

12   intellectual property matters, including licensing and patent prosecution.  Rambus is without

13   knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph

14   no. 119 about Mr. Steinberg's employment contract, and, on that basis, denies the same.  Except

15   as expressly admitted, Rambus denies the allegations of paragraph no. 119.

16   **PARAGRAPH NO. 120:**

17   Mr. Steinberg was obligated to disclose violations of his contractual duties to Samsung.

18   Likewise Mr. Steinberg has continued in his testimony in later litigation, including his most

19   recent testimony in this Court, to misrepresent his relationship and work for Rambus while

20   employed by Samsung.  Upon information and belief, Rambus has sponsored and promoted this

21   false testimony.

22   **RESPONSE TO PARAGRAPH NO. 120:**

23   Rambus denies the allegations of paragraph no. 120.

24   **PARAGRAPH NO. 121:**

25   Mr. Steinberg remained silent and concealed from Samsung his work for Rambus in

26   contravention of his on-going obligations with Samsung, including the concealment of

27   information about his dual employment with Samsung and Rambus.

28

**RESPONSE TO PARAGRAPH NO. 121:**

Rambus denies the allegations of paragraph no. 121.

**PARAGRAPH NO. 122:**

Samsung justifiably relied on Mr. Steinberg faithfully fulfilling his duties owed to Samsung, including the obligation to disclose violations of those duties. Samsung further justifiably relied on Mr. Steinberg's silence as indication that he did not violate his duties.

**RESPONSE TO PARAGRAPH NO. 122:**

Rambus denies the allegations of paragraph no. 122.

**PARAGRAPH NO. 123:**

Rambus was aware that Mr. Steinberg's duties to Samsung included the obligation to disclose violations of those duties. Nevertheless, Rambus secretly engaged Mr. Steinberg's services when Rambus was aware that Mr. Steinberg was still employed as an attorney by Samsung and facilitated Mr. Steinberg's silence on his dual employment and, upon information and belief, his use of information about Samsung's business and DRAM products in working for Rambus.

**RESPONSE TO PARAGRAPH NO. 123:**

Rambus denies the allegations of paragraph no. 123.

**PARAGRAPH NO. 124:**

Rambus knew or should have known that its intentional interference with the Steinberg-Samsung employment contract would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung. Nevertheless, Rambus concealed from Samsung that it had secretly interfered with the Steinberg-Samsung employment contract. Upon information and belief, Rambus continues to conceal the true nature of Mr. Steinberg's employment by asserting privilege over the work product Mr. Steinberg and Rambus admit he created, and presenting testimony as to the limited scope of Mr. Steinberg's work that is not consistent with documents showing additional business meetings between Rambus and Mr. Steinberg while Mr. Steinberg was employed by Samsung.

3159620.2

1    **RESPONSE TO PARAGRAPH NO. 124:**

2        Rambus denies the allegations of paragraph no. 124**.**

3    **PARAGRAPH NO. 125:**

4        Rambus, by its concealment, falsely represented to Samsung that it was still interested in

5 faithfully remaining a business partner with Samsung in their profitable business alliance at a

6 time when, as a result of its knowledge that Mr. Steinberg was breaching his fiduciary duties to

7 Samsung at Rambus's request and on its behalf, and because Rambus sponsored false testimony,

8 and upon information and belief continues to sponsor false testimony, as well as destruction of

9 documents, to conceal this wrongdoing, Rambus had a duty to speak.

10    **RESPONSE TO PARAGRAPH NO. 125:**

11        Rambus admits that Mr. Steinberg testified in a videotaped deposition, introduced in 2005

12 at the unclean hands trial in *Rambus v. Infineon* in the Eastern District of Virginia, that he

13 performed legal services for Rambus in June 1998.   Rambus further admits that Rambus's

14 30(b)(6) designee and Mr. Steinberg have testified that Mr. Steinberg's representation of Rambus

15 prior to August 7, 1998 was 4.5 hours of work over one weekend on a project unrelated to the

16 issues in this litigation.   Rambus further admits that Mr. Steinberg testified in 2001 and April

17 2004 that the first legal work he recalled doing for Rambus was on or about August 17, 1998.

18 Rambus further admits that Mr. Steinberg signed a declaration on December 2, 2004 stating that

19 after providing that earlier testimony, Mr. Steinberg had the opportunity to review certain

20 documents that he had not seen prior to his earlier testimony and after his review of those

21 documents, Mr. Steinberg then testified that he believed the first legal work that he performed for

22 Rambus was on June 6 and 8, 1998.   Except as expressly admitted, Rambus denies the allegations

23 of paragraph no. 125.

24    **PARAGRAPH NO. 126:**

25        Rambus's intentional interference with Mr. Steinberg's contract with Samsung was

26 publicly revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District

27 Court for the Eastern District of Virginia in 2005 and could not have been discovered by

28 Samsung before that time.   Specifically, heavily redacted legal invoices from Mr. Steinberg to

1   Rambus dated in June and July of 1998, two months before Mr. Steinberg resigned from

2   Samsung, were produced by Rambus for the very first time in connection with the *Infineon*

3   unclean-hands trial in early 2005. Furthermore, Mr. Steinberg testified in a deposition introduced

4   by video at the unclean-hands trial that he performed legal services for Rambus beginning in June

5   1998. These documents and facts were not discoverable by Samsung or anyone else outside of

6   Rambus before 2005, and would remain concealed today if Rambus had not included as entries

7   on its *Infineon* privilege log two documents prepared by Mr. Steinberg in June and July of 1998.

8   Indeed, Mr. Steinberg had previously falsely testified in 2001 and again in 2004 that he had *not*

9   performed any legal work for Rambus prior to August 17, 1998, the date he resigned from

10  Samsung.  Mr. Steinberg's perjury was a specific act of fraud by both Rambus and Mr. Steinberg

11  that concealed Rambus's aiding and abetting of Mr. Steinberg's breaches of his fiduciary duties to

12  Samsung, its intentional interference with Mr. Steinberg's employment contract with Samsung,

13  and Rambus's unfair business practices.  Rambus and Mr. Steinberg have likewise testified in this

14  Court that Mr. Steinberg's representation of Rambus while employed by Samsung was limited to

15  a single unrelated project one weekend in early June 1998.  However, documents produced by

16  Rambus clearly imply this testimony is false as they show meetings and/or interactions between

17  Rambus and Mr. Steinberg while Mr. Steinberg was employed by Samsung for business purposes

18  at times other than this one weekend.  Upon information and belief, this testimony presented by

19  Rambus and Mr. Steinberg as recently as 2006 in this Court is part of a continuing fraud and

20  deception to cover up Rambus's and Mr. Steinberg's wrongful acts.

21  **RESPONSE TO PARAGRAPH NO. 126:**

22      Rambus admits that Mr. Steinberg testified in a videotaped deposition, introduced in 2005

23  at the unclean hands trial in *Rambus v. Infineon* in the Eastern District of Virginia, that he

24  performed legal services for Rambus in June 1998.  Rambus further admits that Rambus's

25  30(b)(6) designee and Mr. Steinberg have testified that Mr. Steinberg's representation of Rambus

26  prior to August 7, 1998 was 4.5 hours of work over one weekend on a project unrelated to the

27  issues in this litigation.  Rambus further admits that Mr. Steinberg testified in 2001 and April

28  2004 that the first legal work he recalled doing for Rambus was on or about August 17, 1998.

- 49 -

1   Rambus further admits that Mr. Steinberg signed a declaration on December 2, 2004 stating that

2   after providing that earlier testimony, Mr. Steinberg had the opportunity to review certain

3   documents that he had not seen prior to his earlier testimony and after his review of those

4   documents, Mr. Steinberg then testified that he believed the first legal work that he performed for

5   Rambus was on June 6 and 8, 1998.  Except as expressly admitted, Rambus denies the allegations

6   of paragraph no. 126.

7   **Rambus's Aiding and Abetting Neil Steinberg's**
**Breach of Fiduciary Duties Owed to Samsung, a Former Client**

8

9   **PARAGRAPH NO. 127:**

10      Mr. Steinberg ended his employment with Samsung in August 1998.

11  **RESPONSE TO PARAGRAPH NO. 127:**

12      Rambus is without knowledge or information sufficient to form a belief as to the truth of

13  the allegations in paragraph no. 127, and, on that basis, denies the same.  Rambus denies the

14  allegations of paragraph no. 127.

15  **PARAGRAPH NO. 128:**

16      Separate from his duties when employed at Samsung, after ending his employment with

17  Samsung, Mr. Steinberg owed Samsung those duties owed to a former client by a lawyer,

18  including the duty to not disclose information about Samsung's business or to use it contrary to

19  Samsung's interests, regardless of whether such information was trade secret, and the duty to

20  obtain informed consent before representing parties adverse to Samsung in matters substantially

21  related to those Mr. Steinberg worked on for Samsung.

22  **RESPONSE TO PARAGRAPH NO. 128:**

23      Rambus admits that a lawyer has ethical duties that vary from jurisdiction to jurisdiction,

24  and the precise parameters of Mr. Steinberg's ethical duties to Samsung constitute a legal

25  conclusion to which no response is required.  Except as expressly admitted, Rambus denies the

26  allegations of paragraph no. 128.

27  **PARAGRAPH NO. 129:**

28      Nevertheless, upon information and belief, Mr. Steinberg continued to actively work to

help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs, including Samsung, as outlined in paragraphs 102-109 above.  Further, upon information and belief, Mr. Steinberg used information about Samsung's business and DRAM products in working for Rambus, as outlined in paragraphs 102-109 above, including but not limited to his work on the '956 patent application, Samsung product roadmaps, Samsung licensing strategies and litigation strategies he had been part of while employed at Samsung, while he was under contractual and fiduciary duties not to disclose such information about Samsung's business or to use it contrary to Samsung's interests, regardless of whether such information was trade secret.

**RESPONSE TO PARAGRAPH NO. 129:**

Rambus admits that Neil Steinberg worked as both in-house and outside counsel on intellectual property matters, including licensing and patent prosecution.  Except as expressly admitted, Rambus denies the allegations of paragraph no. 129.

**PARAGRAPH NO. 130:**

Mr. Steinberg worked for Rambus without first obtaining Samsung's informed consent.

**RESPONSE TO PARAGRAPH NO. 130:**

Rambus is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 130, and, on that basis, denies the same.  Rambus denies the allegations of paragraph no. 130.

**PARAGRAPH NO. 131:**

Mr. Steinberg remained silent and concealed from Samsung all the facts and circumstances regarding his representation of Rambus in contravention of his on-going obligations with Samsung, including, on information and belief, information about his active work to help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs, including Samsung, as outlined in paragraphs 102-109 above.  In addition, he failed to inform

1  Samsung of, upon information and belief, his use of information about Samsung's business and

2  DRAM products in working for Rambus, as outlined in paragraphs 102-109 above, while he was

3  under contractual and fiduciary duties not to disclose such information about Samsung's business

4  or use it contrary to Samsung's interests, regardless of whether such information was trade secret.

5  **RESPONSE TO PARAGRAPH NO. 131:**

6  Rambus denies the allegations of paragraph no. 131**.**

7  **PARAGRAPH NO. 132:**

8  Rambus was aware that Mr. Steinberg was obligated to safeguard Samsung information

9  and to obtain informed consent from Samsung before working on certain matters adverse to

10  Samsung.   Rambus was further aware of the fiduciary capacity in which Mr. Steinberg had

11  worked for Samsung, and of the duties that Mr. Steinberg continued to owe to Samsung.

12  **RESPONSE TO PARAGRAPH NO. 132:**

13  Rambus denies the allegations of paragraph no. 132.

14  **PARAGRAPH NO. 133:**

15  Mr. Steinberg was obligated to disclose violations of those duties to Samsung.

16  **RESPONSE TO PARAGRAPH NO. 133:**

17  Rambus denies the allegations of paragraph no. 133.

18  **PARAGRAPH NO. 134:**

19  Mr. Steinberg remained silent and concealed from Samsung his work for Rambus in

20  contravention of his on-going obligations with Samsung, as did Rambus.

21  **RESPONSE TO PARAGRAPH NO. 134:**

22  Rambus denies the allegations of paragraph no. 134.

23  **PARAGRAPH NO. 135:**

24  Samsung justifiably relied on Mr. Steinberg faithfully fulfilling his duties owed to

25  Samsung, including the obligation to disclose violations of those duties.   Samsung further

26  justifiably relied on Mr. Steinberg's silence as indication that he did not violate his duties.

27  **RESPONSE TO PARAGRAPH NO. 135:**

28  Rambus denies the allegations of paragraph no. 135.

**PARAGRAPH NO. 136:**

Rambus was aware that Mr. Steinberg's duties to Samsung included the obligation to disclose violations of those duties.  Nevertheless, with awareness of Mr. Steinberg's continuing fiduciary responsibilities to Samsung, Rambus secretly engaged Mr. Steinberg's services that, upon information and belief, made use of Samsung information and dealt with matters adverse to Samsung and facilitated Mr. Steinberg's silence on, upon information and belief, his use of information about Samsung's business and DRAM products in working for Rambus.

**RESPONSE TO PARAGRAPH NO. 136:**

Rambus denies the allegations of paragraph no. 136.

**PARAGRAPH NO. 137:**

Rambus knew or should have known that allowing Mr. Steinberg to work on matters adverse to Samsung or that made use of Samsung information would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung. Nevertheless, Rambus concealed from Samsung that it had secretly engaged Mr. Steinberg's services that, upon information and belief, made use of Samsung information and dealt with matters adverse to Samsung and facilitated Mr. Steinberg's silence on, upon information and belief, his use of information about Samsung's business and DRAM products in working for Rambus.  Upon information and belief, Rambus further sponsored false testimony by Mr. Steinberg in court proceedings to continue to conceal the nature and extent of his relationship with Rambus.

**RESPONSE TO PARAGRAPH NO. 137:**

Rambus denies the allegations of paragraph no. 137.

**PARAGRAPH NO. 138:**

Rambus, by its concealment, falsely represented to Samsung that it was still interested in faithfully remaining a business partner with Samsung in their profitable business alliance at a time when, as a result of its knowledge that Mr. Steinberg was breaching his fiduciary duties to Samsung at Rambus's request and on its behalf, and because Rambus sponsored false testimony, and upon information and belief continues to sponsor false testimony, as well as destruction of

1    documents, to conceal this wrongdoing, Rambus had a duty to speak.

2    **RESPONSE TO PARAGRAPH NO. 138:**

3            Rambus denies the allegations of paragraph no. 138.

4    **PARAGRAPH NO. 139:**

5            The full nature of Mr. Steinberg's employment with Rambus, including work done for

6    Rambus that was adverse to Samsung's interests or that made use of information about

7    Samsung's business, was publicly revealed for the first time during the trial of *Rambus v.*

8    *Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005, and could not have

9    been discovered by Samsung before that time.  Specifically, heavily redacted legal invoices from

10   Mr. Steinberg to Rambus dated in June of 1998, two months before Mr. Steinberg resigned from

11   Samsung, were produced by Rambus for the very first time in connection with the *Infineon*

12   unclean-hands trial in early 2005. Furthermore, Mr. Steinberg testified in a deposition introduced

13   by video at the unclean-hands trial that he performed legal services for Rambus beginning in June

14   1998. These documents and facts were not discoverable by Samsung or anyone else outside of

15   Rambus before 2005, and would remain concealed today if Rambus had not included as entries

16   on its *Infineon* privilege log two documents prepared by Mr. Steinberg in June and July of 1998.

17   Indeed, Mr. Steinberg had previously falsely testified in 2001 and again in 2004 that he had *not*

18   performed any legal work for Rambus prior to August 17, 1998, the date he resigned from

19   Samsung.  Mr. Steinberg's perjury was a specific act of fraud that concealed Rambus's aiding and

20   abetting of Mr. Steinberg's breaches of his fiduciary duties to Samsung, its intentional

21   interference with Mr. Steinberg's employment contract with Samsung, and Rambus's unfair

22   business practices. Upon information and belief, Rambus and Mr. Steinberg have continued to

23   misrepresent their relationship in false testimony in court proceedings in 2006, where they

24   presented evidence that the Steinberg relationship with Rambus prior to his departure was limited

25   to one project over one weekend in June 1998 on a matter unrelated to Rambus's patents, when

26   documents produced and other evidence show that there were other contacts between Rambus and

27   Samsung while Samsung employed Mr. Steinberg.

28    **RESPONSE TO PARAGRAPH NO. 139:**

1    Rambus admits that Mr. Steinberg testified in a videotaped deposition, introduced in 2005

2    at the unclean hands trial in *Rambus v. Infineon* in the Eastern District of Virginia, that he

3    performed legal services for Rambus in June 1998.  Rambus further admits that Rambus's

4    30(b)(6) designee and Mr. Steinberg have testified that Mr. Steinberg's representation of Rambus

5    prior to August 7, 1998 was 4.5 hours of work over one weekend on a project unrelated to the

6    issues in this litigation.  Rambus further admits that Mr. Steinberg testified in 2001 and April

7    2004 that the first legal work he recalled doing for Rambus was on or about August 17, 1998.

8    Rambus further admits that Mr. Steinberg signed a declaration on December 2, 2004 stating that

9    after providing that earlier testimony, Mr. Steinberg had the opportunity to review certain

10    documents that he had not seen prior to his earlier testimony and after his review of those

11    documents, Mr. Steinberg then testified that he believed the first legal work that he performed for

12    Rambus was on June 6 and 8, 1998.  Except as expressly admitted, Rambus denies the allegations

13    of paragraph no. 139.

14

**Rambus's Anticompetitive Patent Enforcement
Strategies and Intentional Spoliation of Evidence**

15

16    **PARAGRAPH NO. 140:**

17    Rambus was organized to exploit the invention claimed by Mark Horowitz and Michael

18    Farmwald of a narrow, multiplexed bus, and a packet-based memory interface.

19    **RESPONSE TO PARAGRAPH NO. 140:**

20    Rambus was founded to promote and develop the revolutionary inventions of Mark

21    Horowitz and Michael Farmwald.  Except as expressly admitted, Rambus denies the allegations

22    of paragraph no. 140.

23    **PARAGRAPH NO. 141:**

24    In 1990, Rambus filed an application for a patent on the Horowitz-Farmwald claimed

25    invention(s).  Rambus believed that this application fully and comprehensively described and

26    claimed any and all inventions made by Horowitz and Farmwald.

27    **RESPONSE TO PARAGRAPH NO. 141:**

28    Rambus admits that, in 1990, United States patent application serial no. 07/510,898 was

3159620.2

1    filed and assigned to Rambus.  Except as expressly admitted, Rambus denies the allegations of

2    paragraph no. 141.

3    **PARAGRAPH NO. 142:**

4         Rambus implemented the Horowitz-Farmwald ideas in a specific interface which it called

5    Rambus DRAM, or "RDRAM."

6    **RESPONSE TO PARAGRAPH NO. 142:**

7         Rambus admits that it promoted certain of its technology under the acronym RDRAM.

8    Except as expressly admitted, Rambus denies the allegations of paragraph no. 142.

9    **PARAGRAPH NO. 143:**

10        Rambus's original and preferred objective was to establish RDRAM as the commodity

11   DRAM interface.

12   **RESPONSE TO PARAGRAPH NO. 143:**

13        Rambus admits that it licensed, and encouraged the manufacture and use of, certain of its

14   technology under the acronym RDRAM and hoped that it would be successful.   Except as

15   expressly admitted, Rambus denies the allegations of paragraph no. 143.

16   **PARAGRAPH NO. 144:**

17        To this end, Rambus began as early as 1991 to actively market RDRAM to the DRAM

18   industry including DRAM manufacturers, PC enablers including Intel, and industrial DRAM

19   users.

20   **RESPONSE TO PARAGRAPH NO. 144:**

21        Rambus denies the allegations of paragraph no. 144.

22   **PARAGRAPH NO. 145:**

23        From the beginning of its RDRAM marketing efforts, Rambus licensed and offered to

24   license the whole of its interface technology, including any future patents.  Prospective licensees

25   reasonably understood that they were bargaining for a license relating to any existing or future

26   Rambus patents.

27   **RESPONSE TO PARAGRAPH NO. 145:**

28        Rambus denies the allegations of paragraph no. 145.

3159620.2

**PARAGRAPH NO. 146:**

In marketing RDRAM to the DRAM industry, Rambus described the Rambus interface extensively.  Such descriptions invariably emphasized the unique and allegedly "revolutionary" characteristics of the Horowitz-Farmwald ideas, namely the single narrow and multiplexed bus and the packet based communication protocol.

**RESPONSE TO PARAGRAPH NO. 146:**

Rambus admits that in marketing RDRAM to the DRAM industry, Rambus described the Rambus interface extensively.  Except as expressly admitted, Rambus denies the allegations of paragraph no. 146.

**PARAGRAPH NO. 147:**

In marketing RDRAM to the DRAM industry, Rambus frequently and typically contrasted RDRAM with competitive interfaces, including the conventional DRAM interfaces then in common use, and with developing DRAM interfaces, including the SDRAM interfaces being standardized at JEDEC and the SyncLink interface.

**RESPONSE TO PARAGRAPH NO. 147:**

Rambus denies the allegations of paragraph no. 147.

**PARAGRAPH NO. 148:**

During the 1990's, Rambus participated actively in industry meetings on standards for SDRAMs and DDR SDRAMs at the Joint Electron Device Engineering Council ("JEDEC"). Rambus improperly used information it obtained as a result of its membership in JEDEC to secure additional patents and claims.  Rambus's use of this information was in violation of policies applicable to all JEDEC members.  Further, Rambus's failure to disclose to other members of JEDEC that it had taken information from JEDEC to craft its patent claims, only to seek to enforce its claims against JEDEC-compliant products many years after JEDEC members had invested heavily in the technology without notice of Rambus's conduct estops Rambus from enforcing its patents against JEDEC members.

**RESPONSE TO PARAGRAPH NO. 148:**

Rambus denies the allegations of paragraph no. 148.

3159620.2

1    **PARAGRAPH NO. 149:**

2        By February 1998, Rambus decided to litigate in order to license its purported SDRAM

3    and DDR SDRAM technology to the DRAM industry, as a means of eliminating or

4    disadvantaging such alternatives to Rambus technology.   By the Spring of 1998, before it

5    commenced its litigation strategy, Rambus was actively seeking to improve its SDRAM and DDR

6    SDRAM patent portfolio.

7    **RESPONSE TO PARAGRAPH NO. 149:**

8        Rambus denies the allegations of paragraph no. 149.

9    **PARAGRAPH NO. 150:**

10       Central to this litigation strategy was the repeated, company-wide, destruction of relevant

11   documents.  Rambus intentionally destroyed millions of pages of documents that it knew would

12   be relevant to its lawsuits against the users of competing PC DRAM interface technologies,

13   including this lawsuit against Samsung and others.   This strategy also included recruiting

14   Samsung employees to work for Rambus as employees or attorneys.

15   **RESPONSE TO PARAGRAPH NO. 150:**

16       Rambus denies the allegations of paragraph no. 150.

17   **PARAGRAPH NO. 151:**

18       During meetings held in February 1998, Rambus and its attorneys developed a multi-step

19   litigation strategy against DRAM manufacturers that included making Rambus "battle ready"

20   prior to litigation.   The strategy involved, among other things, destroying millions of relevant

21   documents and attempting to mask that wanton destruction under the guise of a document

22   "retention" policy.

23   **RESPONSE TO PARAGRAPH NO. 151:**

24       Rambus denies the allegations of paragraph no. 151.

25   **PARAGRAPH NO. 152:**

26       At the time this strategy was hatched, Rambus expressly contemplated suing DRAM

27   manufacturers on a number of theories, including breach of contract claims against those

28   manufacturers who were RDRAM licensees, patent-infringement claims against those who relied

1  on competing PC DRAM interface technology, and an action for collusion and/or unfair

2  competition against the DRAM suppliers.

3  **RESPONSE TO PARAGRAPH NO. 152:**

4      Rambus denies the allegations of paragraph no. 152.

5  **PARAGRAPH NO. 153:**

6      Rambus's stated goals for the third quarter of 1998 included implementing its document

7  destruction action plan.  This plan included a staff training event and a "summer housecleaning."

8  **RESPONSE TO PARAGRAPH NO. 153:**

9      Rambus admits that it adopted a document retention policy in 1998.  Rambus further

10  admits that its counsel, Dan Johnson, gave a presentation to certain Rambus employees regarding

11  document retention.  Rambus further admits that on September 2, 1998 and August 1999, Rambus

12  held housekeeping events or "Shred Days."  Except as expressly admitted, Rambus denies the

13  allegations of paragraph no. 153.

14  **PARAGRAPH NO. 154:**

15      In September 1998, Rambus commenced its first known "shred party." Rambus hired a

16  shredding service to come to Rambus's corporate headquarters in Mountain View, California on

17  September 3, 1998.  In accordance with Rambus's litigation strategy, Rambus distributed burlap

18  bags to all of its employees a week in advance of the shredding to enable those employees to

19  identify and collect documents to be shredded.  During this first shred party, Rambus began to

20  "cleanse" its patent prosecution and related files by destroying documents related to, at least,

21  patents that Rambus was planning to enforce against the DRAM industry. The destroyed

22  documents related to, among others, patents to which other Rambus patents claim priority,

23  including patents that issued after the first shred party.  Following "Shred Day," all Rambus

24  employees were invited to a party at 5:00 p.m. on September 3, 1998 to celebrate completion of

25  the document destruction.

26  **RESPONSE TO PARAGRAPH NO. 154:**

27      Rambus admits that on September 2, 1998, Rambus held a "Shred Day" and that some

28  documents were collected in burlap bags and shredded in a shredding truck on that day.  Rambus

1   further admits that there was an office gathering at the end of the day on September 2, 1998.

2   Except as expressly admitted, Rambus denies the allegations of paragraph no. 154.

3   **PARAGRAPH NO. 155:**

4       All told, Rambus employees shredded thousands of pages of documents on Shred Day

5   1998. In fact, so many documents were bagged for shredding that the shredding truck was filled

6   to capacity and had to return another day to finish the job.  By the end of the shredding, Rambus

7   had disposed of over 185 burlap sacks full of documents, and 60 banker's boxes full of

8   documents.  Upon information and belief, the destruction of documents deliberately included files

9   and papers that would show the projects Mr. Steinberg worked on for Rambus while employed by

10  Samsung, and misuse of Samsung's information about Samsung's products, its '956 patent

11  application, patent strategies and litigation and licensing strategies, as well as contacts between

12  Rambus and Mr. Steinberg while he was employed at Samsung.

13  **RESPONSE TO PARAGRAPH NO. 155:**

14      Rambus admits that on September 2, 1998, Rambus held a "Shred Day" and that some

15  documents were collected in burlap bags and shredded in a shredding truck on that day.  Rambus

16  further admits that a shredding truck returned to Rambus the next day.  Except as expressly

17  admitted, Rambus denies the allegations of paragraph no. 155.

18  **PARAGRAPH NO. 156:**

19      During April 1999, Rambus had its patent attorneys "cleanse" their files.

20  **RESPONSE TO PARAGRAPH NO. 156:**

21      Rambus denies the allegations of paragraph no. 156.

22  **PARAGRAPH NO. 157:**

23      In 1999, Rambus added further detail to its anticompetitive strategy. Rambus's 1999

24  litigation strategy expressly anticipated and planned for a potential "Nuclear Winter Scenario" in

25  the event Intel was to decide to move away from RDRAM to an alternative technology, such as

26  DDR SDRAM, SLDRAM, or some other PC DRAM interface technology that Rambus feared

27  might have been created by the DRAM manufacturers.  Rambus's planned response was to

28  discipline Intel "by cutting off" Intel's access to alternative technology, thus "threatening Intel's

3159620.2

1  current and future microprocessor based products."

2  **RESPONSE TO PARAGRAPH NO. 157:**

3       Rambus denies the allegations of paragraph no. 157.

4  **PARAGRAPH NO. 158:**

5       As a central part of its litigation plan, Rambus contemplated filing complaints against

6  various DRAM manufacturers.  The claims Rambus expressly contemplated in 1999 included: (i)

7  patent infringement claims against users of alternative technologies to RDRAM technology; (ii)

8  breach of contract claims "based on cancellation of RDRAM production;" (iii) fraud based on a

9  theory that the DRAM companies never intended to manufacture RDRAM, and (iv) the making

10  of statements about Rambus that the DRAM companies knew to be untrue; (v) unfair

11  competition; (vi) antitrust violations; and (vii) any other claims that might be brought based on a

12  theory that the DRAM manufacturers set out to destroy Rambus through their actions.  These

13  claims planned in 1999 include the very claims Rambus has alleged in its Complaint in this

14  action.

15  **RESPONSE TO PARAGRAPH NO. 158:**

16       Rambus denies the allegations of paragraph no. 158.

17  **PARAGRAPH NO. 159:**

18       In furtherance of Rambus's "nuclear winter" litigation scenario, Rambus set a series of

19  "IP Goals" for 1999. For the third quarter of 1999, the "Licensing/Litigation Readiness Goals"

20  included the following verbatim bullet-point items:

21       "E.    Prepare litigation strategy against 1 of 3 manufacturers (re: 3D)

22       "F.    Ready for Litigation with 30 days notice

23       "G.    Organize 1999 shredding party at Rambus"

24  **RESPONSE TO PARAGRAPH NO. 159:**

25       Rambus admits that there is a 1999 document that contains the text of the three bullet

26  point items set forth in paragraph no. 159.  Except as expressly admitted, Rambus denies the

27  allegations of paragraph no. 159.

28

3159620.2

- 61 -

**PARAGRAPH NO. 160:**

During August 1999, Rambus commenced its second known "shred party."  During this second shred party, Rambus again "cleansed" its patent prosecution and related files by destroying additional documents related to, at least, patents that Rambus was planning to enforce or was litigating against the DRAM industry.  The destroyed documents related to, among others, patents to which other Rambus patents claim priority, including patents that issued after the second shred party. All told, an additional 150 burlap bags filled with documents were destroyed - the equivalent of 188 banker's boxes or almost a half-a-million pages.  Upon information and belief, the destruction of documents deliberately included files and papers that would show the projects Mr. Steinberg worked on for Rambus while employed by Samsung, and misuse of Samsung's information about Samsung's products, its '956 patent application, patent strategies and litigation and licensing strategies, as well as contacts between Rambus and Mr. Steinberg while he was employed at Samsung.

**RESPONSE TO PARAGRAPH NO. 160:**

Rambus admits that in August 1999 Rambus held a "Shred Day."  Except as expressly admitted, Rambus denies the allegations of paragraph no. 160.

**PARAGRAPH NO. 161:**

During the Spring of 2000, Rambus was notified by its outside counsel that it had a duty to preserve all documents related to its patents and/or the litigation against DRAM manufacturers.

**RESPONSE TO PARAGRAPH NO. 161:**

Rambus admits that prior to filing suit against *Hitachi*, Rambus's outside lawyers instructed dozens of Rambus employees that they needed to preserve documents that could be relevant to the litigation.   Except as expressly admitted, Rambus denies the allegations of paragraph no. 161.

**PARAGRAPH NO. 162:**

During June 2000 and after its litigation with Hitachi settled, Rambus again asked its patent attorneys to destroy documents.

**RESPONSE TO PARAGRAPH NO. 162:**

Rambus denies the allegations of paragraph no. 162.

**PARAGRAPH NO. 163:**

During December 2000, while Rambus was actively litigating against numerous companies on antitrust, fraud, and patent claims, Rambus commenced its third known "shred party."  During this third shred party, Rambus again "cleansed" its patent prosecution and related files by destroying additional documents related to, at least, patents that Rambus was enforcing and litigating against the DRAM industry.  The destroyed documents related to, among others, patents to which other Rambus patents claim priority, including patents that issued after the third shred party. Shred Day 2000 turned out to be the largest Shred Day of them all.  All told, Rambus destroyed over 575 banker's boxes full of documents – one-and-a-half million pages – on Shred Day 2000. Although Rambus was then litigating numerous actions, Rambus employees were given no instructions to retain documents related to the litigations.  To ensure that its strategy to dispose of critical evidence worked, Rambus did not maintain any record of which documents it destroyed.  Upon information and belief, the destruction of documents deliberately included files and papers that would show the parties' interpretation of the 2000 SDR/DDR license between Samsung and Rambus consistent with Samsung's claims in this case and contrary to positions Rambus has taken in this lawsuit, deliberate efforts to deceive Samsung during the strategic alliance between Samsung and Rambus, misuse of information from the projects Mr. Steinberg worked on for Rambus while employed by Samsung, and misuse of Samsung's information about Samsung's products, its '956 patent application, patent strategies and litigation and licensing strategies, as well as contacts between Rambus and Mr. Steinberg while he was employed at Samsung.

**RESPONSE TO PARAGRAPH NO. 163:**

Rambus denies the allegations of paragraph no. 163.

**PARAGRAPH NO. 164:**

Samsung could not have discovered Rambus's destruction of documents until it was revealed publicly in a trial in *Rambus v. Infineon* in the Eastern District of Virginia in February

2005. Specifically, voluminous Rambus documents produced for the very first time in connection with the *Infineon* unclean-hands trial in early 2005 catalogued Rambus's adoption of a document retention policy in early 1998, its massive destruction of documents during at least three separate company-wide "Shred Days," and its instructions to outside patent counsel to destroy numerous documents from his Rambus patent files – documents that a patent-infringement defendant might use to defend against Rambus's infringement claims.  These documents and facts were not discoverable by Samsung or anyone else outside of Rambus before 2005, and would remain concealed today if the *Infineon* court had not broadly pierced Rambus's attorney-client privilege under the crime-fraud exception during preparations for the 2005 unclean-hands trial.

**RESPONSE TO PARAGRAPH NO. 164:**

Rambus admits that the Infineon court issued orders in 2001 and 2004 that pierced Rambus's attorney client privilege and work product protections such that Rambus was compelled to produce privileged documents in litigation.  Except as expressly admitted, Rambus denies the allegations of paragraph no. 164.

**PARAGRAPH NO. 165:**

Rambus's document destruction covered all major categories of documents generated in the ordinary course of Rambus's business, such as e-mail communications, notes of contract negotiations, and drafts and other information useful in ascertaining the truth and in testing the validity of the positions taken by Rambus in this and its other lawsuits.  The shredding included the destruction of evidence that related to, among other things:

a.      Rambus's prosecution of its patents,

b.      the relationship of Rambus's patent applications and pending claims to industry standards,

c.      presentations to Rambus's board of directors regarding intellectual property,

d.      potentially damaging or invalidating prior art related to patents asserted against DRAM manufacturers, including Samsung, as part of Rambus's litigation strategy,

e.      Rambus's draft license agreements and documents related to the negotiations for such license agreements, and

1        f.     on information and belief, other documents supporting Samsung's positions and

2  affirmative defenses in this case, and the facts alleged by Samsung in its Counterclaims, including

3  but not limited to the interpretation and negotiation of the 2000 SDR/DDR license between

4  Samsung and Rambus, Rambus's deception of Samsung during their strategic partnership (by

5  planning infringement litigation against Samsung while promoting their relationship), and the

6  nature and extent of Mr. Steinberg's breach of fiduciary duties while employed by Samsung and

7  after his employment by Samsung.

8  **RESPONSE TO PARAGRAPH NO. 165:**

9        Rambus denies the allegations in paragraph no. 165.

10  **PARAGRAPH NO. 166:**

11        Rambus's wholesale destruction of these and other categories of documents was intended

12  to and has prejudiced Samsung in this lawsuit, as well as other DRAM manufacturers and the

13  end-users of DRAM technology.  Samsung can only speculate as to what documents were

14  destroyed because Rambus kept no log of what was shredded.  Nevertheless, based on what is

15  revealed in those documents that *were* retained, Samsung has every reason to believe the

16  destroyed documents contained information that would further bring to light the wrongs by

17  Rambus that are alleged in these Counterclaims.

18  **RESPONSE TO PARAGRAPH NO. 166:**

19        Rambus admits that it kept no log of the documents that were shredded in the September

20  1998 and August 1999 Shred Days.  Except as expressly admitted, Rambus denies the allegations

21  in paragraph no. 166.

22  **PARAGRAPH NO. 167:**

23        Rambus's vice president of engineering testified under oath that he was ordered to purge

24  his files at least in part because "such materials are discoverable in subsequent litigations." A

25  lawyer in Rambus's in-house legal department testified that one of the understood reasons behind

26  the "Shred Days" was that "some of that stuff is discoverable."

27  **RESPONSE TO PARAGRAPH NO. 167:**

28        Rambus denies the allegations of paragraph no. 167.

**PARAGRAPH NO. 168:**

While attempting to make itself "battle ready," Rambus launched its litigation campaign against the DRAM manufacturers, with numerous patent suits against multiple DRAM manufacturers in various U.S. federal courts, as well as patent courts in Italy, German, France, and the United Kingdom.

**RESPONSE TO PARAGRAPH NO. 168:**

Rambus denies the allegations of paragraph no. 168.

**PARAGRAPH NO. 169:**

In the course of its lawsuits against the DRAM manufacturers, Rambus engaged in further litigation misconduct, including permitting its executives, attorneys, and employees to offer false or misleading testimony in multiple depositions about Rambus's destruction of documents.  In one such action brought by Rambus against Infineon in the Eastern District of Virginia, the Honorable Robert Payne found Rambus's spoliation and perjury so egregious that he dismissed summarily Rambus's claims against Infineon.  Having been presented with evidence of Rambus's (and its lawyers') misconduct, Judge Payne could only remark "Why are all these people lying?" Judge Payne felt compelled to warn all involved that their destruction of evidence could result in jail terms.  Rambus sponsored false testimony by Mr. Steinberg and its executives in litigation, only conceding some of the testimony was false as recently as 2006, while continuing to present testimony inconsistent with its own records.

**RESPONSE TO PARAGRAPH NO. 169:**

Rambus denies the allegations of paragraph no. 169.

**PARAGRAPH NO. 170:**

Rambus knew or should have known that its actions in implementing its strategy to exploit its anticompetitive agreements and litigation scheme against the DRAM manufacturers, including Samsung, would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung.  Nevertheless, Rambus engaged in such actions.

**RESPONSE TO PARAGRAPH NO. 170:**

Rambus denies the allegations of paragraph no. 170.

1

**PARAGRAPH NO. 171:**

2

Rambus, by its concealment, falsely represented to Samsung that it was still interested in

3

faithfully remaining a business partner with Samsung in their profitable business alliance at a

4

time when, as a result of its knowledge that Mr. Steinberg was breaching his fiduciary duties to

5

Samsung at Rambus's request and on its behalf, and because Rambus sponsored false testimony,

6

and upon information and belief continues to sponsor false testimony, as well as destruction of

7

documents, to conceal this wrongdoing, Rambus had a duty to speak.

8

**RESPONSE TO PARAGRAPH NO. 171:**

9

Rambus denies the allegations of paragraph no. 171.

10

**PARAGRAPH NO. 172:**

11

Rambus's destruction of documents in anticipation of litigation with Samsung, its unfair

12

employment of Neil Steinberg, and the full nature and extent of the unfair conduct by Rambus,

13

were publicly revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District

14

Court for the Eastern District of Virginia in 2005, and could not have been discovered by

15

Samsung before that time.  Specifically, voluminous Rambus documents produced for the very

16

first time in connection with the *Infineon* unclean-hands trial in early 2005 catalogued Rambus's

17

adoption of a document retention policy in early 1998, its massive destruction of documents

18

during at least three separate company-wide "Shred Days," and its instructions to outside patent

19

counsel to destroy numerous documents from his Rambus patent files – documents that a patent-

20

infringement defendant might use to defend against Rambus's infringement claims.   These

21

documents and facts were not discoverable by Samsung or anyone else outside of Rambus before

22

2005, and would remain concealed today if the *Infineon* court had not broadly pierced Rambus's

23

attorney-client privilege under the crime-fraud exception during preparations for the unclean-

24

hands trial. In addition, heavily redacted legal invoices from Mr. Steinberg to Rambus dated in

25

June and July of 1998, two months before Mr. Steinberg resigned from Samsung, were produced

26

by Rambus for the very first time in connection with the *Infineon* unclean-hands trial in early

27

2005. Furthermore, Mr. Steinberg testified in a deposition introduced by video at the unclean-

28

hands trial that he performed legal services for Rambus beginning in June 1998. These documents

- 67 -

1  and facts were not discoverable by Samsung or anyone else outside of Rambus before 2005, and

2  would remain concealed today if Rambus had not included as entries on its *Infineon* privilege log

3  two documents prepared by Mr. Steinberg in June and July of 1998. Indeed, Mr. Steinberg had

4  previously falsely testified in 2001 and again in 2004 that he had *not* performed any legal work

5  for Rambus prior to August 17, 1998, the date he resigned from Samsung.  Mr. Steinberg's

6  perjury was a specific act of fraud that concealed Rambus's aiding and abetting of Mr.

7  Steinberg's breaches of his fiduciary duties to Samsung, its intentional interference with Mr.

8  Steinberg's employment contract with Samsung, and Rambus's unfair business practices. Upon

9  information and belief, Mr. Steinberg and Rambus continue to conceal the true extent and nature

10  of their relationship by assertion of privilege over work Mr. Steinberg did for Rambus while

11  employed by Samsung, and by testifying to the limited engagement of one weekend in June,

12  which is inconsistent with records produced by Rambus (which appear incomplete).

13  **RESPONSE TO PARAGRAPH NO. 172:**

14         Rambus admits that Mr. Steinberg testified in a videotaped deposition, introduced in 2005

15  at the unclean hands trial in *Rambus v. Infineon* in the Eastern District of Virginia, that he

16  performed legal services for Rambus in June 1998.  Rambus further admits that Rambus's

17  30(b)(6) designee and Mr. Steinberg have testified that Mr. Steinberg's representation of Rambus

18  prior to August 7, 1998 was 4.5 hours of work over one weekend on a project unrelated to the

19  issues in this litigation.  Rambus further admits that Mr. Steinberg testified in 2001 and April

20  2004 that the first legal work he recalled doing for Rambus was on or about August 17, 1998.

21  Rambus further admits that Mr. Steinberg signed a declaration on December 2, 2004 stating that

22  after providing that earlier testimony, Mr. Steinberg had the opportunity to review certain

23  documents that he had not seen prior to his earlier testimony and after his review of those

24  documents, Mr. Steinberg then testified that he believed the first legal work that he performed for

25  Rambus was on June 6 and 8, 1998.  Except as expressly admitted, Rambus denies the allegations

26  of paragraph no. 172.

27  **PARAGRAPH NO. 173:**

28         Rambus continues today its strategy to exploit its anticompetitive agreements and

- 68 -

1   litigation scheme in an attempt to have "[o]ur standards dominate the DRAM interface market"

2   and "[c]ollect royalties on all DRAM and controllers forever."

3   **RESPONSE TO PARAGRAPH NO. 173:**

4       Rambus denies the allegations of paragraph no. 173.

5   **Evidence Revealed for the First Time During the *Infineon* Unclean-Hands Trial in 2005**

6   **PARAGRAPH NO. 174:**

7       As described above, the documents and facts that reveal Rambus's conduct upon which

8   Samsung's counterclaims are based were revealed publicly for the first time during the 2005

9   unclean-hands trial between Rambus and Infineon in the Eastern District of Virginia, and could

10  not have been discovered by Samsung before that time.   More specifically, in addition to

11  Samsung's factual allegations above, which are based almost entirely on information first learned

12  in 2005, at least the following facts first came to light during the 2005 *Infineon* trial and were

13  included in the findings of fact in the Eastern District of Virginia court's exceptional-case opinion

14  in *Samsung v. Rambus*.[4]  Samsung was not on notice that Mr. Steinberg had acted adversely to

15  Samsung's interest until it knew of these facts because, prior to that time, Samsung was not aware

16  of Rambus's long-standing and coordinated plan to extract royalties from the DRAM industry,

17  and therefore could not have known the improper and integral role that Mr. Steinberg's

18  employment by Rambus played therein:

19      **\*\* REMAINDER OF PARAGRAPH NO. 174 REDACTED \*\***

20  **RESPONSE TO PARAGRAPH NO. 174:**

21      Rambus denies the allegations of paragraph no. 174.

22              **COUNT I (Breach of Section 3.8 of the SDR/DDR License)**

23  **PARAGRAPH NO. 175:**

24      SEC and SEA reallege and incorporate by reference Paragraphs 1-174 above as though

25  fully set forth herein.

26

27

---

28  [4] A copy of the opinion is attached as Exhibit B.

1    **RESPONSE TO PARAGRAPH NO. 175:**

2         Rambus incorporates by this reference each of its denials, allegations or assertions in its

3    above responses to paragraphs 1-174, as if fully set forth herein.

4    **PARAGRAPH NO. 176:**

5         Section 3.8 of the SDR/DDR License requires Rambus to notify SEC of any lower

6    effective royalty rate paid by any third party for specific products defined in the SDR/DDR

7    License.

8    **RESPONSE TO PARAGRAPH NO. 176:**

9         Rambus admits that Section 3.8 provided: "If at any time during this Agreement, the

10   royalty rate agreed to be paid or ordered to be paid by a Third Party, whether by settlement or by

11   court or agency order, for products corresponding to SDR SDRAM, SDR SGRAM, DDR

12   SDRAM, or DDR SGRAM is lower than that specified in Section 3.1(b) of this Agreement,

13   Rambus shall notify Samsung, in writing, within ten (10) days of the effective date of such lower

14   royalty rate and such lower royalty rate shall be effective for this Agreement the first day of the

15   royalty reporting period in which written notice by Rambus is made.  If the lower royalty rate is

16   limited geographically due to a court or agency order, then Samsung's lower royalty rate shall be

17   similarly limited to sales in the same geographic area.  Should, by agreement, subsequent order,

18   or amendment, modification, or reversal of the court or agency order (whether on appeal or

19   otherwise), the lower royalty rate of any litigant change, then the royalty rate for Samsung shall

20   change correspondingly, but not to exceed the rates specified in Section 3.1(b)."  Except as

21   expressly admitted, Rambus denies the allegations of paragraph no. 176.

22   **PARAGRAPH NO. 177:**

23        Rambus and Infineon entered into a license agreement during the Spring of 2005 (the

24   "Rambus/Infineon License").  On information and belief, the Rambus/Infineon License provided

25   for an effective royalty rate that was lower than that being paid by SEC under the SDR/DDR

26   License.

27   **RESPONSE TO PARAGRAPH NO. 177:**

28        Rambus admits that it entered into a license agreement with Infineon during the Spring of

- 70 -

2005.  Except as expressly admitted, Rambus denies the allegations of paragraph no. 177.

**PARAGRAPH NO. 178:**

Rambus failed to notify SEC of the lower effective royalty rate agreed to be paid by Infineon as provided for in the Rambus/Infineon License.

**RESPONSE TO PARAGRAPH NO. 178:**

Rambus denies the allegations of paragraph no. 178.

**PARAGRAPH NO. 179:**

Rambus breached Section 3.8 of the SDR/DDR License Agreement by failing to notify SEC of the lower effective royalty rate provided for in the Rambus/Infineon License.

**RESPONSE TO PARAGRAPH NO. 179:**

Rambus denies the allegations of paragraph no. 179.

**PARAGRAPH NO. 180:**

Section 3.8 of the SDR/DDR License required Rambus to adjust the royalty rate paid by SEC to match any lower effective royalty rate paid by a third party.

**RESPONSE TO PARAGRAPH NO. 180:**

Rambus admits that Section 3.8 provided: "If at any time during this Agreement, the royalty rate agreed to be paid or ordered to be paid by a Third Party, whether by settlement or by court or agency order, for products corresponding to SDR SDRAM, SDR SGRAM, DDR SDRAM, or DDR SGRAM is lower than that specified in Section 3.1(b) of this Agreement, Rambus shall notify Samsung, in writing, within ten (10) days of the effective date of such lower royalty rate and such lower royalty rate shall be effective for this Agreement the first day of the royalty reporting period in which written notice by Rambus is made.  If the lower royalty rate is limited geographically due to a court or agency order, then Samsung's lower royalty rate shall be similarly limited to sales in the same geographic area.  Should, by agreement, subsequent order, or amendment, modification, or reversal of the court or agency order (whether on appeal or otherwise), the lower royalty rate of any litigant change, then the royalty rate for Samsung shall change correspondingly, but not to exceed the rates specified in Section 3.1(b)."  Except as expressly admitted, Rambus denies the allegations of paragraph no. 180.

**PARAGRAPH NO. 181:**

Rambus failed to adjust SEC's royalty rate following the execution of the Rambus/Infineon License.

**RESPONSE TO PARAGRAPH NO. 181:**

Rambus denies the allegations of paragraph no. 181.

**PARAGRAPH NO. 182:**

Rambus breached Section 3.8 of the SDR/DDR License by failing to adjust SEC's royalty rate based upon the lower effective royalty rate provided for in the Rambus/Infineon License.

**RESPONSE TO PARAGRAPH NO. 182:**

Rambus denies the allegations of paragraph no. 182.

**PARAGRAPH NO. 183:**

All conditions precedent have been met.

**RESPONSE TO PARAGRAPH NO. 183:**

Rambus denies the allegations of paragraph no. 183.

**PARAGRAPH NO. 184:**

SEC has suffered damages as a result of the breach by Rambus of Section 3.8 of the SDR/DDR License.

**RESPONSE TO PARAGRAPH NO. 184:**

Rambus denies the allegations of paragraph no. 184.

**COUNT II (Breach of Section 8.5 of the SDR/DDR License)**

**PARAGRAPH NO. 185:**

SEC and SEA reallege and incorporate by reference Paragraphs 1-184 above as though fully set forth herein.

**RESPONSE TO PARAGRAPH NO. 185:**

Rambus incorporates by this reference each of its denials, allegations or assertions in its above responses to paragraphs 1-184, as if fully set forth herein.

**PARAGRAPH NO. 186:**

Section 8.5 of the SDR/DDR License provides that SEC and Rambus will negotiate an

1    extension or renewal of the SDR/DDR License in good faith.

2    **RESPONSE TO PARAGRAPH NO. 186:**

3         Rambus admits that Section 8.5 provided: "Assuming that this Agreement has not been

4    terminated and that Samsung is not in breach hereof, the parties shall meet, six (6) months before

5    the expiration of this Agreement, to negotiate in good faith with a view to achieving a mutually

6    satisfactory patent license agreement under the Rambus Patents with respect to the Licensed

7    Products, including, without limitation, an extension hereof or a new agreement."   Except as

8    expressly admitted, Rambus denies the allegations of paragraph no. 186.

9    **PARAGRAPH NO. 187:**

10        Rambus failed to provide notice of certain terms of the Rambus/Infineon License as

11   required under Section 3.8 of the SDR/DDR License, thereby precluding good faith negotiations

12   for the extension or renewal of the SDR/DDR License.

13   **RESPONSE TO PARAGRAPH NO. 187:**

14        Rambus denies the allegations of paragraph no. 187.

15   **PARAGRAPH NO. 188:**

16        Rambus breached Section 8.5 of the SDR/DDR License by failing to provide SEC with

17   notice of those certain terms of the Rambus/Infineon License as required under Section 3.8 of the

18   SDR/DDR License.  By withholding notice of the terms, Rambus did not and could not negotiate

19   a new license agreement with SEC in good faith.

20   **RESPONSE TO PARAGRAPH NO. 188:**

21        Rambus denies the allegations of paragraph no. 188.

22   **PARAGRAPH NO. 189:**

23        All conditions precedent have been met.

24   **RESPONSE TO PARAGRAPH NO. 189:**

25        Rambus denies the allegations of paragraph no. 189.

26   **PARAGRAPH NO. 190:**

27        SEC has suffered damages as a result of the breach by Rambus of Section 8.5 of the

28   SDR/DDR License.

**RESPONSE TO PARAGRAPH NO. 190:**

Rambus denies the allegations of paragraph no. 190.

**COUNT III (Breach of the Duty of Good Faith and Fair Dealing
of Sections 3.8 and 8.5 of the SDR/DDR License)**

**PARAGRAPH NO. 191:**

SEC and SEA reallege and incorporate by reference Paragraphs 1-190 above as though fully set forth herein.

**RESPONSE TO PARAGRAPH NO. 191:**

Rambus incorporates by this reference each of its denials, allegations or assertions in its above responses to paragraphs 1-191, as if fully set forth herein.

**PARAGRAPH NO. 192:**

Under Section 9.1, the SDR/DDR License is to be governed by, and interpreted in accordance with, U.S. federal law and California law.

**RESPONSE TO PARAGRAPH NO. 192:**

Rambus admits that Section 9.1 of the Samsung/Rambus license executed in October 2000 provided as follows: "This agreement shall be governed by and interpreted in accordance with U.S. federal law or the laws of the State of California, without reference to conflict of laws principles."  Except as expressly admitted, Rambus denies the allegations of paragraph no. 192.

**PARAGRAPH NO. 193:**

Under California law, Section 3.8 of the SDR/DDR License includes a duty of good faith and fair dealing owed by Rambus to SEC to inform SEC of the lower royalty rate provided for in the Rambus/Infineon License and to adjust Samsung's rate to the lower rate.

**RESPONSE TO PARAGRAPH NO. 193:**

The allegations in paragraph no. 193 constitute conclusions of law and therefore do not require a response.  To the extent the allegations are deemed to constitute allegations of fact, Rambus denies the allegations of paragraph no. 193.

**PARAGRAPH NO. 194:**

Rambus failed to inform SEC of the lower royalty rate provided for in the

3159620.2

1    Rambus/Infineon License.

2    **RESPONSE TO PARAGRAPH NO. 194:**

3          Rambus denies the allegations of paragraph no. 194.

4    **PARAGRAPH NO. 195:**

5          Rambus breached the duty of good faith and fair dealing of the SDR/DDR License by

6    failing to inform SEC of the lower effective royalty rate provided for in the Rambus/Infineon

7    License.

8    **RESPONSE TO PARAGRAPH NO. 195:**

9          Rambus denies the allegations of paragraph no. 195.

10   **PARAGRAPH NO. 196:**

11         Under California law, the duty of good faith and fair dealing required by Rambus to adjust

12   the royalty rate paid by SEC to match any lower effective royalty rate paid by a third party.

13   **RESPONSE TO PARAGRAPH NO. 196:**

14         The allegations in paragraph no. 196 constitute conclusions of law and therefore do not

15   require a response.  To the extent the allegations are deemed to constitute allegations of fact,

16   Rambus denies the allegations of paragraph no. 196.

17   **PARAGRAPH NO. 197:**

18         Rambus failed to adjust the royalty rate paid by SEC to match the lower effective royalty

19   rate provided for in the Rambus/Infineon License.

20   **RESPONSE TO PARAGRAPH NO. 197:**

21         Rambus denies the allegations of paragraph no. 197.

22   **PARAGRAPH NO. 198:**

23         Rambus breached the duty of good faith and fair dealing by failing to adjust the royalty

24   rate paid by SEC to match the lower effective royalty rate provided for in the Rambus/Infineon

25   License.

26   **RESPONSE TO PARAGRAPH NO. 198:**

27         Rambus denies the allegations of paragraph no. 198.

28

**PARAGRAPH NO. 199:**

Under California law, Section 8.5 of the SDR/DDR License includes a duty owed by Rambus to SEC to negotiate an extension or renewal of the SDR/DDR License in good faith.

**RESPONSE TO PARAGRAPH NO. 199:**

The allegations in paragraph no. 199 constitute conclusions of law and therefore do not require a response.  To the extent the allegations are deemed to constitute allegations of fact, Rambus denies the allegations of paragraph no. 199.

**PARAGRAPH NO. 200:**

Rambus failed to provide notice of the terms of the Rambus/Infineon License to SEC, thereby precluding good faith negotiations for the extension or renewal of the SDR/DDR License.

**RESPONSE TO PARAGRAPH NO. 200:**

Rambus denies the allegations of paragraph no. 200.

**PARAGRAPH NO. 201:**

Rambus breached the duty of good faith and fair dealing of the SDR/DDR License by failing to provide notice of the terms of the Rambus/Infineon License to SEC.  By withholding notice of the terms, Rambus did not and could not negotiate a new license agreement with SEC in good faith.

**RESPONSE TO PARAGRAPH NO. 201:**

Rambus denies the allegations of paragraph no. 201.

**PARAGRAPH NO. 202:**

All conditions precedent have been met.

**RESPONSE TO PARAGRAPH NO. 202:**

Rambus denies the allegations of paragraph no. 202.

**PARAGRAPH NO. 203:**

SEC has suffered damages as a result of the breach of the duty of good faith and fair dealing by Rambus of the SDR/DDR License.

**RESPONSE TO PARAGRAPH NO. 203:**

Rambus denies the allegations of paragraph no. 203.

1    **COUNT IV (Aiding and Abetting Breach of Fiduciary Duty to a Current Client)**

2    **PARAGRAPH NO. 204:**

3        SEC and SEA reallege and incorporate by reference Paragraphs 1-203 above as though

4    fully set forth herein.

5    **RESPONSE TO PARAGRAPH NO. 204:**

6        This Counterclaim is the subject of a currently pending motion to dismiss based on

7    Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

8    Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

9    allegations.

10   **PARAGRAPH NO. 205:**

11       As an in-house attorney for Samsung, Mr. Steinberg owed Samsung a fiduciary duty of

12   utmost good faith and fair dealing and undivided loyalty and honesty in fact.

13   **RESPONSE TO PARAGRAPH NO. 205:**

14       This Counterclaim is the subject of a currently pending motion to dismiss based on

15   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

16   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

17   allegations.

18   **PARAGRAPH NO. 206:**

19       By actively working for Rambus in secret and contrary to Samsung's interests during the

20   time he was employed as an attorney for Samsung, Mr. Steinberg breached his fiduciary duty to

21   Samsung.

22   **RESPONSE TO PARAGRAPH NO. 206:**

23       This Counterclaim is the subject of a currently pending motion to dismiss based on

24   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

25   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

26   allegations.

27

28

1  **PARAGRAPH NO. 207:**

2      While an employee for Samsung, Mr. Steinberg concealed his dual representation of

3  Samsung and Rambus and represented to Samsung that he was not working for both Rambus and

4  Samsung at the same time.  Thus, Samsung had no notice of any deception on Mr. Steinberg's

5  part and had no reason to investigate whether Mr. Steinberg worked for Rambus while employed

6  as an attorney by Samsung.

7  **RESPONSE TO PARAGRAPH NO. 207:**

8      This Counterclaim is the subject of a currently pending motion to dismiss based on

9  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

10  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

11  allegations.

12  **PARAGRAPH NO. 208:**

13      Mr. Steinberg's failure to disclose his breach of his fiduciary duty to Samsung further

14  violated his fiduciary duty toward Samsung.

15  **RESPONSE TO PARAGRAPH NO. 208:**

16      This Counterclaim is the subject of a currently pending motion to dismiss based on

17  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

18  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

19  allegations.

20  **PARAGRAPH NO. 209:**

21      Samsung was entitled to reasonably rely on Mr. Steinberg's silence because of its

22  expectation that Mr. Steinberg would faithfully fulfill his fiduciary obligations.

23  **RESPONSE TO PARAGRAPH NO. 209:**

24      This Counterclaim is the subject of a currently pending motion to dismiss based on

25  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

26  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

27  allegations.

28

**PARAGRAPH NO. 210:**

Because Samsung was justifiably misled by Mr. Steinberg's misrepresentation and concealment of facts surrounding his dual employment by Samsung and Rambus, it did not discover, nor was it put on notice to investigate, Mr. Steinberg's breach of fiduciary duties he owed to Samsung as a current client.

**RESPONSE TO PARAGRAPH NO. 210:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 211:**

Rambus knew that Mr. Steinberg was still employed as an attorney by Samsung when it engaged his services. It further knew that Samsung had not given permission for Mr. Steinberg to dually represent Samsung and Rambus. Rambus also knew of the fiduciary capacity in which Mr. Steinberg worked for Samsung and the duties that Mr. Steinberg owed to Samsung as a result.

**RESPONSE TO PARAGRAPH NO. 211:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 212:**

By engaging Mr. Steinberg to represent Rambus knowing Mr. Steinberg owed fiduciary duties to Samsung as a current client, Rambus aided and abetted Mr. Steinberg in breaching those fiduciary duties.

**RESPONSE TO PARAGRAPH NO. 212:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

1   allegations.

2   **PARAGRAPH NO. 213:**

3       Rambus also knew that Mr. Steinberg had a duty to disclose to Samsung, a current client,

4   any breach of his fiduciary duty, and that Mr. Steinberg in fact failed to carry out this duty. As a

5   result, Rambus facilitated Mr. Steinberg's failure of his obligation to Samsung by secretly

6   engaging Mr. Steinberg's services when it was aware that Mr. Steinberg was still employed as an

7   attorney by Samsung.

8   **RESPONSE TO PARAGRAPH NO. 213:**

9       This Counterclaim is the subject of a currently pending motion to dismiss based on

10  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

11  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

12  allegations.

13  **PARAGRAPH NO. 214:**

14      Rambus knew that hiring Mr. Steinberg while he was still employed by Samsung would

15  be considered contrary to the purpose of maintaining a profitable business alliance between

16  Rambus and Samsung.   Nevertheless, Rambus concealed from Samsung that it had secretly

17  engaged Mr. Steinberg's services when Rambus was aware that Mr. Steinberg was still employed

18  as an attorney by Samsung and facilitated Mr. Steinberg's silence on his dual employment and,

19  upon information and belief, his use of information about Samsung's business and DRAM

20  products in working for Rambus.   Rambus actively concealed Mr. Steinberg's role by sponsoring

21  false testimony in different courts by Mr. Steinberg, and upon information and belief, even when

22  grudgingly admitting in 2006 that he did in fact do some work for Rambus while employed by

23  Samsung, misrepresenting the nature and scope of that work.   Upon information and belief

24  Rambus destroyed documents showing the nature and extent of Mr. Steinberg's work by Rambus

25  in an effort to conceal his breach of duty and Rambus's role in it.

26  **RESPONSE TO PARAGRAPH NO. 214:**

27      This Counterclaim is the subject of a currently pending motion to dismiss based on

28  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

3159620.2

1    Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

2    allegations.

3    **PARAGRAPH NO. 215:**

4        Rambus, by its concealment, falsely represented to Samsung that it was still interested in

5    faithfully remaining a business partner with Samsung in their profitable business alliance at a

6    time when, as a result of its knowledge that Mr. Steinberg was breaching his fiduciary duties to

7    Samsung at Rambus's request and on its behalf, and because Rambus sponsored false testimony,

8    and upon information and belief continues to sponsor false testimony, as well as destruction of

9    documents, to conceal this wrongdoing, Rambus had a duty to speak.

10   **RESPONSE TO PARAGRAPH NO. 215:**

11       This Counterclaim is the subject of a currently pending motion to dismiss based on

12   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

13   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

14   allegations.

15   **PARAGRAPH NO. 216:**

16       SEC and SEA were harmed by Rambus's aiding and abetting Mr. Steinberg's breach of

17   his fiduciary duty to Samsung.

18   **RESPONSE TO PARAGRAPH NO. 216:**

19       This Counterclaim is the subject of a currently pending motion to dismiss based on

20   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

21   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

22   allegations.

23           **Applicable Statute of Limitations Tolled by Discovery Rule**

24   **PARAGRAPH NO. 217:**

25       As a result of Mr. Steinberg's and/or Rambus's concealment of his dual representation of

26   Samsung and Rambus, Samsung did not discover and could not have discovered the

27   circumstances giving rise to a breach of Mr. Steinberg's fiduciary duties owed to Samsung while

28   working for them, nor of Rambus's role in Mr. Steinberg's breach of his fiduciary duties, until it

was revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005.  Specifically, heavily redacted legal invoices from Mr. Steinberg to Rambus dated in June of 1998, two months before Mr. Steinberg resigned from Samsung, were produced by Rambus for the very first time in connection with the *Infineon* unclean-hands trial in early 2005. Furthermore, Mr. Steinberg testified in a deposition introduced by video at the unclean-hands trial that he performed legal services for Rambus beginning in June 1998. These documents and facts were not discoverable by Samsung or anyone else outside of Rambus before 2005, and would remain concealed today if Rambus had not included as entries on its *Infineon* privilege log two documents prepared by Mr. Steinberg in June and July of 1998. Indeed, Mr. Steinberg had previously falsely testified in 2001 and again in 2004 that he had *not* performed any legal work for Rambus prior to August 17, 1998, the date he resigned from Samsung.  Mr. Steinberg's perjury was a specific act of fraud that concealed Rambus's aiding and abetting of Mr. Steinberg's breaches of his fiduciary duties to Samsung, its intentional interference with Mr. Steinberg's employment contract with Samsung, and Rambus's unfair business practices. Finally, even though Samsung knew by at least October 2000 that Mr. Steinberg was working as in-house counsel for Rambus – a fact that by itself was not disturbing to Samsung for the reasons described herein – Samsung could not have discovered Mr. Steinberg's use of Samsung confidential information until documents showing the true nature of Mr. Steinberg's work at Rambus, including actively working to help Rambus plan patent prosecution and enforcement strategies against DRAM manufacturers including Samsung as outlined in paragraphs 102-109 above, were introduced for the first time during the *Infineon* unclean-hands trial in 2005. Once Rambus's employment of Neil Steinberg while an employee of Samsung was revealed to Samsung in 2005, however, Samsung was able to diligently investigate and pursue its claims against Rambus based on such conduct.  Upon information and belief, Rambus and Mr. Steinberg continue to conceal the true nature and extent of their wrongdoing in testimony, interrogatory answers, and by documents previously destroyed.

**RESPONSE TO PARAGRAPH NO. 217:**

This Counterclaim is the subject of a currently pending motion to dismiss based on

1 Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

2 Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

3 allegations.

4 **Applicable Statute of Limitations Tolled by Doctrine of Equitable Tolling**

5 **PARAGRAPH NO. 218:**

6 Furthermore, Mr. Steinberg's misrepresentations to Samsung while working for Samsung,

7 coupled with Rambus's continued assurances that Samsung was a valued business partner, helped

8 conceal material facts that prevented Samsung from knowing or discovering the nature and extent

9 of the injury suffered due to Mr. Steinberg's dual representation. Mr. Steinberg's concealment of

10 his dual representation when he was under a duty to disclose those facts prevented Samsung from

11 discovering that a breach of Mr. Steinberg's fiduciary duty had occurred, as Samsung was not

12 otherwise on notice that Mr. Steinberg had breached his fiduciary duty by his dual representation

13 of Samsung and Rambus.

14 **RESPONSE TO PARAGRAPH NO. 218:**

15 This Counterclaim is the subject of a currently pending motion to dismiss based on

16 Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

17 Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

18 allegations.

19 **PARAGRAPH NO. 219:**

20 Although Samsung knew at least by the time the SDR/DDR License was negotiated in

21 October 2000 that Mr. Steinberg had gone to work for Rambus, Samsung was not thereby put on

22 inquiry notice of its claims against Mr. Steinberg and Rambus relating to Mr. Steinberg's secret

23 dual employment because, in light of the extensive, cooperative, and profitable business alliance

24 that Samsung and Rambus had enjoyed since executing their first RDRAM license in 1994,

25 Samsung knew of no reason to be alarmed at that time by Mr. Steinberg's employment at

26 Rambus.  Samsung also was not put on inquiry notice of its claims as a result of Rambus's

27 institution of litigation against other DRAM manufacturers beginning in 2000 because Samsung

28 was still licensed by Rambus at that time and continued to enjoy a friendly and profitable

1   business alliance with Rambus, leaving Samsung no reason to suspect that Mr. Steinberg had any

2   improper involvement with Rambus's preparations for those litigations. Rather, it was not until

3   documents and testimony revealing Mr. Steinberg's secret retention by Rambus at a time when he

4   was still under an employment agreement as in-house counsel for Samsung, as well as his

5   improper use of Samsung confidential information, were introduced for the very first time in

6   connection with the *Infineon* unclean-hands trial in early 2005 that Samsung was put on inquiry

7   notice of this claim.

8   **RESPONSE TO PARAGRAPH NO. 219:**

9   This Counterclaim is the subject of a currently pending motion to dismiss based on

10   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

11   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

12   allegations.

13   **PARAGRAPH NO. 220:**

14   Rambus's concealment of its hiring of Mr. Steinberg while he was still an employee of

15   Samsung and its affirmative misrepresentations to Samsung that it was still a faithful business

16   partner to Samsung also helped conceal material facts that prevented Samsung from knowing or

17   discovering the nature and extent of the injury suffered due to Mr. Steinberg's dual

18   representation. Rambus's concealment of his dual representation prevented Samsung from

19   discovering that a breach of Mr. Steinberg's fiduciary duty had occurred, as Samsung was not

20   otherwise on notice that Mr. Steinberg had breached his fiduciary duty by his dual representation

21   of Samsung and Rambus.[5]

22   **RESPONSE TO PARAGRAPH NO. 220:**

23   This Counterclaim is the subject of a currently pending motion to dismiss based on

24   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

---

[5] Tellingly, Vice Chancellor Strine denied Rambus's motion for summary judgment with respect to Samsung's claims based on Neil Steinberg's dual employment, including aiding and abetting breach of fiduciary duty to a current client, in related litigation in Delaware on December 4, 2006. Based solely on the pleadings, the Delaware court found that Samsung raised a fact issue as to whether it was fraudulently induced to release its claims against Rambus upon execution of the SDR/DDR License. The relevant portions of the hearing transcript are attached as Exhibit C.

1  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

2  allegations.

3  **PARAGRAPH NO. 221:**

4  As a result, the misrepresentation and nondisclosure practiced by Mr. Steinberg and

5  Rambus on Samsung, and the role Rambus played in Mr. Steinberg's misrepresentation and

6  nondisclosure, was not discovered until Mr. Steinberg's dual employment was revealed for the

7  first time during the trial of *Rambus v. Infineon*, in the U.S. District Court for the Eastern District

8  of Virginia in 2005. Once Rambus's employment of Neil Steinberg was discovered by Samsung

9  in 2005, Samsung was able to diligently investigate and pursue its claims against Rambus based

10  on such conduct. Upon information and belief, Rambus and Mr. Steinberg continue to conceal the

11  true nature and extent of their wrongdoing in testimony, interrogatory answers, and by documents

12  previously destroyed.

13  **RESPONSE TO PARAGRAPH No. 221:**

14  This Counterclaim is the subject of a currently pending motion to dismiss based on

15  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

16  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

17  allegations.

18  **COUNT V (Aiding and Abetting Breach of Fiduciary Duty to a Former Client)**

19  **PARAGRAPH NO. 222:**

20  SEC and SEA reallege and incorporate by reference Paragraphs 1-221 above as though

21  fully set forth herein.

22  **RESPONSE TO PARAGRAPH NO. 222:**

23  This Counterclaim is the subject of a currently pending motion to dismiss based on

24  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

25  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

26  allegations.

27  **PARAGRAPH NO. 223:**

28  As a former in-house attorney for Samsung, Mr. Steinberg owed Samsung those duties

3159620.2

1    due to a former client, including the duty to not disclose information about Samsung's business or

2    to use it contrary to Samsung's interests, regardless of whether such information was trade secret,

3    and the duty to obtain informed consent before representing parties adverse to Samsung in

4    matters substantially related to those Mr. Steinberg worked on for Samsung.

5    **RESPONSE TO PARAGRAPH NO. 223:**

6          This Counterclaim is the subject of a currently pending motion to dismiss based on

7    Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

8    Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

9    allegations.

10   **PARAGRAPH NO. 224:**

11         Despite these obligations to Samsung, Mr. Steinberg, upon information and belief,

12   actively worked to help Rambus plan patent prosecution strategies, including actually working on

13   patent applications, patent enforcement strategies, document handling and retention strategies for

14   use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs,

15   including Samsung, as outlined in paragraphs 102-109 above.  Mr. Steinberg did this without first

16   obtaining informed consent from Samsung.  Upon information and belief, Mr. Steinberg also used

17   information about Samsung's business and DRAM products, as outlined in paragraphs 102-109

18   above, including but not limited to facts developed for the prosecution of the '956 patent and

19   strategies for protection of Samsung's JEDEC-compliant products as partially implemented in the

20   '956 patent, product roadmaps (plans for development of future products and plans for their

21   release), and Samsung's own internal licensing discussions and internal litigation strategy

22   discussions, while working for Rambus at a time he was under a duty not to disclose such

23   information about Samsung's business or to use it contrary to Samsung's interests, regardless of

24   whether such information was trade secret.

25   **RESPONSE TO PARAGRAPH NO. 224:**

26         This Counterclaim is the subject of a currently pending motion to dismiss based on

27   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

28   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

1    allegations.

2    **PARAGRAPH NO. 225:**

3        Mr. Steinberg further violated his fiduciary duty to Samsung by failing to disclose to

4    Samsung his work for Rambus that was contrary to Samsung's interests or his use of information

5    obtained while an attorney for Samsung.

6    **RESPONSE TO PARAGRAPH NO. 225:**

7        This Counterclaim is the subject of a currently pending motion to dismiss based on

8    Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

9    Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

10   allegations.

11   **PARAGRAPH NO. 226:**

12       Mr. Steinberg concealed from Samsung his work for Rambus that was adverse to

13   Samsung and made use of Samsung information.   Samsung, therefore, had no notice of any

14   deception on Mr. Steinberg's part and therefore had no reason to investigate whether Mr.

15   Steinberg's work for Rambus was adverse to Samsung or made use of Samsung information.

16   **RESPONSE TO PARAGRAPH NO. 226:**

17       This Counterclaim is the subject of a currently pending motion to dismiss based on

18   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

19   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

20   allegations.

21   **PARAGRAPH NO. 227:**

22       Samsung was entitled to reasonably rely on Mr. Steinberg's silence because of its

23   expectation that Mr. Steinberg would obtain informed consent before working on matters adverse

24   to Samsung and would faithfully safeguard Samsung's information.

25   **RESPONSE TO PARAGRAPH NO. 227:**

26       This Counterclaim is the subject of a currently pending motion to dismiss based on

27   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

28   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

1    allegations.

2    **PARAGRAPH NO. 228:**

3        Because Samsung was justifiably misled by Mr. Steinberg's misrepresentation and

4    concealment of facts regarding the full nature of the work he performed for Rambus, it did not

5    discover, nor was it put on notice to investigate, Mr. Steinberg's breach of fiduciary duties he

6    owed to Samsung as a former client.

7    **RESPONSE TO PARAGRAPH NO. 228:**

8        This Counterclaim is the subject of a currently pending motion to dismiss based on

9    Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

10   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

11   allegations.

12   **PARAGRAPH NO. 229:**

13       Rambus knew that Mr. Steinberg was employed as an attorney by Samsung.  It further

14   knew that Samsung had not given permission for Mr. Steinberg to work on matters adverse to

15   Samsung or to disclose Samsung information.  Rambus also knew of the fiduciary capacity in

16   which Mr. Steinberg worked for Samsung and the duties that Mr. Steinberg continued to owe

17   Samsung as a result of his former representation.

18   **RESPONSE TO PARAGRAPH NO. 229:**

19       This Counterclaim is the subject of a currently pending motion to dismiss based on

20   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

21   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

22   allegations.

23   **PARAGRAPH NO. 230:**

24       By engaging Mr. Steinberg to represent Rambus knowing Mr. Steinberg owed fiduciary

25   duties to Samsung as a former client, Rambus aided and abetted Mr. Steinberg in breaching those

26   fiduciary duties.

27   **RESPONSE TO PARAGRAPH NO. 230:**

28       This Counterclaim is the subject of a currently pending motion to dismiss based on

3159620.2

1  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

2  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

3  allegations.

4  **PARAGRAPH NO. 231:**

5  Rambus also knew that Mr. Steinberg had a duty to disclose to Samsung, a former client,

6  of any breach of his fiduciary duty, and that Mr. Steinberg in fact failed to carry out this duty. As

7  a result, Rambus facilitated Mr. Steinberg's failure of his obligation to Samsung by secretly

8  engaging Mr. Steinberg's services for matters adverse to Samsung and that made use of

9  confidential Samsung information.

10  **RESPONSE TO PARAGRAPH NO. 231:**

11  This Counterclaim is the subject of a currently pending motion to dismiss based on

12  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

13  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

14  allegations.

15  **PARAGRAPH NO. 232:**

16  Rambus knew that using Mr. Steinberg's services on matters adverse to Samsung or that

17  made use of Samsung information would be considered contrary to the purpose of maintaining a

18  profitable business alliance between Rambus and Samsung.  Nevertheless, Rambus concealed

19  from Samsung that it had secretly engaged Mr. Steinberg's services on matters adverse to

20  Samsung or that, on information and belief, made use of Samsung information and facilitated Mr.

21  Steinberg's silence on his work for Rambus on matters adverse to Samsung and, upon

22  information and belief, his use of information about Samsung's business and DRAM products in

23  working for Rambus.

24  **RESPONSE TO PARAGRAPH NO. 232:**

25  This Counterclaim is the subject of a currently pending motion to dismiss based on

26  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

27  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

28  allegations.

3159620.2

1  **PARAGRAPH NO. 233:**

2      Rambus, by its concealment, falsely represented to Samsung that it was still interested in

3  faithfully remaining a business partner with Samsung in their profitable business alliance at a

4  time when, as a result of its knowledge that Mr. Steinberg was breaching his fiduciary duties to

5  Samsung at Rambus's request and on its behalf, and because Rambus sponsored false testimony,

6  and upon information and belief continues to sponsor false testimony, as well as destruction of

7  documents, to conceal this wrongdoing, Rambus had a duty to speak.

8  **RESPONSE TO PARAGRAPH NO. 233:**

9      This Counterclaim is the subject of a currently pending motion to dismiss based on

10  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

11  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

12  allegations.

13  **PARAGRAPH NO. 234:**

14      SEC and SEA were harmed by Rambus's aiding and abetting Mr. Steinberg's breach of

15  his fiduciary duty to Samsung.

16  **RESPONSE TO PARAGRAPH NO. 234:**

17      This Counterclaim is the subject of a currently pending motion to dismiss based on

18  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

19  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

20  allegations.

21              **Applicable Statute of Limitations Tolled by Discovery Rule**

22  **PARAGRAPH NO. 235:**

23      As a result of Mr. Steinberg's and/or Rambus's failure to disclose the full nature of his

24  work for Rambus in violation of his continuing obligations to Samsung, Samsung did not

25  discover and could not have discovered the circumstances giving rise to a breach of Mr.

26  Steinberg's fiduciary duties owed to Samsung as a former client, nor of Rambus's role in Mr.

27  Steinberg's breach of his fiduciary duties, until it was revealed for the first time during the trial of

28  *Rambus v. Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005.

3159620.2

1    Specifically, heavily redacted legal invoices from Mr. Steinberg to Rambus dated in June and

2    July of 1998, two months before Mr. Steinberg resigned from Samsung, were produced by

3    Rambus for the very first time in connection with the *Infineon* unclean-hands trial in early 2005.

4    Furthermore, Mr. Steinberg testified in a deposition introduced by video at the unclean-hands trial

5    that he performed legal services for Rambus beginning in June 1998.  These documents and facts

6    were not discoverable by Samsung or anyone else outside of Rambus before 2005, and would

7    remain concealed today if Rambus had not included as entries on its *Infineon* privilege log two

8    documents prepared by Mr. Steinberg in June and July of 1998.  Indeed, Mr. Steinberg had

9    previously falsely testified in 2001 and again in 2004 that he had *not* performed any legal work

10   for Rambus prior to August 17, 1998, the date he resigned from Samsung.  Mr. Steinberg's

11   perjury was a specific act of fraud that concealed Rambus's aiding and abetting of Mr.

12   Steinberg's breaches of his fiduciary duties to Samsung, its intentional interference with Mr.

13   Steinberg's employment contract with Samsung, and Rambus's unfair business practices. Finally,

14   even though Samsung knew by at least October 2000 that Mr. Steinberg was working as in-house

15   counsel for Rambus – a fact that by itself was not disturbing to Samsung for the reasons described

16   herein – Samsung could not have discovered Mr. Steinberg's use of Samsung confidential

17   information until documents showing the true nature of Mr. Steinberg's work at Rambus,

18   including actively working to help Rambus plan patent prosecution and enforcement strategies

19   against DRAM manufacturers including Samsung as outlined in paragraphs 102-109 above, were

20   introduced for the first time during the *Infineon* unclean-hands trial in 2005. Once the full scope

21   of Rambus's employment of Mr. Steinberg was revealed to Samsung in 2005, however, Samsung

22   was able to diligently investigate and pursue its claims against Rambus based on such conduct.

23   Upon information and belief, Rambus and Mr. Steinberg continue to conceal the true nature and

24   extent of their wrongdoing in testimony, interrogatory answers, and by documents previously

25   destroyed.

26   **RESPONSE TO PARAGRAPH NO. 235:**

27        This Counterclaim is the subject of a currently pending motion to dismiss based on

28   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

1   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

2   allegations.

3   **Applicable Statute of Limitations Tolled by Doctrine of Equitable Tolling**

4   **PARAGRAPH NO. 236:**

5       Furthermore, Mr. Steinberg's misrepresentations to Samsung, coupled with Rambus's

6   continued assurances that Samsung was a valued business partner, helped conceal material facts

7   that prevented Samsung from knowing or discovering the nature and extent of the injury suffered

8   due to Mr. Steinberg's employment by Rambus.  Mr. Steinberg's failure to disclose the nature of

9   his employment by Rambus when he was under a duty to do so prevented Samsung from

10  discovering that a breach of Mr. Steinberg's fiduciary duty had occurred, as Samsung was not

11  otherwise under notice that Mr. Steinberg had breached his fiduciary duty by working for Rambus

12  on matters adverse to Samsung or that made use of Samsung information.

13  **RESPONSE TO PARAGRAPH NO. 236:**

14      This Counterclaim is the subject of a currently pending motion to dismiss based on

15  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

16  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

17  allegations.

18  **PARAGRAPH NO. 237:**

19      Although Samsung knew at least by the time the SDR/DDR License was negotiated in

20  October 2000 that Mr. Steinberg had gone to work for Rambus, Samsung was not thereby put on

21  inquiry notice of its claims against Mr. Steinberg and Rambus relating to Mr. Steinberg's secret

22  dual employment because, in light of the extensive, cooperative, and profitable business alliance

23  that Samsung and Rambus had enjoyed since executing their first RDRAM license in 1994,

24  Samsung knew of no reason to be alarmed at that time by Mr. Steinberg's employment at

25  Rambus.  Samsung also was not put on inquiry notice of its claims as a result of Rambus's

26  institution of litigation against other DRAM manufacturers beginning in 2000 because Samsung

27  was still licensed by Rambus at that time and continued to enjoy a friendly and profitable

28  business alliance with Rambus, leaving Samsung no reason to suspect that Mr. Steinberg had any

1  improper involvement with Rambus's preparations for those litigations. Rather, it was not until

2  documents and testimony revealing Mr. Steinberg's secret retention by Rambus at a time when he

3  was still under an employment agreement as in-house counsel for Samsung, as well as his

4  improper use of Samsung confidential information, were introduced for the very first time in

5  connection with the *Infineon* unclean-hands trial in early 2005 that Samsung was put on inquiry

6  notice of this claim.

7  **RESPONSE TO PARAGRAPH NO. 237:**

8      This Counterclaim is the subject of a currently pending motion to dismiss based on

9  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

10  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

11  allegations.

12  **PARAGRAPH NO. 238:**

13      Rambus's concealment of its use of Mr. Steinberg's services on matters adverse to

14  Samsung or that, upon information and belief, made use of Samsung information and its

15  affirmative misrepresentations to Samsung that it was still a faithful business partner to Samsung

16  also helped conceal material facts that prevented Samsung from knowing or discovering the

17  nature and extent of the injury suffered due to Mr. Steinberg's work for Rambus.  Rambus's

18  concealment of his work for it prevented Samsung from discovering that a breach of Mr.

19  Steinberg's fiduciary duty had occurred, as Samsung was not otherwise on notice that Mr.

20  Steinberg had breached his fiduciary duty by his work for Rambus.[6]

21  **RESPONSE TO PARAGRAPH NO. 238:**

22      This Counterclaim is the subject of a currently pending motion to dismiss based on

23  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

24  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

---

[6] Tellingly, Vice Chancellor Strine denied Rambus's motion for summary judgment with respect to Samsung's claims related to Neil Steinberg's dual employment, including aiding and abetting breach of fiduciary duty to a former client, in related litigation in Delaware on December 4, 2006. Based solely on the pleadings, the Delaware court found that Samsung raised a fact issue as to whether it was fraudulently induced to release its claims against Rambus upon execution of the SDR/DDR License. The relevant portions of the hearing transcript are attached as Exhibit C.

1   allegations.

2   **PARAGRAPH NO. 239:**

3       As a result, the misrepresentation and nondisclosure practiced by Mr. Steinberg and

4   Rambus on Samsung, and the role Rambus played in Mr. Steinberg's misrepresentation and

5   nondisclosure, was not revealed until the full scope of Mr. Steinberg's employment for Rambus

6   was revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District Court for

7   the Eastern District of Virginia in 2005. Once the full scope of Rambus's employment of Neil

8   Steinberg was discovered in 2005, Samsung was able to diligently investigate and pursue its

9   claims against Rambus based on such conduct.  Upon information and belief, Rambus and Mr.

10  Steinberg continue to conceal the true nature and extent of their wrongdoing in testimony,

11  interrogatory answers, and by documents previously destroyed.

12  **RESPONSE TO PARAGRAPH NO. 239:**

13      This Counterclaim is the subject of a currently pending motion to dismiss based on

14  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

15  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

16  allegations.

17                  **COUNT VI (Intentional Interference with Contract)**

18  **PARAGRAPH NO. 240:**

19      SEC and SEA reallege and incorporate by reference Paragraphs 1-239 above as though

20  fully restated herein.

21  **RESPONSE TO PARAGRAPH NO. 240:**

22      This Counterclaim is the subject of a currently pending motion to dismiss based on

23  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

24  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

25  allegations.

26  **PARAGRAPH NO. 241:**

27      Rambus was aware that Mr. Steinberg was employed as in-house counsel for Samsung

28  and under a written employment contract for a specific term.  Rambus was further aware that at

3159620.2

the time Mr. Steinberg's employment began with Rambus, his written employment contract had not been terminated and was still in effect.  Also during this time, Rambus knew that Mr. Steinberg's contract included nondisclosure clauses and restrictions on additional employment.

**RESPONSE TO PARAGRAPH NO. 241:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 242:**

Despite these contractual duties, Mr. Steinberg, upon information and belief, actively worked to help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs, including Samsung, as outlined in paragraphs 102-109 above.  Upon information and belief, while employed at Samsung, Mr. Steinberg also used information about Samsung's business and DRAM products in connection with his work for Rambus, as outlined in paragraphs 102-109 above, including but not limited to facts developed for the prosecution of the '956 patent and strategies for protection of Samsung's JEDEC-compliant products as partially implemented in the '956 patent, product roadmaps (plans for development of future products and plans for their release), and Samsung's own internal licensing discussions and internal litigation strategy discussions, despite the fact that he was under contractual and fiduciary duties not to disclose such information about Samsung's business or use it contrary to Samsung's interests, regardless of whether such information was trade secret.  Mr. Steinberg's work for Rambus, therefore, was in breach of his employment contract with Rambus.

**RESPONSE TO PARAGRAPH NO. 242:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

1  allegations.

2  **PARAGRAPH NO. 243:**

3      Because Rambus knew of Mr. Steinberg's employment contract and his subsequent

4  breach of that contract by performing services on behalf of Rambus, Rambus intentionally

5  interfered with the Steinberg-Samsung employment contract when it hired Mr. Steinberg in

6  February of 1998.

7  **RESPONSE TO PARAGRAPH NO. 243:**

8      This Counterclaim is the subject of a currently pending motion to dismiss based on

9  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

10  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

11  allegations.

12  **PARAGRAPH NO. 244:**

13      Mr. Steinberg further violated his contractual duty to Samsung by failing to disclose the

14  full nature and duration of his work for Rambus.

15  **RESPONSE TO PARAGRAPH NO. 244:**

16      This Counterclaim is the subject of a currently pending motion to dismiss based on

17  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

18  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

19  allegations.

20  **PARAGRAPH NO. 245:**

21      Mr. Steinberg and Rambus concealed from Samsung Mr. Steinberg's work for Rambus

22  that was contrary to Samsung's interests and that made use of Samsung information. Samsung

23  had no notice of any breach of the employment contract by Mr. Steinberg's and therefore did not

24  discover and had no reason to investigate whether Mr. Steinberg worked for Rambus while

25  employed as an attorney by Samsung or was working for Rambus contrary to Samsung's interests

26  and with Samsung information.

27  **RESPONSE TO PARAGRAPH NO. 245:**

28      This Counterclaim is the subject of a currently pending motion to dismiss based on

3159620.2

1 Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

2 Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

3 allegations.

4 **PARAGRAPH NO. 246:**

5 Samsung was entitled to reasonably rely on Mr. Steinberg's silence regarding Rambus's

6 interference with his employment contract with Samsung because of its expectation that Mr.

7 Steinberg would faithfully fulfill both his fiduciary and contractual obligations.

8 **RESPONSE TO PARAGRAPH NO. 246:**

9 This Counterclaim is the subject of a currently pending motion to dismiss based on

10 Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

11 Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

12 allegations.

13 **PARAGRAPH NO. 247:**

14 Because Samsung was justifiably misled by Mr. Steinberg's misrepresentation and

15 concealment of facts regarding the full nature of the work he performed for Rambus as well as the

16 time period during which he worked for Rambus, it did not discover, nor was it put on notice to

17 investigate, Mr. Steinberg's breach of contractual and fiduciary duties he owed to Samsung.

18 **RESPONSE TO PARAGRAPH NO. 247:**

19 This Counterclaim is the subject of a currently pending motion to dismiss based on

20 Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

21 Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

22 allegations.

23 **PARAGRAPH NO. 248:**

24 Rambus knew of Mr. Steinberg's contractual obligations to Samsung, including his

25 obligations to disclose the full nature and duration of his employment by Rambus. By secretly

26 engaging Mr. Steinberg's services in contravention of these duties, therefore, Rambus

27 intentionally interfered with Mr. Steinberg's employment contract with Samsung and facilitated

28 Mr. Steinberg's violation of those duties.

- 97 -

**RESPONSE TO PARAGRAPH NO. 248:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 249:**

Rambus knew or should have known that the nature and duration of Mr. Steinberg's employment by Rambus would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung. Nevertheless, Rambus concealed from Samsung that it had secretly engaged Mr. Steinberg's services and facilitated Mr. Steinberg's silence on the full nature and duration of his work for Rambus.

**RESPONSE TO PARAGRAPH NO. 249:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 250:**

Rambus, by its concealment, falsely represented to Samsung that it was still interested in faithfully remaining a business partner with Samsung in their profitable business alliance at a time when, as a result of its knowledge that Mr. Steinberg was breaching his fiduciary duties to Samsung at Rambus's request and on its behalf, and because Rambus sponsored false testimony, and upon information and belief continues to sponsor false testimony, as well as destruction of documents, to conceal this wrongdoing, Rambus had a duty to speak.

**RESPONSE TO PARAGRAPH NO. 250:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

3159620.2

**PARAGRAPH NO. 251:**

SEC and SEA were harmed by Rambus's intentional interference with Mr. Steinberg's employment contract.

**RESPONSE TO PARAGRAPH NO. 251:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**Applicable Statute of Limitations Tolled by Discovery Rule**

**PARAGRAPH NO. 252:**

As a result of the concealment of Mr. Steinberg's dual representation and of the full nature of the work he performed for Rambus, coupled with Rambus's continued assurances that Samsung was a valued business partner, Samsung did not discover and could not have discovered the circumstances giving rise to Rambus's interference of Mr. Steinberg's employment contract with Samsung until it was revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005. Specifically, heavily redacted legal invoices from Mr. Steinberg to Rambus dated in June and July of 1998, two months before Mr. Steinberg resigned from Samsung, were produced by Rambus for the very first time in connection with the *Infineon* unclean-hands trial in early 2005. Furthermore, Mr. Steinberg testified in a deposition introduced by video at the unclean-hands trial that he performed legal services for Rambus beginning in June 1998. These documents and facts were not discoverable by Samsung or anyone else outside of Rambus before 2005, and would remain concealed today if Rambus had not included as entries on its *Infineon* privilege log two documents prepared by Mr. Steinberg in June and July of 1998. Indeed, Mr. Steinberg had previously falsely testified in 2001 and again in 2004 that he had *not* performed any legal work for Rambus prior to August 17, 1998, the date he resigned from Samsung. Mr. Steinberg's perjury was a specific act of fraud that concealed Rambus's aiding and abetting of Mr. Steinberg's breaches of his fiduciary duties to Samsung, its intentional interference with Mr. Steinberg's employment contract with Samsung,

1   and Rambus's unfair business practices. Finally, even though Samsung knew by at least October

2   2000 that Mr. Steinberg was working as in-house counsel for Rambus – a fact that by itself was

3   not disturbing to Samsung for the reasons described herein – Samsung could not have discovered

4   Mr. Steinberg's use of Samsung confidential information until documents showing the true nature

5   of Mr. Steinberg's work at Rambus, including actively working to help Rambus plan patent

6   prosecution and enforcement strategies against DRAM manufacturers including Samsung as

7   outlined in paragraphs 102-109 above, were introduced for the first time during the *Infineon*

8   unclean-hands trial in 2005. Once the full nature and duration of Rambus's employment of Mr.

9   Steinberg was revealed to Samsung in 2005, however, Samsung was able to diligently investigate

10  and pursue its claims against Rambus based on such conduct.   Upon information and belief,

11  Rambus and Mr. Steinberg continue to conceal the true nature and extent of their wrongdoing in

12  testimony, interrogatory answers, and by documents previously destroyed.

13  **RESPONSE TO PARAGRAPH NO. 252:**

14          This Counterclaim is the subject of a currently pending motion to dismiss based on

15  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

16  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

17  allegations.

18          **Applicable Statute of Limitations Tolled by Doctrine of Equitable Tolling**

19  **PARAGRAPH NO. 253:**

20          Furthermore, Mr. Steinberg's false representations to Samsung helped conceal material

21  facts that prevented Samsung from knowing or discovering the nature and extent of the injury

22  suffered due to Mr. Steinberg's employment by Rambus.   Mr. Steinberg's concealment of the

23  nature and duration of his employment by Rambus when he was under a duty to do so prevented

24  Samsung from determining that Rambus had intentionally interfered with Mr. Steinberg's

25  employment contract with Samsung, as Samsung was not otherwise under notice that Mr.

26  Steinberg had breached his employment contract by working for Rambus while employed by

27  Samsung and also by working for Rambus on matters adverse to Samsung or that made use of

28  Samsung information.

1  **RESPONSE TO PARAGRAPH NO. 253:**

2      This Counterclaim is the subject of a currently pending motion to dismiss based on

3  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

4  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

5  allegations.

6  **PARAGRAPH NO. 254:**

7      Although Samsung knew at least by the time the SDR/DDR License was negotiated in

8  October 2000 that Mr. Steinberg had gone to work for Rambus, Samsung was not thereby put on

9  inquiry notice of its claims against Mr. Steinberg and Rambus relating to Mr. Steinberg's secret

10  dual employment because, in light of the extensive, cooperative, and profitable business alliance

11  that Samsung and Rambus had enjoyed since executing their first RDRAM license in 1994,

12  Samsung knew of no reason to be alarmed at that time by Mr. Steinberg's employment at

13  Rambus.   Samsung also was not put on inquiry notice of its claims as a result of Rambus's

14  institution of litigation against other DRAM manufacturers beginning in 2000 because Samsung

15  was still licensed by Rambus at that time and continued to enjoy a friendly and profitable

16  business alliance with Rambus, leaving Samsung no reason to suspect that Mr. Steinberg had any

17  improper involvement with Rambus's preparations for those litigations. Rather, it was not until

18  documents and testimony revealing Mr. Steinberg's secret retention by Rambus at a time when he

19  was still under an employment agreement as in-house counsel for Samsung, as well as his

20  improper use of Samsung confidential information, were introduced for the very first time in

21  connection with the *Infineon* unclean-hands trial in early 2005 that Samsung was put on inquiry

22  notice of this claim.

23  **RESPONSE TO PARAGRAPH NO. 254:**

24      This Counterclaim is the subject of a currently pending motion to dismiss based on

25  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

26  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

27  allegations.

28

3159620.2

1  **PARAGRAPH NO. 255:**

2  Rambus's concealment of the full nature and duration of Mr. Steinberg's employment by

3  Rambus and its affirmative misrepresentations to Samsung that it was still a faithful business

4  partner to Samsung also helped conceal material facts that prevented Samsung from knowing or

5  discovering the nature and extent of the injury suffered due to Mr. Steinberg's work for Rambus.

6  Rambus's concealment of his work for it prevented Samsung from discovering that a breach of

7  Mr. Steinberg's fiduciary duty had occurred, as Samsung was not otherwise on notice that Mr.

8  Steinberg had breached his fiduciary duty by his work for Rambus.[7]

9  **RESPONSE TO PARAGRAPH NO. 255:**

10  This Counterclaim is the subject of a currently pending motion to dismiss based on

11  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

12  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

13  allegations.

14  **PARAGRAPH NO. 256:**

15  As a result, the misrepresentation and nondisclosure practiced by Mr. Steinberg and

16  Rambus on Samsung was not disclosed until the full scope and duration of Mr. Steinberg's

17  employment for Rambus was revealed for the first time during the trial of *Rambus v. Infineon*, in

18  the U.S. District Court for the Eastern District of Virginia in 2005.  Once the full scope and

19  duration of Rambus's employment of Neil Steinberg was disclosed to Samsung in 2005, Samsung

20  was able to diligently investigate and pursue its claims against Rambus based on such conduct.

21  Upon information and belief, Rambus and Mr. Steinberg continue to conceal the true nature and

22  extent of their wrongdoing in testimony, interrogatory answers, and by documents previously

23  destroyed.

24

25  ---

[7] Tellingly, Vice Chancellor Strine denied Rambus's motion for summary judgment with respect
26  to Samsung's claims related to Neil Steinberg's dual employment, including intentional
interference with contract, in related litigation in Delaware on December 4, 2006.  Based solely
27  on the pleadings, the Delaware court found that Samsung raised a fact issue as to whether it was
fraudulently induced to release its claims against Rambus upon execution of the SDR/DDR
28  License. The relevant portions of the hearing transcript are attached as Exhibit C.

**RESPONSE TO PARAGRAPH NO. 256:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**COUNT VII (Violation of California Bus. & Prof. Code Section 17200)**

**PARAGRAPH NO. 257:**

SEC and SEA reallege and incorporate by reference Paragraphs 1-256 above as though fully restated herein.

**RESPONSE TO PARAGRAPH NO. 257:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 258:**

The herein-described conduct of Rambus, including its hiring of Mr. Steinberg while still employed at Samsung, the "shred parties," and the persistent pursuit of patent claims beyond its original disclosures is an unlawful business practice and constitutes unfair and anticompetitive conduct toward Samsung, the DRAM industry, and the consuming public, in violation of California Business and Professions Code § 17200 *et. seq.*

**RESPONSE TO PARAGRAPH NO. 258:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 259:**

Rambus has engaged in at least the following unlawful, unfair, and anticompetitive business practices, and deceptive conduct:

a.      Misdemeanor spoliation of evidence in violation of California Penal Code § 135 as evident by the following facts:  Rambus willfully destroyed or concealed documentary evidence to be produced in litigation against DRAM manufacturers with the intent to prevent it from being produced, as fully described herein;

b.      Aiding and abetting the breach of fiduciary duty to a current client as evidenced by the following facts: Rambus knew that Mr. Steinberg was still employed as an attorney by Samsung when it engaged his services.  It further knew that Samsung had not given permission for Mr. Steinberg to dually represent Samsung and Rambus.  Rambus also knew of the fiduciary capacity in which Mr. Steinberg worked for Samsung and the duties that Mr. Steinberg owed to Samsung as a result.  By engaging Mr. Steinberg to represent Rambus knowing Mr. Steinberg owed fiduciary duties to Samsung as a current client, therefore, Rambus aided and abetted Mr. Steinberg in breaching those fiduciary duties, as fully described herein.

c.      Aiding and abetting the breach of fiduciary duty to a former client as evidenced by the following facts: Rambus knew that Mr. Steinberg was employed as an attorney by Samsung.  It further knew that Samsung had not given permission for Mr. Steinberg to work on matters adverse to Samsung or to disclose Samsung information.  Rambus also knew of the fiduciary capacity in which Mr. Steinberg worked for Samsung and the duties that Mr. Steinberg continued to owe Samsung as a result of his former representation.  By engaging Mr. Steinberg to represent Rambus knowing Mr. Steinberg owed fiduciary duties to Samsung as a former client, therefore, Rambus aided and abetted Mr. Steinberg in breaching those fiduciary duties as fully described herein.

d.      Intentional interference with contract as evidenced by the following facts: Rambus knew of Mr. Steinberg's contractual obligations to Samsung, including his obligations to disclose the full nature and duration of his employment by Rambus.  By secretly engaging Mr. Steinberg's services in contravention of these duties, therefore, Rambus intentionally interfered with Mr. Steinberg's employment contract with Samsung and  facilitated Mr. Steinberg's violation of those duties as fully described in herein.

e.      Unfair    and    anticompetitive    business    practices    against    DRAM

1   manufacturers as a member of JEDEC as evidenced by the following facts: During the 1990's,

2   Rambus participated actively in industry meetings on standards for SDRAMs and DDR SDRAMs

3   at the Joint Electron Device Engineering Council ("JEDEC").   Rambus improperly used

4   information it obtained as a result of its membership in JEDEC to secure additional patents and

5   claims.  Rambus's use of this information was in violation of policies applicable to all JEDEC

6   members.  Rambus  failure to disclose to other members of JEDEC that it had taken information

7   from JEDEC to craft its patent claims, only to seek to enforce its claims against JEDEC-

8   compliant products many years after JEDEC members had invested heavily in the technology

9   without notice of Rambus's conduct.  This conduct was unfair and anticompetitive to all DRAM

10  manufacturers that were members of JEDEC, including Samsung.

11  **RESPONSE TO PARAGRAPH NO. 259:**

12      This Counterclaim is the subject of a currently pending motion to dismiss based on

13  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

14  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

15  allegations.

16  **PARAGRAPH NO. 260:**

17      As a result of Rambus's unfair, unlawful, and anticompetitive conduct, SEC and SEA, as

18  well as the consuming public, have been damaged.  Such injuries to SEC and SEA include, but

19  are not limited to, the loss of money and property in the form of attorneys' fees paid to protect

20  and assert SEC's and SEA's right against such unfair conduct, and lost revenues, profits, and

21  market share.

22  **RESPONSE TO PARAGRAPH NO. 260:**

23      This Counterclaim is the subject of a currently pending motion to dismiss based on

24  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

25  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

26  allegations.

27  **PARAGRAPH NO. 261:**

28      Samsung and the public at large, including manufacturers and end-users of DRAM and

3159620.2

1  DDR technology, will continue to sustain injury and damages from this unfair conduct by

2  Rambus unless Rambus is enjoined from continuing its unlawful conduct.  Samsung is entitled to

3  recover reasonable attorneys' fees and costs in connection with this Count, as well as all

4  appropriate restitution and other equitable relief.

5  **RESPONSE TO PARAGRAPH NO. 261:**

6      This Counterclaim is the subject of a currently pending motion to dismiss based on

7  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

8  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

9  allegations.

10  **PARAGRAPH NO. 262:**

11      Rambus knew or should have known that its actions in engaging in unlawful and unfair

12  business practices, and deceptive conduct would be considered contrary to the purpose of

13  maintaining a profitable business alliance between Rambus and Samsung. Nevertheless, Rambus

14  concealed from Samsung that it had secretly engaged in unlawful and unfair business practices,

15  and deceptive conduct.

16  **RESPONSE TO PARAGRAPH NO. 262:**

17      This Counterclaim is the subject of a currently pending motion to dismiss based on

18  Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

19  Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

20  allegations.

21  **PARAGRAPH NO. 263:**

22      Rambus, by its concealment, falsely represented to Samsung that it was still interested in

23  faithfully remaining a business partner with Samsung in their profitable business alliance at a

24  time when, as a result of its knowledge that Mr. Steinberg was breaching his fiduciary duties to

25  Samsung at Rambus's request and on its behalf, and because Rambus sponsored false testimony,

26  and upon information and belief continues to sponsor false testimony, as well as destruction of

27  documents, to conceal this wrongdoing, Rambus had a duty to speak.

28

1   **RESPONSE TO PARAGRAPH NO. 263:**

2      This Counterclaim is the subject of a currently pending motion to dismiss based on

3   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

4   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

5   allegations.

6                **Applicable Statute of Limitations Tolled by Discovery Rule**

7   **PARAGRAPH NO. 264:**

8      Samsung did not discover and could not have discovered Rambus's destruction of

9   documents in anticipation of litigation with Samsung, its unfair employment of Neil Steinberg, or

10  the full nature and extent of the unfair and anticompetitive conduct by Rambus until the actions of

11  Rambus and Mr. Steinberg were revealed publicly in a trial in *Rambus v. Infineon*, in the U.S.

12  District Court for the Eastern District of Virginia in 2005.  Specifically, voluminous Rambus

13  documents produced for the very first time in connection with the *Infineon* unclean-hands trial in

14  early 2005 catalogued Rambus's adoption of a document retention policy in early 1998, its

15  massive destruction of documents during at least three separate company-wide "Shred Days," and

16  its instructions to outside patent counsel to destroy numerous documents from his Rambus patent

17  files – documents that a patent-infringement defendant might use to defend against Rambus's

18  infringement claims.  These documents and facts were not discoverable by Samsung or anyone

19  else outside of Rambus before 2005, and would remain concealed today if the *Infineon* court had

20  not broadly pierced Rambus's attorney-client privilege under the crime-fraud exception during

21  preparations for the unclean-hands trial.  In addition, heavily redacted legal invoices from Mr.

22  Steinberg to Rambus dated in June and July of 1998, two months before Mr. Steinberg resigned

23  from Samsung, were produced by Rambus for the very first time in connection with the *Infineon*

24  unclean-hands trial in early 2005. Furthermore, Mr. Steinberg testified in a deposition introduced

25  by video at the unclean-hands trial that he performed legal services for Rambus beginning in June

26  1998.  These documents and facts were not discoverable by Samsung or anyone else outside of

27  Rambus before 2005, and would remain concealed today if Rambus had not included as entries

28  on its *Infineon* privilege log two documents prepared by Mr. Steinberg in June and July of 1998.

1    Indeed, Mr. Steinberg had previously falsely testified in 2001 and again in 2004 that he had *not*

2    performed any legal work for Rambus prior to August 17, 1998, the date he resigned from

3    Samsung. Mr. Steinberg's perjury was a specific act of fraud that concealed Rambus's aiding and

4    abetting of Mr. Steinberg's breaches of his fiduciary duties to Samsung, its intentional

5    interference with Mr. Steinberg's employment contract with Samsung, and Rambus's unfair

6    business practices. Finally, even though Samsung knew by at least October 2000 that Mr.

7    Steinberg was working as in-house counsel for Rambus – a fact that by itself was not disturbing

8    to Samsung for the reasons described herein – Samsung could not have discovered Mr.

9    Steinberg's use of Samsung confidential information until documents showing the true nature of

10   Mr. Steinberg's work at Rambus, including actively working to help Rambus plan patent

11   prosecution and enforcement strategies against DRAM manufacturers including Samsung as

12   outlined in paragraphs 102-109 above, were introduced for the first time during the *Infineon*

13   unclean-hands trial in 2005. Once Rambus's unfair conduct was revealed to Samsung in 2005,

14   however, Samsung was able to diligently investigate and pursue any potential claims against

15   Rambus. Upon information and belief, Rambus and Mr. Steinberg continue to conceal the true

16   nature and extent of their wrongdoing in testimony, interrogatory answers, and by documents

17   previously destroyed.

18   **RESPONSE TO PARAGRAPH NO. 264:**

19       This Counterclaim is the subject of a currently pending motion to dismiss based on

20   Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations.

21   Until the Court rules on that pending motion to dismiss, Rambus will defer answering these

22   allegations.

23       **Applicable Statute of Limitations Tolled by Doctrine of Equitable Tolling**

24   **PARAGRAPH NO. 265:**

25       Furthermore, the concealment of their actions by Mr. Steinberg and Rambus prevented

26   Samsung from knowing the full nature and extent of the injury suffered by Samsung due to

27   Rambus's unfair and anticompetitive conduct. Although Samsung knew at least by the time the

28   SDR/DDR License was negotiated in October 2000 that Mr. Steinberg had gone to work for

Rambus, Samsung was not thereby put on inquiry notice of its claims against Mr. Steinberg and Rambus relating to Mr. Steinberg's secret dual employment because, in light of the extensive, cooperative, and profitable business alliance that Samsung and Rambus had enjoyed since executing their first RDRAM license in 1994, Samsung knew of no reason to be alarmed at that time by Mr. Steinberg's employment at Rambus.  Samsung also was not put on inquiry notice of its claims as a result of Rambus's institution of litigation against other DRAM manufacturers beginning in 2000 because Samsung was still licensed by Rambus at that time and continued to enjoy a friendly and profitable business alliance with Rambus, leaving Samsung no reason to suspect that Mr. Steinberg had any improper involvement with Rambus's preparations for those litigations. Rather, it was not until documents and testimony revealing Mr. Steinberg's secret retention by Rambus at a time when he was still under an employment agreement as in-house counsel for Samsung, as well as his improper use of Samsung confidential information, were introduced for the very first time in connection with the *Infineon* unclean-hands trial in early 2005 that Samsung was put on inquiry notice of this claim

**RESPONSE TO PARAGRAPH NO. 265:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 266:**

Rambus's concealment of its hiring of Mr. Steinberg while he was still an employee of Samsung and its affirmative misrepresentations to Samsung that it was still a faithful business partner to Samsung also helped conceal material facts that prevented Samsung from knowing or discovering the nature and extent of the injury suffered due to Rambus's unlawful, unfair, and anticompetitive conduct.[8]

---

[8] Tellingly, Vice Chancellor Strine denied Rambus's motion for summary judgment with respect to Samsung's claims related to Neil Steinberg's dual employment, including violation of Cal. Bus. & Prof. Code § 17200, in related litigation in Delaware on December 4, 2006.  Based solely on the pleadings, the Delaware court found that Samsung raised a fact issue as to whether it was fraudulently induced to release its claims against Rambus upon execution of the SDR/DDR

**RESPONSE TO PARAGRAPH NO. 266:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**PARAGRAPH NO. 267:**

As a result, Samsung was not aware of the full nature and extent of the unfair and anticompetitive conduct by Rambus until the actions of Rambus and Mr. Steinberg were revealed during the trial of *Rambus v. Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005. Once Rambus's unfair conduct was disclosed, Samsung was able to diligently investigate and pursue any potential claims against Rambus.  Upon information and belief, Rambus and Mr. Steinberg continue to conceal the true nature and extent of their wrongdoing in testimony, interrogatory answers, and by documents previously destroyed.

**RESPONSE TO PARAGRAPH NO. 267:**

This Counterclaim is the subject of a currently pending motion to dismiss based on Rambus's assertion that the Counterclaim is untimely and barred by the statute of limitations. Until the Court rules on that pending motion to dismiss, Rambus will defer answering these allegations.

**COUNT VIII (Declaratory Judgment of Noninfringement)**

**PARAGRAPH NO. 268:**

SEC and SEA reallege and incorporate by reference Paragraphs 1-267 above as though fully set forth herein.

**RESPONSE TO PARAGRAPH NO. 268:**

Rambus incorporates by this reference each of its denials, allegations or assertions in its above responses to paragraphs 1-267, as if fully set forth herein.

License.  The relevant portions of the hearing transcript are attached as Exhibit C.

**PARAGRAPH NO. 269:**

An actual and justiciable controversy exists between SEC, SEA and Rambus with respect to the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents because Rambus has brought this action against Defendants alleging that the Defendants infringe the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents. Absent a declaration of noninfringement, invalidity, and unenforceability, Rambus will continue to wrongfully assert the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents against the Defendants, and thereby cause SEC and SEA irreparable injury and damage.

**RESPONSE TO PARAGRAPH NO. 269:**

Rambus admits that it brought this action alleging that Samsung infringes certain Rambus patents and that Samsung purports to deny the allegations. Except as expressly admitted, Rambus denies the allegations of Paragraph 269.

**PARAGRAPH NO. 270:**

SEC and SEA have not infringed the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents, either directly or indirectly, literally or under the doctrine of equivalents, willfully, or otherwise, and SEC and SEA are entitled to a declaration to that effect.

**RESPONSE TO PARAGRAPH NO. 270:**

Rambus denies the allegations contained in paragraph no. 270.

**COUNT IX (Declaratory Judgment of Invalidity)**

**PARAGRAPH NO. 271:**

SEC and SEA reallege and incorporate by reference Paragraphs 1-270 above as though fully set forth herein.

**RESPONSE TO PARAGRAPH NO. 271:**

Rambus incorporates by this reference each of its denials, allegations or assertions in its above responses to paragraphs 1-270, as if fully set forth herein.

**PARAGRAPH NO. 272:**

An actual and justiciable controversy exists between SEC, SEA and Rambus with respect to the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents because Rambus has

1  brought this action against Defendants alleging that the Defendants infringe the '105, '263, '918,

2  '195, '592, '152, '120, '020, '916, and '863 Patents.  Absent a declaration of noninfringement,

3  invalidity, and unenforceability, Rambus will continue to wrongfully assert the '105, '263, '918,

4  '195, '592, '152, '120, '020, '916, and '863 Patents against the Defendants, and thereby cause

5  SEC and SEA irreparable injury and damage.

6  **RESPONSE TO PARAGRAPH NO. 272:**

7        Rambus admits that it brought this action alleging that Samsung infringes certain Rambus

8  patents and that Samsung purports to deny the allegations.  Except as expressly admitted, Rambus

9  denies the allegations of Paragraph 272.

10 **PARAGRAPH NO. 273:**

11       The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are invalid for

12 failure to meet the "Conditions for Patentability" of 35 U.S.C. §§ 102 and 103 because the alleged

13 inventions thereof are taught by, suggested by, and/or are obvious in view of, the prior art, and no

14 claim of the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents can be validly

15 construed to cover any Samsung device, system or operating method related to DRAM memory.

16 Samsung is entitled to a declaration to that effect.

17 **RESPONSE TO PARAGRAPH NO. 273:**

18       Rambus denies the allegations contained in paragraph no. 273.

19 **PARAGRAPH NO. 274:**

20       The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are invalid for

21 failure to meet the "Specification" requirements of 35 U.S.C. § 112 because the written

22 specifications thereof do not describe the alleged inventions and the manner and process of

23 making and using them in the form required by § 112, and no claim of the '105, '263, '918, '195,

24 '592, '152, '120, '020, '916, and '863 Patents can be validly construed to cover any Samsung

25 device, system or operating method related to DRAM memory.  Samsung is entitled to a

26 declaration to that effect.

27 **RESPONSE TO PARAGRAPH NO. 274:**

28       Rambus denies the allegations contained in paragraph no. 274.

1

**COUNT X (Declaratory Judgment of Unenforceability)**

2

**PARAGRAPH NO. 275:**

3

SEC and SEA reallege and incorporate by reference Paragraphs 1-274 above as though

4

fully set forth herein.

5

**RESPONSE TO PARAGRAPH NO. 275:**

6

Rambus incorporates by this reference each of its denials, allegations or assertions in its

7

above responses to paragraphs 1-274, as if fully set forth herein.

8

**PARAGRAPH NO. 276:**

9

An actual and justiciable controversy exists between SEC, SEA and Rambus with respect

10

to the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents because Rambus has

11

brought this action against Defendants alleging that the Defendants infringe the '105, '263, '918,

12

'195, '592, '152, '120, '020, '916, and '863 Patents.  Absent a declaration of noninfringement,

13

invalidity, and unenforceability, Rambus will continue to wrongfully assert the '105, '263, '918,

14

'195, '592, '152, '120, '020, '916, and '863 Patents against the Defendants, and thereby cause

15

SEC and SEA irreparable injury and damage.

16

**RESPONSE TO PARAGRAPH NO. 276:**

17

Rambus admits that it brought this action alleging that Defendants infringe certain

18

Rambus patents and that Defendants purport to deny the allegations.  Except as expressly

19

admitted, Rambus denies the allegations of Paragraph 276.

20

**PARAGRAPH NO. 277:**

21

The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are

22

unenforceable under the provisions of Title 35, United States Code and the equitable doctrines of

23

prosecution laches, unclean hands, and estoppel, and SEC and SEA are entitled to a declaration to

24

that effect.

25

**RESPONSE TO PARAGRAPH NO. 277:**

26

Rambus denies the allegations contained in paragraph no. 277.

27

28

1   **PARAGRAPH NO. 278:**

2        Rambus unfairly filed multiple continuation applications over a long period of time.

3   Because Rambus failed to timely prosecute the '105, '263, '918, '195, '592, '152, '120, '020,

4   '916, and '863 Patents, the '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents

5   are unenforceable due to prosecution laches, and SEC and SEA are entitled to a declaration to that

6   effect.

7   **RESPONSE TO PARAGRAPH NO. 278:**

8        Rambus denies the allegations contained in paragraph no. 278.

9   **PARAGRAPH NO. 279:**

10       The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are

11  unenforceable based upon, at least, unclean hands, and SEC and SEA are entitled to a declaration

12  to that effect.

13  **RESPONSE TO PARAGRAPH NO. 279:**

14       Rambus denies the allegations contained in paragraph no. 279.

15  **PARAGRAPH NO. 280:**

16       The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are

17  unenforceable as to all members of JEDEC including SEC, SEA, SSI, and SAS, due to estoppel.

18  **RESPONSE TO PARAGRAPH NO. 280:**

19       Rambus denies the allegations contained in paragraph no. 280.

20

21                    **SEPARATE AFFIRMATIVE DEFENSES**

22       As separate and distinct affirmative defenses to the Counterclaims and purported causes of

23  action contained therein, and each of them, Rambus alleges as follows:

24                    **FIRST AFFIRMATIVE DEFENSE**

25                    **(Failure to State Cause of Action)**

26       1.    The Counterclaims, in whole or in part, fail to state facts sufficient to constitute a

27  cause of action against Rambus.

28                    **SECOND AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

2.  Rambus is informed and believes and thereon alleges that the Counterclaims are barred, in whole or in part, by reason of the unclean hands of Samsung including but not limited to, spoliation of evidence.

### THIRD AFFIRMATIVE DEFENSE

**(Issue Preclusion)**

3.  Rambus is informed and believes and thereon alleges that the Counterclaims are barred, in whole or in part, by the doctrines of collateral estoppel and/or res judicata.

### FOURTH AFFIRMATIVE DEFENSE

**(Waiver)**

4.  Rambus is informed and believes and thereon alleges that by virtue of the knowledge, statements, and conduct of Samsung, as well as its respective agents, employees, or representatives, Samsung has waived any right to bring this action.

### FIFTH AFFIRMATIVE DEFENSE

**(Estoppel)**

5.  Rambus is informed and believes and thereon alleges that Samsung, by virtue of its respective acts, omissions, conduct, statements, and/or representations, is estopped, in whole or in part, from bringing this action and asserting the relief requested in the Counterclaims

### SIXTH AFFIRMATIVE DEFENSE

**(No Loss)**

6.  Rambus is informed and believes and thereon alleges that Samsung has sustained no loss or damages as a result of the conduct of Rambus.

### SEVENTH AFFIRMATIVE DEFENSE

**(Failure to Mitigate)**

7.  Rambus is informed and believes and thereon alleges that the Counterclaims are barred, in whole or in part, because Samsung failed to mitigate its damages, if any.

3159620.2

**EIGHTH AFFIRMATIVE DEFENSE**

**(Conduct of Third Parties)**

8.      Rambus is informed and believes and thereon alleges that the Counterclaims are barred, in whole or in part, because the damages, if any, were caused by third parties for whom Rambus bears no responsibility.

**NINTH AFFIRMATIVE DEFENSE**

**(Samsung's Conduct)**

9.      Rambus is informed and believes and thereon alleges that the Counterclaims are barred, in whole or in part, because the damages, if any, were caused by Samsung's conduct, including but not limited to its breach of contract, for which Rambus bears no responsibility.

**TENTH AFFIRMATIVE DEFENSE**

**(Business Justification)**

10.      The alleged acts and/or omissions of Rambus are justified under the circumstances, in whole or in part, because Rambus acted reasonably to protect its business interests.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Ratification)**

11.      The purported causes of action of Samsung are barred, in whole or in part, as Samsung has ratified and approved the purported actions of which it now complains.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

12.      The Counterclaims are barred, in whole or in part, by the applicable statute of limitations.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Laches)**

13.      Samsung, by its acts and conduct, and/or the acts and conduct of its predecessors, agents, or assigns, is barred, in whole or in part, from asserting claims against Rambus by the doctrine of laches.

3159620.2

### FOURTEENTH AFFIRMATIVE DEFENSE

### (Consent)

14.     Samsung's acts, conduct and/or statements, and/or the acts, conduct and statements of its predecessors, agents or assigns constituted consent to the alleged acts and/or conduct of Rambus set forth in the Counterclaims.

### FIFTEENTH AFFIRMATIVE DEFENSE

### (No Standing Under Business & Professions

### Code Section 17200)

15.     The claims of Samsung are barred, in whole or in part, because Samsung has not suffered injury in fact and have not lost money or property as a result of the alleged unfair competition of Rambus.

### SIXTEENTH AFFIRMATIVE DEFENSE

### (First Amendment/Noerr-Pennington Doctrine)

16.     The claims of Samsung are barred, in whole or in part, because Rambus's alleged conduct is protected by the First Amendment to the United States Constitution and the Noerr-Pennington Doctrine.

### SEVENTEENTH AFFIRMATIVE DEFENSE

### (Other Action Pending)

17.     The claims of Samsung are barred, in whole or in part, because of other actions pending in other state and federal courts.

### EIGHTEENTH AFFIRMATIVE DEFENSE

### (No Enforceable Contract)

18.     Rambus's attendance at certain committee meetings held by JEDEC does not give rise to any contractual claim or duty to disclose.  Any alleged agreement between JEDEC and Rambus or JEDEC members and Rambus was not definite enough to make clear to Rambus what disclosure it was required to make, if any.  Further, the lack of details in the EIA/JEDEC patent disclosure policies preclude a finding of any mutual assent when Rambus attended committee meetings held by JEDEC.

3159620.2

1

## NINETEENTH AFFIRMATIVE DEFENSE

2

### (California Litigation Privilege)

3       19.     The claims of Hynix are barred, in whole or in part, because Rambus's alleged

4 conduct is privileged under the California litigation privilege.

5

## TWENTIETH AFFIRMATIVE DEFENSE

6

### (Release)

7       20.     Samsung released its claims in the "SDR/DDR IC and SDR/DDR Memory

8 Module Patent License Agreement Between Rambus Inc. and Samsung Electronics Co., Ltd,"

9 entered in October 2000.

10

## TWENTY-FIRST AFFIRMATIVE DEFENSE

11

### (Additional Defenses)

12       21.     Rambus presently has insufficient knowledge or information upon which to form a

13 belief whether it may have additional, unstated affirmative defenses. On that basis, Rambus

14 reserves the right to amend this reply to assert additional affirmative defenses in the event

15 discovery indicates that additional affirmative defenses are appropriate.

16

17       WHEREFORE, Rambus prays for the following relief:

18       1.     That Samsung take nothing by way of its Counterclaims;

19       2.     That judgment be entered in favor of Rambus and against Samsung;

20       3.     That the Counterclaims be dismissed in their entirety as to Rambus, with

21 prejudice;

22       4.     An award of Rambus's reasonable attorneys' fees pursuant to 35 U.S.C. § 285 due

23 to the exceptional nature of this case, or as otherwise permitted by law;

24       5.     For costs of suit incurred;

25       6.     For such other and further relief as this Court may deem just and proper.

26

27

28

1    DATED:   July 9, 2007                MUNGER, TOLLES & OLSON LLP

2                                         MCKOOL SMITH PC

3

4                                         By:_____/s/ Carolyn Hoecker Luedtke_____
                                                    Carolyn Hoecker Luedtke
5
                                          Attorneys for Plaintiff and Counterclaim Defendant
6                                         RAMBUS INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3159620.2

- 119 -