1

*Attorney list on signature page*

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION
8

9   RAMBUS, INC.,

            Plaintiff.                       Case No. C 05-00334 RMW
10
    v.
11                                           **SAMSUNG'S OBJECTIONS TO**
    HYNIX SEMICONDUCTOR INC., HYNIX          **SPECIAL MASTER'S ORDER ON**
12  SEMICONDUCTOR AMERICA INC., HYNIX        **IMPLIED WAIVER OF WORK-**
    SEMICONDUCTOR MANUFACTURING              **PRODUCT AND ATTORNEY-CLIENT**
    AMERICA INC.,                            **PRIVILEGES**
13
    SAMSUNG ELECTRONICS CO., LTD.,
14  SAMSUNG ELECTRONICS AMERICA, INC.,
    SAMSUNG SEMICONDUCTOR, INC.,             Date:        November 7, 2007
15  SAMSUNG AUSTIN SEMICONDUCTOR,            Time:        2:00 p.m.
    L.P.,                                    Location:    Courtroom 6
16                                           Judge:       Hon. Ronald M. Whyte
    NANYA TECHNOLOGY CORPORATION,
17  NANYA TECHNOLOGY CORPORATION
    U.S.A.,
18

19          Defendants.

20  RAMBUS, INC.,

21          Plaintiff.

22  v.

23  SAMSUNG ELECTRONICS CO., LTD.,           Case No. C 05-02298 RMW
    SAMSUNG ELECTRONICS AMERICA, INC.,
24  SAMSUNG SEMICONDUCTOR, INC.,
    SAMSUNG AUSTIN SEMICONDUCTOR,
25  L.P.,

26          Defendants.

27

28
    SAMSUNG'S OBJECTIONS TO SPECIAL MASTER'S                    CASE NO. C 05 00334 RMW
    ORDER ON IMPLIED WAIVER OF WORK-PRODUCT                     CASE NO. C 05 02298 RMW
    AND ATTORNEY-CLIENT PRIVILEGES

1

**TABLE OF CONTENTS**

2                                                                                                      **Page**

3   Introduction .................................................................................................................... 1

4   Background ..................................................................................................................... 2

5       I.      Samsung's Allegations Regarding Neil Steinberg and the Parties'
                Disagreement About Discovery of Privileged Steinberg Materials...................... 2

6               A.      Samsung's Counterclaims and Affirmative Defenses Relating to
                        Conduct of Neil Steinberg.................................................................... 2

7               B.      The Discovery Requests at Issue ................................................................ 3

8       II.     The Special Master Held That Samsung Implicitly Waived the Attorney-
                Client and Work-Product Protections and Ordered That All the Privileged
9               Documents Requested by Rambus Be Produced ..................................................... 4

10  Standard of Review ......................................................................................................... 6

    Argument ......................................................................................................................... 6
11
        I.      The Special Master Erred by Holding That the Mere Assertion of Equitable
12              Tolling and the Discovery Rule Justified an Implied Waiver................................ 7

13      II.     The Governing Objective Standard for Equitable Tolling and the Discovery
                Rule Makes Samsung's Subjective Knowledge Irrelevant ................................. 11

14      III.    The Special Master Erred by Relying on Relevance—a Standard That Does
                Not Govern the Implied-Waiver Doctrine—and Failing to Justify an
15              Implied Waiver with How the Privileged Materials Are Vital to Rambus's
                Defenses .............................................................................................................. 13

16      IV.     The Special Master Erred by Failing To Narrowly Tailor Any Implied
                Waiver, and Instead Deeming a Total Waiver of Samsung's Work-Product
17              and Attorney-Client Privileges............................................................................ 14

18              A.      The Special Master Erred by Failing to Sharply Limit the Very
                        Broad Production Requested by Rambus.......................................... 14
19
                B.      The Special Master Erred in Failing to Conduct an in Camera
20                      Review Prior to Ordering the Production of Any Privileged
                        Documents .......................................................................................... 16

21  Conclusion ................................................................................................................... 16

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3
*Advertising to Women, Inc. v. Gianni Versace S.p.A.,*
No. 98 C 1553, 1999 WL 608711 (N.D. Ill. Aug. 4, 1999) ............................................ 11

4
*Aloe Vera of Am., Inc. v. United States*, No. CV 99-1794-PHX-JAT,
5
2003 WL 22429082 (D. Ariz. Sept. 23, 2003) ................................................. 11

6
*Am. Standard, Inc. v. Bendix Corp.,*
80 F.R.D. 706 (W.D. Mo. 1978) ...................................................................................... 8

7
*Beneficial Franchise Co., Inc. v. Bank One, N.A.,*
8
205 F.R.D. 212 (N.D. Ill. 2001) ...................................................................................... 7

9
*Bittaker v. Woodford,*
331 F.3d 715 (9th Cir. 2003) ............................................................................... 8, 13, 14
10

*In re Burlington N., Inc.,*
11
822 F.2d 518 (5th Cir. 1987) ............................................................................................ 8

12
*Conkling v. Turner,*
883 F.2d 431 (5th Cir. 1989) ..................................................................................... 8, 14
13

*Cox v. Adm'r U.S. Steel & Carnegie,*
14
17 F.3d 1386 (11th Cir. 1994) ....................................................................................... 12

15
*Durkin v. Shields (In re Imperial Corp. of Am.),*
179 F.R.D. 286 (S.D. Cal. 1998) .............................................................................. 8, 14
16

*Frontier Ref., Inc. v. Gorman-Rupp Co.,*
17
136 F.3d 695 (10th Cir. 1998) ................................................................................. 12, 13

18
*Garcia v. Zenith Elecs. Corp.,*
58 F.3d 1171 (7th Cir. 1995) ..................................................................................... 8, 12
19

*Genentech, Inc. v. Insmed Inc.,*
20
234 F.R.D. 667 (N.D. Cal. 2006) .................................................................................. 15

21
*In re Grand Jury Proceedings,*
219 F.3d 175 (2d Cir. 2000) ............................................................................................ 9
22

*Greater Newburyport Clamshell Alliance v. Pub. Serv. Co.,*
23
838 F.2d 13 (1st Cir.1988) ............................................................................................... 9

24
*Home Indem. Co. v. Lane Powell Moss & Miller,*
43 F.3d 1322 (9th Cir. 1995) ..................................................................................... 7, 12
25

*In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.),*
26
348 F.3d 16 (1st Cir. 2003) .............................................................................................. 9

27
*In re Kidder Peabody Secs. Litig.,* 168 F.R.D. 459, 470 (S.D.N.Y. 1996) ...................... 8

28

*Kerr v. United States Dist. Court,*
    426 U.S. 394 (1976) ................................................................................................ 9

*LG.Philips LCD Co. v. Tatung Co.,*
    243 F.R.D. 133 (D. Del. 2007) ............................................................................... 12

*In re Lott,*
    424 F.3d 446 (6th Cir. 2005) .................................................................................... 7

*Remington Arms Co. v. Liberty Mut. Ins. Co.,*
    142 F.R.D. 408 (D. Del. 1992) ............................................................................... 12

*Russell v. Curtin Matheson Scientific, Inc.,*
    493 F. Supp. 456 (S.D. Tex. 1980) ........................................................................... 8

*Starsight Telecast, Inc. v. Gemstar Dev. Corp.,*
    158 F.R.D. 650 (N.D. Cal. 1994) ........................................................................... 15

*Swoboda v. Pala Mining, Inc.,*
    844 F.2d 654 (9th Cir. 1988) .................................................................................... 6

*Titan Corp. v. M/A-Com, Inc.,*
    No. 93-CV-335, 1994 WL 16001739 (S.D. Cal. June 22, 1994) ................................ 8, 14

*United States v. Amlani,*
    169 F.3d 1189 (9th Cir. 1999) ........................................................................... 8, 9, 12

*United States v. Billmyer,*
    57 F.3d 31 (1st Cir. 1995) ........................................................................................ 9

*United States v. Desir,*
    273 F.3d 39 (1st Cir. 2001) ...................................................................................... 9

*White v. Nat'l Football League,*
    92 F.Supp.2d 918 (D. Minn. 2000) ......................................................................... 12

*Zenith Radio Corp. v. United States,*
    764 F.2d 1577 (Fed. Cir. 1985) .............................................................................. 13

**STATUTES AND RULES**

FED. R. CIV. P. 53(g)(3) ............................................................................................... 5

FED. R. CIV. P. 53(g)(4) ............................................................................................... 6

N.D. CAL. PATENT LOC. R. 3-8 .................................................................................... 7

**OTHER**

9 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 53.42[1] (3d ed. 1997) ................ 5

8 JOHN HENRY WIGMORE, EVIDENCE § 2327 (1961) ........................................................ 9

SAMSUNG'S OBJECTIONS TO SPECIAL MASTER'S
ORDER ON IMPLIED WAIVER OF WORK-PRODUCT
AND ATTORNEY-CLIENT PRIVILEGES

CASE NO. C 05 00334 RMW
CASE NO. C 05 02298 RMW

**INTRODUCTION**

Samsung brings these objections to the Special Master's order compelling production of privileged documents. Despite the fact that discovery is not focused yet on Samsung's claims related to Neil Stenberg because any trial of those claims could not occur before late 2009 (and the parties have a conduct trial and a patent-infringement trial to prepare for in the interim), the Special Master held, without any supporting analysis, that Samsung implicitly waived any attorney-client and work-product protections for all materials regarding: (1) Samsung's knowledge of the work Steinberg did for Rambus; and (2) the work that Steinberg performed while at Samsung that purportedly gave him access to confidential information that Samsung claims was taken and misused. *See Rambus v. Hynix Semiconductor, Inc., et al.*, Nos. C 05-00334 RMW, C 05-002298 RMW, C 06-00244 RMW, Order at 17 (Sept. 26, 2007) (Ambler, J.) (attached as Ex. A) ("Order"). The Order is based on several significant and erroneous legal conclusions that require this Court's resolution.

The Order erroneously deemed Samsung's mere assertion of equitable tolling and the discovery rule as placing Samsung's subjective knowledge regarding Steinberg's work at Rambus and Steinberg's work at Samsung at issue and triggering an implied waiver despite the absence of any indication at this point of how specifically Samsung will support its Steinberg-related claims or tolling contentions. The Order committed further legal error by ignoring the objective standard that governs the equitable tolling and discovery doctrines in finding an implied waiver in relation to Samsung's subjective knowledge about Steinberg's work for Rambus. The Order also fundamentally erred in citing an inapplicable relevance standard and failing to justify its holding with analysis of how the privileged information is "vital" to Rambus's defenses. Lastly, the Order fails to abide by the case law's direction that any implied waiver must be narrowly tailored to maintain as much privilege as possible and instead wholesale orders that the privileges were waived for all requested documents.

**BACKGROUND**

I.   SAMSUNG'S ALLEGATIONS REGARDING NEIL STEINBERG AND THE PARTIES'
     DISAGREEMENT ABOUT DISCOVERY OF PRIVILEGED STEINBERG MATERIALS

   A.   **Samsung's Counterclaims and Affirmative Defenses Relating to Conduct of
        Neil Steinberg**

   In the *Rambus v. Samsung* (the "2298 action") and *Rambus v. Hynix* (the "334 action")

cases, Samsung alleges that Rambus aided and abetted Neil Steinberg's breach of fiduciary and

contractual duties to Samsung and intentionally interfered with Steinberg's employment contract

with Samsung.   Samsung's 2nd Am. Answer to Compl. for Patent Infringement and Jury

Demand and Affirm. Defs. and Countercls., ¶¶ 99-108, 206, 212, 242, 243, Case No. 05-cv-02298

("SAC").[1]   In support of these claims, Samsung alleges that Rambus secretly engaged Steinberg

to work for Rambus as an outside attorney, providing legal advice and strategies for the

enforcement of legal claims, including patent claims against DRAM manufacturers such as

Samsung.   *Id*. at ¶ 100.   Samsung alleges that Rambus knew that Steinberg was employed as

in-house counsel for Samsung, but despite Steinberg's ethical and contractual duties to Samsung,

Steinberg, actively worked to help Rambus extract royalties from manufacturers of DRAM,

including Samsung, by planning patent prosecution strategies (including drafting patent

applications), patent enforcement strategies, and document handling and retention strategies for

use in litigation.   *Id*. at ¶ 102. Samsung alleges that Steinberg improperly used confidential and

proprietary information about Samsung's business and DRAM products in his work for Rambus,

when he was under a contractual and fiduciary duty not to use or disclose such information.   *Id*.

   In response to Rambus's assertion that these two claims are barred by the statutes of

limitations, Samsung argued that its counterclaims were tolled by the equitable tolling doctrine

and discovery rule based on the fact that Samsung did not fully understand and was misled about

---

[1] Samsung's counterclaims involving Steinberg are identical in the two actions and the discovery
at issue was propounded in both actions.   *See* Order at 2 n.2.   Only the 2298 SAC is cited in
this brief.

SAMSUNG'S OBJECTIONS TO SPECIAL MASTER'S                CASE NO. C 05 00334 RMW
ORDER ON IMPLIED WAIVER OF WORK-PRODUCT               CASE NO. C 05 02298 RMW
AND ATTORNEY-CLIENT PRIVILEGES

the scope and nature of Steinberg's work for Rambus until March of 2005, when it was revealed for the first time during the trial of *Rambus v. Infineon* in the U.S. District Court for the Eastern District of Virginia.    Samsung thus had no basis for investigating or pursuing potential claims involving Steinberg's conduct before that time.   *See, e.g.*, SAC at ¶¶ 217, 219, 235, 237, 252, 254, 264, 267.    In addition, although Samsung knew by October 2000 that Steinberg was working for Rambus and that Rambus had initiated litigation against other DRAM manufacturers, Samsung had no reason to be alarmed by this information because it "continued to enjoy a friendly and profitable business alliance with Rambus, leaving Samsung no reason to suspect that Mr. Steinberg had any improper involvement with Rambus's preparations for these litigations." *Id.* at ¶¶ 219, 237, 254.    Samsung did not know until 2005 (and had no reason to believe until that time) that Steinberg's work for Rambus included "actively working to help Rambus plan patent prosecution and enforcement strategies against DRAM manufacturers including Samsung." *Id.* at ¶¶ 217, 235, 252.

In March 2007, Rambus moved to dismiss Samsung's Steinberg-related claims on limitations grounds, arguing that the discovery rule and equitable tolling doctrine are inapplicable because Samsung had sufficient information about Steinberg's work for Rambus to be on inquiry notice of its claims by no later than October of 2000.   *See* Rambus's Mem., Rambus' Mot. to Dismiss "Counts IV–VII" of Samsung's SAC (Mar. 23, 2007); Hearing Tr. May 24, 2007.

## B.    The Discovery Requests at Issue

In March 2007, Rambus propounded its third set of requests for production of documents, which included requests that Samsung produce all documents relating to: (1) Rambus's retention or employment of Steinberg; (2) any work of any kind performed by or to be performed by Steinberg for Rambus; and (3) Samsung's analysis and/or business decision regarding whether to object to Steinberg's representation of Rambus before or during 2000 and 2001 license negotiations.   *See* Rambus's Third Requests for Production of Documents. Requests 103, 108, 122 (Mar. 12, 2007) (attached as Goldstein Decl. Ex. B).    Rambus also sought production of all documents relating to: (1) any work Steinberg performed while employed by Samsung that gave

him access to confidential, proprietary or privileged information that Samsung claims or alleges Steinberg may have used improperly in his work for Rambus; (2) the confidential and sensitive information about DRAM products, including SDRAM and DDR SDRAM that were still in development at Samsung and to which Steinberg had access while at Samsung; (3) the confidential information about invention and innovations that Samsung included in its DRAM products and to which Steinberg had access while at Samsung; (4) Steinberg's work prosecuting Samsung DRAM patents; and (5) Samsung's then-future development plans for DRAM products to which Steinberg had access through his use of product roadmaps in discovery in litigation and patent licensing endeavors, as alleged in Samsung's answer and counterclaims. *Id.*, Requests 100, 113-16.

Samsung agreed to produce all responsive, non-privileged documents.   Order at 6. Samsung's privilege log includes 318 documents.   *See* Samsung's Third Revised Log of Privileged Documents (attached as Goldstein Decl. Ex. C).   In June 2007, after the stay of the 2298 and 334 actions was lifted and discovery proceeded, Rambus raised its privilege waiver claim.   During a meet and confer, Samsung's counsel rejected Rambus's implied-waiver theory and stated that Samsung would not produce privileged documents on these topics without a court order.   Order at 7.   Rambus subsequently filed a Motion to Compel these categories of documents.

## II.   THE SPECIAL MASTER HELD THAT SAMSUNG IMPLICITLY WAIVED THE ATTORNEY-CLIENT AND WORK-PRODUCT PROTECTIONS AND ORDERED THAT ALL THE PRIVILEGED DOCUMENTS REQUESTED BY RAMBUS BE PRODUCED.

Following a hearing, the Special Master held, with no analysis, that Samsung implicitly waived the attorney-client and work-product protections for the broad categories of materials sought by Rambus.   Those categories consist of all materials regarding: (1) Samsung's knowledge of the work Steinberg did for Rambus; and (2) the work that Steinberg performed while at Samsung that gave him access to confidential information that Samsung claims was taken and misused.

The decision relies on a multi-factor test recognized by the Ninth Circuit, which finds an

implied waiver when: (1) a party asserts privilege as the result of some affirmative act; (2) through the affirmative act, the party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense.   Order at 10, 13.   An "overarching consideration" is whether allowing the privilege to prevent disclosure would be "manifestly unfair" to the requesting party.   *Id.* at 10.

With regard to materials concerning what Samsung knew about Steinberg's work at Rambus, the Special Master conclusorily held—in a single paragraph—that an implied waiver occurred because: (1) Samsung's assertion of the discovery rule and equitable tolling doctrine placed at issue Samsung's knowledge about Steinberg's work at Rambus, and Samsung's allegation that it did not and could not investigate until 2005 placed at issue the timing and scope of its investigation; (2) Samsung's knowledge of Steinberg's work at Rambus is relevant; (3) allowing Samsung to assert the privilege would deny Rambus access to information vital to its defense; and (4) fairness requires disclosure.   Order at 15.

With regard to materials concerning Steinberg's work at Samsung, the Special Master conclusorily held—again, in only one paragraph—that an implied waiver occurred because: (1) Samsung's assertions, as a basis for its fiduciary and contractual-duty claims, that Steinberg's legal work at Samsung gave him confidential information that he misused at Rambus places at issue the specific nature of Steinberg's work at Samsung and whether it gave him access to confidential Samsung information that was useful to Rambus; (2) the information is relevant to Samsung's claims; (3) access to the information is "vital" to Rambus's defense; and (4) fairness requires disclosure.   Order at 16.

In neither instance did the Special Master provide any analysis of why the privileged information is vital to Rambus explain how relevance is part of the implied-waiver determination, address possible alternative sources of information, or substantiate the identified unfairness. The Order also failed to address in any way the fact that Rambus has contended in this litigation that information about Samsung's subjective knowledge of Steinberg's work for Rambus is irrelevant to Samsung's tolling and discovery-rule contentions.   Similarly, despite recognizing

the case law's established principle that any implied waiver must be limited, the Special Master failed to conduct any type of narrowing analysis or request *in camera* review to carefully limit the scope of the implied waiver, but instead wholesale ordered all the documents produced.

The Special Master granted Rambus's motion to compel the production of "any and all documents in its possession, custody or control that discuss, refer, or relate to: (a) Mr. Steinberg's work for Rambus; and (b) the work Mr. Steinberg performed for Samsung that purportedly gave him access to the information Samsung claims he later misused at Rambus," and ordered Samsung to produce all privileged documents within those categories.   Order at 17.[2]

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 53, absent a contrary stipulation by the parties, the Court reviews a special master's findings of fact de novo.   *See* FED. R. CIV. P. 53(g)(3); 9 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 53.42[1] (3d ed. 1997).   As evidenced in the Joint Case Management Order in this case, however, the Court adopted the clearly erroneous standard of review for the Special Master's factual determinations.   *See* Jt. Case Mgmt. Order § 2(c) (April 24, 2007) ("Pursuant to the Federal Rules of Civil Procedure dealing with review of magistrate judges' orders, decisions of the Special Master shall be reviewable by the court only if clearly erroneous or contrary to law or upon a request by the Special Master for review of a particular issue or ruling.").

A Special Master's conclusions of law, by contrast, receive no deference and are reviewed by the Court on a de novo basis.   *See e.g., Swoboda v. Pala Mining, Inc.*, 844 F.2d 654, 656 (9th Cir. 1988); FED. R. CIV. P. 53(g)(4) ("The court must decide de novo all objections to conclusions of law made or recommended by a master."); Jt. Case Mgmt. Order § 2(c) (explaining that district court may sustain objections for errors that are "contrary to law").

### ARGUMENT

The objections should be sustained because the Special Master erred as a matter of law in

---

[2] The Special Master set a compliance date of October 5, 2007, Order at 17, but subsequently granted a stay of the compliance date.   *See* Ex. D at 2-3 (stay order).

allowing the mere pleading of equitable tolling and the discovery rule to trigger an expansive implied waiver.   Given the stage of the proceedings in relation to the Steinberg-related claims—claims that will not be tried until late 2009 at the earliest—a proper assessment of implied waiver is simply not possible and should not have been undertaken.   Moreover, the Special Master's decision failed to address the governing objective standard for Samsung's tolling and discovery-rule assertions and contrary to that standard, presumed that Samsung's subjective knowledge is "at issue" in the litigation.   The Order is also reversible because it lacked the necessary substantiating analysis that the privileged documents are "vital" to Rambus's defenses and fundamentally erred by failing to even attempt to conform to the case law's requirement that any implied waiver be narrowly devised.   Relying only a conclusory recitation of the elements of implied waiver, the Order fails to include the necessary basis for recognizing an implied waiver.

## I.     THE SPECIAL MASTER ERRED BY HOLDING THAT THE MERE ASSERTION OF EQUITABLE TOLLING AND THE DISCOVERY RULE JUSTIFIED AN IMPLIED WAIVER.

The Special Master erred as a matter of law in holding that by pleading equitable tolling and the discovery rule in connection with its counterclaims, Samsung implicitly waived its privileges.   Merely raising a claim or a defense does not implicitly waive privilege, and the Special Master's finding of an implied waiver is simply premature.   The Steinberg-related claims will not be tried in the January 2008 Conduct Trial.   *See* Jt. Case Mgmt. Conf. Statement, at 5, 6-7 & Attach. 4 (July 31, 2007) (excerpts attached as Ex. E); Jt. Case Mgmt. Order, Attachs. A & D (April 24, 2007).   The earliest that the claims could be tried is at a trial to be set *after* the Patent Trial, currently scheduled for January 2009.   *See* Further Case Mgmt. Order, at 5 (June 27, 2007).   Accordingly, it is an illogical sequence of events to determine any implied waiver prior to at least the completion of discovery for the conduct trial, the end of the conduct trial, the issuance of the Court's claim construction decisions, the scheduling of a trial on Samsung's unique claims (including claims Involving Rambus' hiring of Steinberg), and the parties' commencement of discovery focused on the Steinberg-related claims.   The logic of waiting until as least these events have occurred is illustrated by this Court's patent rules which provide that the waiver of privilege with regard to a defense to a claim of willful infringement will not be

addressed until 50 days after the Court's claim-construction decision.   *See* N.D. CAL. PATENT LOC. R. 3-8.

Based solely on Samsung's amended counterclaims, the Special Master found a complete waiver of attorney-client and work-product protections in the two broad Steinberg-related categories covered by the Order.   Yet Samsung has not yet crystallized—at this premature stage of a case that has not yet even been set for trial—the theory of its case, including what evidence and legal theories it plans to rely on to try its Steinberg-related counterclaims.   Until it does, the need for, and accordingly the scope of any waiver cannot be defined.   An analysis of the elements of any implied waiver is not yet possible because it is not yet clear, for example, what Samsung will put "at issue," nor what particular evidence might be "vital" to Rambus's defense. The privilege-holder must have taken some affirmative step to place the content of the confidential communication into the litigation.   *See, e.g., In re Lott*, 424 F.3d 446, 455 (6th Cir. 2005) ("It is important to cabin the implied waiver of privileges to instances where the holder of the privilege has taken some affirmative step to place the content of the confidential communication into the litigation."); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1327 (9th Cir. 1995) (concluding that privilege-holder "did not impliedly waive its attorney-client privilege because [it] did not put into issue its privileged communications"); *Beneficial Franchise Co., Inc. v. Bank One*, N.A., 205 F.R.D. 212, 217 (N.D. Ill. 2001) (rejecting argument that pleading equitable estoppel waived privilege, explaining that waiver occurs only when "a party chooses to utilize privileged information to advance a claim or defense").   No such affirmative steps have been taken yet in this case and could not have been, given that the litigation is still in the pretrial discovery phase for the conduct trial and that a patent-infringement trial must also be conducted before any trial of the Steinberg-related claims will be set. Ordering privileged materials to be turned over any time equitable tolling or the discovery rule is asserted would render the privilege meaningless for all litigation involving tolling.

The "implied waiver" doctrine is a narrow exception to attorney-client privilege that is premised on the privilege's limited purpose as a "shield," and prohibition on use of the privilege

1  as a "sword." *See, e.g., United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (citations

2  omitted).  This exception only applies when the privilege-holder raises an issue (claim or

3  defense) that necessarily implicates privileged communications. *See, e.g., Garcia v. Zenith*

4  *Elecs. Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995) (waiver "when the client asserts claims or

5  defenses that put his attorney's advice at issue in the litigation"); *Conkling v. Turner* 883 F.2d

6  431, 434 (5th Cir. 1989) (explaining that waiver depends on privilege-holder "plac[ing]

7  information protected by it in issue through some affirmative act for his own benefit") (internal

8  quotation marks and citation omitted).  Indeed, courts have routinely distinguished between

9  situations in which the privilege-holder relies upon the advice of counsel and those in which

10 communications are merely *relevant* to the case. *See, e.g., In re Burlington N., Inc.*, 822 F.2d

11 518, 533 (5th Cir. 1987) (rejecting waiver because party did not explicitly rely on privileged

12 communication); *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) ("The

13 quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby

14 deemed to have waived his privilege with respect to the advice that he received.").[3]  Relying on

15 Samsung's mere pleading, the Special Master failed to justify implied waiver with any analysis of

16 how the privileged materials at issue were invoked or used as a "sword" by Samsung.

17      The Special Master's fundamental error is further demonstrated by the wholesale nature of

18 the deemed waiver's scope.  It is beyond doubt that implied waivers must be construed

19 cautiously and tailored for the particular privileged material relevant to the specific claim or

20 defense, and that the calibration of any implied waiver must be made with great regard for the

21

22 _____

[3]  Decisions recognizing an implied waiver do so when communications with counsel support a
23 claim or defense. *See, e.g., Conkling*, 883 F.2d at 434-35 (waiver because plaintiff alleged
   limitations period tolled until attorney discovered fraudulent inducement); *Durkin v. Shields (In*
24 *re Imperial Corp. of Am.)*, 179 F.R.D. 286, 288, 289-90 (S.D. Cal. 1998) (waiver when plaintiff
   relied on attorney's advice and investigation in asserting limitations bar); *Russell v. Curtin*
25 *Matheson Scientific, Inc.*, 493 F.Supp. 456, 457-58 (S.D. Tex. 1980) (waiver after plaintiffs
   invoked tolling and testified that they discussed claims with attorney prior to suing); *Am.*
26 *Standard, Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709 (W.D. Mo. 1978) (waiver when plaintiff
   asserted that counsel discovered and communicated fraud after limitations period); *Titan Corp. v.*
27 *M/A-Com, Inc.*, No. 93-CV-335, 1994 WL 16001739, at *3 (S.D. Cal. June 22, 1994) (waiver
   when plaintiffs relied on counsel's investigation of claim to overcome limitations.
28

SAMSUNG'S OBJECTIONS TO SPECIAL MASTER'S                    CASE NO. C 05 00334 RMW
ORDER ON IMPLIED WAIVER OF WORK-PRODUCT               CASE NO. C 05 02298 RMW
AND ATTORNEY-CLIENT PRIVILEGES                              9

1   rationale of the attorney-client privilege.    *See Bittaker v. Woodford,* 331 F.3d 715, 720 (9th Cir.

2   2003) (courts "must impose a waiver no broader than needed to ensure the fairness of the

3   proceedings before it."); *In re Grand Jury Proceedings,* 219 F.3d 175, 186 (2d Cir. 2000)

4   (explaining that courts should be cautious about finding implied waivers).[4]    Claims of implied

5   waiver must be evaluated in light of fairness and the analysis "demands a fastidious sifting of the

6   facts and a careful weighing of the circumstances."    *In re Keeper of Records (Grand Jury*

7   *Subpoena Addressed to XYZ Corp.),* 348 F.3d 16, 23 (1st Cir. 2003) ("Considering the need for

8   this precise, fact-specific tamisage, it is not surprising that the case law reveals few genuine

9   instances of implied waiver." (citing 8 JOHN HENRY WIGMORE, EVIDENCE § 2327, at 635 (1961)).

10  An implied waiver analysis is fact-intensive and based on a case-by-case standard of fairness.

11  *See In re Grand Jury Proceedings,* 219 F.3d at 183, 185 (stating that whether fairness requires a

12  waiver is determined on a case-by-case basis with focus on "specific context in which the

13  privilege is asserted"); *United States v. Billmyer,* 57 F.3d 31, 37 (1st Cir. 1995) ("Waiver doctrine

14  has only a few hardedged rules; as to many permutations, it is a fluid body of precedent reflecting

15  a variety of concerns, including an insistence on real confidentiality and limitations based on

16  fairness.").

17          Such a measured, fact-intensive, implied-waiver analysis is simply impossible at this point

18  and even if the Special Master had engaged in the level of analysis required to find an implied

19  waiver, it should not have been undertaken at this premature stage of the case.    It is not yet clear

20  what evidence and contentions Samsung's Steinberg-related claims will advance, and until that

---

[4] *See also Kerr v. United States Dist. Court,* 426 U.S. 394, 405 (1976) (recognizing the need to ensure that the "balance between petitioners' claim[] of privilege and plaintiffs' asserted need for the documents is correctly struck"); *United States v. Amlani,* 169 F.3d 1189, 1196 (9th Cir. 1999) (holding that "only those documents or portions of documents relating to the [claim asserted by the client] [should be] disclosed"); *Greater Newburyport Clamshell Alliance v. Pub. Serv. Co.,* 838 F.2d 13, 22 (1st Cir.1988) (holding that the client need reveal only information "for which defendants have so far shown a true need and without which they may be unfairly prejudiced in their defense").

SAMSUNG'S OBJECTIONS TO SPECIAL MASTER'S          CASE NO. C 05 00334 RMW
ORDER ON IMPLIED WAIVER OF WORK-PRODUCT          CASE NO. C 05 02298 RMW
AND ATTORNEY-CLIENT PRIVILEGES                   10

evidence and argument becomes clear—and that process will begin as the Steinberg-focused discovery commences—no valid evaluation of implied waiver or fashioning of a proportionate waiver can occur.   Of course, Samsung cannot be required to articulate its theory or marshal its evidence regarding its Steinberg-related claims at this point.   Samsung is entitled to discovery regarding Steinberg's and Rambus's wrongful acts.   And until Samsung can determine the scope of those wrongful acts, and develop the parameters of its claims, any implied waiver cannot be considered.   The Special Master could not, and should not, have decided that an implied waiver occurred at this stage of the litigation.

The Special Master's underlying legal error requires reversal.   *See, e.g., LG.Philips LCD Co. v. Tatung Co.*, 243 F.R.D. 133, 137-39 (D. Del. 2007) (reversing discovery order by Special Master after concluding that underlying legal conclusion that advice of counsel was an "affirmative defense" under Rule 8(c) was wrong); *White v. Nat'l Football League*, 92 F.Supp.2d 918, 926 (D. Minn. 2000) (deciding that Special Master's underlying premise regarding regulatory authority was erroneous and reversing dismissal of certain parties from proceeding). The Court should sustain the objections and vacate the Order.

## II.   THE GOVERNING OBJECTIVE STANDARD FOR EQUITABLE TOLLING AND THE DISCOVERY RULE MAKES SAMSUNG'S SUBJECTIVE KNOWLEDGE IRRELEVANT.

The Order should also be reversed as it relates to production of privileged documents concerning Samsung's knowledge about the nature of Steinberg's work for Rambus.   The determination of what was "at issue" erroneously failed to consider that an objective standard governs resolution of Samsung's equitable tolling and discovery-rule assertions, making Samsung's subjective knowledge about the work that Steinberg was performing for Rambus irrelevant.   Indeed, Rambus argued in its motion to dismiss Samsung's counterclaims that the equitable tolling and discovery doctrines turn on notice inquiry, which is to be assessed according to an objective reasonable-person standard, and not a subjective standard.   *See* Rambus's Mem.,

Rambus' Mot. to Dismiss "Counts IV–VII" of Samsung's SAC, at 7-8 (Mar. 23, 2007) ("Samsung's allegations that it did not actually believe Rambus or Steinberg had engaged in wrongdoing until it purportedly learned about dual employment allegations for the first time in the 2005 *Infineon* trial are *irrelevant*.   The notice rule is based on an *objective standard*, *not* on Plaintiff's alleged subjective beliefs.") (citing cases) (emphasis added) (excerpt attached as Ex. F).   Samsung's subjective knowledge regarding Steinberg's work for Rambus is, by Rambus's own assertions in this litigation, "*irrelevant*" because "the inquiry notice rule applies an 'objective reasonable person' standard" precisely to avoid disputes about subjective state of mind."   Rambus's Reply in Supp. of Its Mot. to Dismiss, at 1, *Rambus, Inc. v. Samsung Elecs. Co., Ltd.,* No. 05-02298-RMW (N.D. Cal. May 11, 2007) (emphasis added) (excerpt attached as Ex. G).   Moreover, despite Rambus fully briefing and arguing earlier this year its Motion to Dismiss based on the purported unavailability of the equitable tolling and discovery doctrines, Rambus never complained then, or at any time prior to its motion to compel, that it needed privileged documents to defend against Samsung's counterclaims or for the Court to resolve the applicability of the equitable tolling and discovery doctrines.

Because the governing objective standard does not consider subjective knowledge, Samsung's subjective knowledge is not "at issue" as a matter of law and cannot serve as a basis for an implied waiver.   The Special Master committed reversible legal error in failing to consider the governing law when determining the matters "at issue" for purposes of deciding if an implied waiver occurred.   *See, e.g., Aloe Vera of Am., Inc. v. United States*, No. CV 99-1794-PHX-JAT, 2003 WL 22429082, at *6 (D. Ariz. Sept. 23, 2003) (holding that because discovery doctrine turns on an *objective* test of plaintiffs' diligence, plaintiffs' counsel's "*actual opinions*" were "not relevant to the essential question of what *facts* relating to the alleged disclosures Plaintiffs' counsel possessed that were not otherwise provided by Defendant, what similar counsel exercising reasonable diligence would have concluded from such facts, and when counsel arrived at a conclusion and may have communicated it to Plaintiffs"); *Advertising to Women, Inc. v. Gianni Versace S.p.A.,* No. 98 C 1553, 1999 WL 608711, at *6 (N.D. Ill. Aug. 4, 1999)

(rejecting waiver for privileged protection for communications with counsel because defense of laches "does not require an inquiry into defendant's state of mind").   The Special Master should have considered the governing objective standard and concluded that Samsung's subjective knowledge regarding the nature of Steinberg's work for Rambus is irrelevant to the resolution of Samsung's invocation of equitable tolling and the discovery doctrine. The objections should be sustained for this reason as well.

### III.   THE SPECIAL MASTER ERRED BY RELYING ON RELEVANCE—A STANDARD THAT DOES NOT GOVERN THE IMPLIED-WAIVER DOCTRINE—AND FAILING TO JUSTIFY AN IMPLIED WAIVER WITH HOW THE PRIVILEGED MATERIALS ARE VITAL TO RAMBUS'S DEFENSES.

The Special Master erred by relying on the purported relevance of the privileged materials requested to conclude that an implied waiver had occurred.   *See* Order at 15 ("The knowledge of Samsung and its attorneys regarding Steinberg's work at Rambus is *relevant* to Samsung's tolling and discovery rule assertions.") (emphasis added); *id.* at 16 ("The information is clearly *relevant* to Samsung's claims.") (emphasis added).   It is beyond doubt that relevance is not the test for an implied waiver of the attorney-client and work-product privileges.

The case law makes clear that the privilege for communications is not implicitly waived if they are simply *relevant* to issues raised in the litigation.   *See, e.g., Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 701 (10th Cir. 1998) ("Mere relevance . . . is not the standard articulated in *Hearn*.").   Instead, the information must also be "vital," which necessarily implies that the information is not available from another source.   *See Amlani*, 169 F.3d at 1195 (9th Cir. 1999) ("When the sought-after evidence is 'only one of several forms of indirect evidence about an issue," the privilege has not been waived); *cf. Home Indem. Co.*, 43 F.3d at 1326-27 (concluding that no implied waiver occurred when unavailability of privileged material would not prejudice the requesting party's defense).   In order for information to be "vital," real prejudice must occur in its absence; the privileged materials cannot be merely helpful to the requesting party.   *See, e.g., Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1418 (11th Cir. 1994)

(declining to find an implied waiver when plaintiffs "failed to explain how they have been prejudiced"); *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 142 F.R.D. 408, 415 (D. Del. 1992) (holding that the "Court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant").

The Order stated that the privileged documents are "vital" to Rambus's case, Order at 15, 16, but failed to provide any demonstrative analysis. Invocation of the implied-waiver doctrine requires a showing that the information is not available from other sources, and the Special Master conspicuously failed to support the Order with a determination that the information sought by Rambus is not otherwise available (despite Rambus's control of Steinberg and the availability of prior testimony), leaving the Order with an unsupportable dependence only on the Order's recognition of "relevance." As discussed, *see supra* Section I, the Steinberg-claims are at an insufficient stage of development to perform the necessary substantiating analysis for implied waiver. This is particularly apparent in relation to the requirement that the privileged material be "vital" to the requesting party before a waiver may be implied. For example, prior to depositions of Joel Karp and Steinberg, it is premature to suggest that the privileged documents are "vital" to Rambus's defense. Rambus certainly has not demonstrated that the information that it seeks is otherwise unavailable, and given the stage of discovery and the sequence of the various phases of this litigation, it cannot make such an assertion at this point. *See, e.g., Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1580 (Fed. Cir. 1985) (no waiver because "[i]f the views of the parties to or the drafters of the settlement agreements are pertinent to the resolution of that legal issue . . . Zenith has not given any convincing reason why it could not obtain that information by deposing those individuals"). In *Frontier Refining, Inc. v. Gorman-Rupp Co.,* the Tenth Circuit reversed an implied waiver on the basis that the "vital" factor was not established because other sources of evidence were available and the district court "hinged its conclusion that the information was 'necessary' to its conclusion that the information was 'relevant.'" 36 F.3d at 701. The Order should be reversed for this reason as well.

1    **IV.   THE SPECIAL MASTER ERRED BY FAILING TO NARROWLY TAILOR ANY IMPLIED WAIVER, AND INSTEAD DEEMING A TOTAL WAIVER OF SAMSUNG'S WORK-PRODUCT**

2    **AND ATTORNEY-CLIENT PRIVILEGES.**

3          Despite the command that courts "must impose a waiver no broader than needed to ensure

4    the fairness of the proceedings before it," *Bittaker,* 331 F.3d at 720; *see also supra* Section I, the

5    Special Master failed to closely tailor the ordered production and failed to conduct an *in camera*

6    review to ensure that the parameters of the implied waiver were appropriately narrow.    This

7    error also requires reversal.

8          **A.   The Special Master Erred by Failing to Sharply Limit the Very Broad Production Requested by Rambus.**

9          The Special Master failed to include any analysis of the necessary scope of a waiver after

10   determining to recognize an implied waiver.   The case law limits any production ordered as a

11   result of an implied waiver of privilege, and any mandated loss of privilege must be closely tied

12   to the elements of the relevant claim or defense.   *See, e.g., Bittaker*, 331 F.3d at 720; *Conkling*,

13   883 F.2d at 435 (limiting production of privileged materials to question of timing of discovery of

14   alleged fraud by party's attorney); *In re Imperial Corp. of Am.,* 179 F.R.D. at 290 (explaining that

15   implied waiver does not constitute a "wholesale waiver" and limiting production of privileged

16   materials to (1) when attorneys became aware of facts which should have put them on notice that

17   a cause of action could be validly stated; and (2) the specific facts which would have put the

18   involved attorneys on notice) (citation omitted); *Titan Corp.*, 1994 WL 16001739, at *4

19   (limiting discovery of privileged materials to timing of attorney's communications regarding

20   fraud and specifics of the information).

21         Rambus requested "any and all documents . . . that discuss, refer, or relate to . . . Mr.

22   Steinberg's work for Rambus."   Rambus's Mem. at 1.   Rambus's request is overly broad on its

23   face and is not tailored to the elements of equitable tolling and the discovery rule for which

24   Rambus purportedly seeks the privileged materials.   Any production of privileged materials

25   regarding Samsung's knowledge of Steinberg's work for Rambus should have been limited to

26   materials tied to the elements of the limitations bars.   Rambus's request for privileged materials

27   concerning Steinberg's work for Rambus is also impermissibly broad, and the Special Master

28

SAMSUNG'S OBJECTIONS TO SPECIAL MASTER'S
ORDER ON IMPLIED WAIVER OF WORK-PRODUCT
AND ATTORNEY-CLIENT PRIVILEGES

CASE NO. C 05 00334 RMW
CASE NO. C 05 02298 RMW

1     erred in simply accepting that request.   Rambus requests all materials that refer or relate to "the

2     work Mr. Steinberg performed for Samsung that purportedly gave him access to the information

3     Samsung claims he later misused at Rambus."   *Id.*   This request is impermissibly far-reaching

4     and invasive of Samsung's proprietary and confidential information, and the Special Master failed

5     to offer any analysis of the appropriate limits of an implied waiver.   The Special Master should

6     have narrowed Rambus's request for privileged materials regarding Steinberg's work for

7     Samsung.   Any production of privileged materials regarding Steinberg's work for Samsung that

8     is mandated should be narrowly limited to more specific descriptions of the type of work

9     conducted by Steinberg, but not the actual work itself.

10

11              **B.      The Special Master Erred in Failing to Conduct an *in Camera* Review Prior
                         to Ordering the Production of Any Privileged Documents.**

12              Part and parcel of the Special Master's failure to consider the limits of any implied waiver

13     was the failure to conduct an *in camera* review to determine which of the 300-plus documents

14     subject to the Order actually fall within any waiver.   *See* Ex. [].   Rambus has never claimed that

15     all of these documents are relevant, even under Rambus's unsupportable theory of implied

16     waiver.   The Special Master should have given proper regard to the protections of the attorney-

17     client and work-product protections by reviewing and deciding which of the documents actually

18     fell within any implied waiver by determining their relevance to the subject of the implied waiver.

19     *See, e.g., Genentech, Inc. v. Insmed Inc.*, 234 F.R.D. 667, 671-72 (N.D. Cal. 2006) ("If actual

20     production is ordered following *in camera* review, it is narrowly tailored as the waiver is

21     'narrowly construed.'") (citation omitted); *Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158

22     F.R.D. 650, 654-56 (N.D. Cal. 1994) (rejecting an expansive waiver after conducting *in camera*

23     review and concluding that attorney-client privilege was waived for particular documents

24     referring to prior art and not waived for others because they did not fall within the relevant

25     subject matter).   For this independent reason, the objections to the Order should be sustained.

26                                               CONCLUSION

27              For these reasons, the Court should sustain the objections, and reverse and vacate the

28     Special Master's order.

SAMSUNG'S OBJECTIONS TO SPECIAL MASTER'S                           CASE NO. C 05 00334 RMW
ORDER ON IMPLIED WAIVER OF WORK-PRODUCT                            CASE NO. C 05 02298 RMW
AND ATTORNEY-CLIENT PRIVILEGES
                                        16

1 | Dated:    October 11, 2007

2

3 | WEIL, GOTSHAL & MANGES, LLP

4 | By:___/s/ David J. Healey_____
    David J. Healey

5 | MATTHEW D. POWERS (Bar No. 104795)
6 | Email:   matthew.powers@weil.com
    EDWARD R. REINES (Bar No. 135930)
7 | Email:   edward.reines@weil.com
    WEIL, GOTSHAL & MANGES LLP
8 | 201 Redwood Shores Parkway
    Redwood Shores, CA   94065
9 | Telephone:    (650) 802-3000
    Facsimile:    (650) 802-3100

10 | DAVID J. HEALEY (admitted pro hac vice)
11 | Email: david.healey@weil.com
    ANITA E. KADALA (admitted pro hac vice)
12 | Email: anita.kadala@weil.com
    WEIL, GOTSHAL & MANGES LLP
13 | 700 Louisiana, Suite 1600
    Houston, TX   77002
14 | Telephone:    (713) 546-5000
    Facsimile:    (713) 224-9511

15 | Attorneys for Defendants
16 | SAMSUNG ELECTRONICS CO., LTD.,
    SAMSUNG ELECTRONICS AMERICA, INC.,
17 | SAMSUNG SEMICONDUCTOR, INC., and
    SAMSUNG AUSTIN SEMICONDUCTOR, L.P

18

19

20

21

22

23

24

25

26

27

28