E-filed:    11/26/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH,<br><br>        Plaintiffs,<br><br>    v.<br><br>RAMBUS INC.,<br><br>        Defendant. | No. CV-00-20905 RMW<br><br>ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION<br><br>**[Re Docket Nos. 2629, 2663]** |
| RAMBUS INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P.,<br><br>        Defendants. | No. C-05-02298 RMW<br><br><br>**[Re Docket No. 415]** |

**United States District Court**
For the Northern District of California

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE
FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART
RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF

**United States District Court**
For the Northern District of California

| | |
|---|---|
| RAMBUS INC., | No. C-05-00334 RMW |
| Plaintiff, | |
| v. | **[Re Docket Nos. 544, 570]** |
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR MANUFACTURING AMERICA INC., | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P., | |
| NANYA TECHNOLOGY CORPORATION, NANYA TECHNOLOGY CORPORATION U.S.A., | |
| Defendants. | |
| RAMBUS INC., | No. C-06-00244 RMW |
| Plaintiff, | |
| v. | **[Re Docket Nos. 232, 262]** |
| MICRON TECHNOLOGY, INC., and MICRON SEMICONDUCTOR PRODUCTS, INC. | |
| Defendants. | |

This order addresses three of Rambus' motions for summary judgment related to allegations of fraud.  The Manufacturers jointly oppose the third and fourth motions for summary judgment , while Micron opposes the fifth.  The court has reviewed the papers and considered the arguments of counsel heard on November 21, 2007.  For the reasons set forth below, the court denies Rambus's motion for summary judgment no. 3 regarding representations about future events.  The court also denies Rambus's motion for summary judgment no. 4 on justifiable reliance.  The court grants Rambus' motion for summary judgment no. 5 on negligent misrepresentation, except that there is a

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                                                          2

genuine issue of material fact as to whether Rambus' resignation letter from JEDEC contained a

false assertion.  Micron's claim for negligent misrepresentation therefore survives to the extent it is

based on that assertion.

## I.  BACKGROUND[1]

### A.      Rambus' Conduct at JEDEC

On December 10, 1991, Rambus applied for membership in JEDEC, a standards-setting

organization with various committees that was developing open standards for DRAM technology.

Hersey Decl., Ex. 9; *Hynix Semiconductor Inc. v. Rambus Inc.*, 441 F. Supp. 2d, 1066, 1069 (N.D.

Cal. 2006).  Rambus initially joined JEDEC to "learn what the competition was working on."

Hersey Decl., Ex. 8. Over time, Rambus also used JEDEC to "gain leads into who was working for

what semiconductor company" and "where they were putting their emphasis."  *Id.*  Rambus'

Marketing/Sales board meeting minutes from June 25, 1992 reveal its initial "JEDEC Strategy."

Hersey Decl, Ex. 12, at 8.  The goal: "to leverage the JEDEC committee to our advantage or

neutralize them or slow them down on the SDRAM effort."  *Id.*  At that time, Rambus recognized

various patent claims that an SDRAM standard may "conflict with."  *Id.*  As of November 2, 1992,

Rambus was working to obtain further patent coverage of an SDRAM standard.  Hersey Decl., Ex.

16.  Rambus continued prosecuting claims that could cover aspects of an SDRAM standard

throughout 1993.  *See* Hersey Decl., Exs. 18-21.

Rambus' allegedly deceptive dealings with JEDEC began with a vote on what features to

include in the SDRAM standard in June 1992.  The JEDEC committee on memory technology

(Committee 42.3) proposed including programmable CAS latency and programmable burst length

technologies in the SDRAM standard.  *See* Brewer Decl., Ex. A.  These are features that Rambus

---

[1]      The following partial recitation of facts is derived from the Manufacturers' oppositions
because on summary judgment, the court must accept the non-movant's facts and view them in the light
most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
587-88 (1986); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03
(9th Cir. 2000).  Additional factual details regarding this case can be found in *Hynix Semiconductor Inc.
v. Rambus Inc.*, 441 F. Supp. 2d 1066 (N.D. Cal. 2006).

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE
FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART
RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                                              3

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

now claims infringe its patents, though at the time Rambus did not have an issued patent covering those features. The ballot passed overwhelmingly, but Rambus voted against including the features in the standard, stating that "Pinout allow Vcc and Vss problem if part is incorrectly inserted in boards. Clock pin is too far from Vss and Vcc to allow for a clean signal. Add more power pins." *See* Luedtke Decl., Ex. D at 9-10. Rambus did not mention that it believed its patent applications covered programmable CAS latentcy. *See* Hersey Decl., Ex. 12 at 8.

Almost every JEDEC committee meeting that Rambus attended included a discussion of JEDEC's patent policy. Hersey Decl., Ex. 13. Meetings often began with approval of the prior meeting's minutes, followed by a discussion of patent policies and an update of the patent "tracking list." *See, e.g.,* Craig Decl., Exs. J (JC-42.3 Minutes 9/23/1993), M (JC-42.3 Minutes 12/8/1993), N (JC-42.3 Minutes 9/13/1994), P (JC-42.3 Minutes 12/7/1994). The patent tracking list cataloged the various patents that potentially covered aspects of the developing technology standard. *See, e.g.,* Craig Decl., Ex. M, Attach. A (Tracking List 12/8/1993).

At a JEDEC meeting in 1992, IBM raised concerns that some JEDEC members had patents pending on SDRAM that they had not disclosed. Hersey Decl., Ex. 17. An internal Rambus email from December 11, 1992 worried that Rambus would have to quit JEDEC in order to avoid disclosing its patent applications. *Id.* Rambus does not appear to have been one of the members IBM threatened with exposure, however.

Further heated discussion of patent issues occurred at the September 23, 1993 meeting, though the meeting minutes do not disclose the substance of the discussion. *Compare* Craig Decl, Ex. J (minutes), *with* Hersey Decl., Exs. 22-23 (Rambus emails describing discussion). Rambus' JEDEC representative Richard Crisp first stated that TI was "chastized [sic] for not informing JEDEC that it had a 1987 patent." Hersey Decl., Ex. 22. Crisp later described the meeting as:

> The meeting opened with a lot of controversy regarding Patents. TI and Micron are embroiled in a lawsuit and apparently both Jim Townsend of Toshiba and Howard Sussman of Sanyo have volunteered to testify on Micron's behalf at the trial.
>
> TI is really distressed with this, and presented a motion to get JEDEC to clarify their

United States District Court

For the Northern District of California

patent policy.  TI would like JEDEC/EIA policy to define the scope of the patents required to be disclosed to the committee to be limited to the two following scenarios:

1) The patent at issue is required to be used to comply with the standard.
2) In the absence of a standard, those seeking to make the type of item being standardized would be required to use the patent.

Hersey Decl., Ex. 23.  Crisp further explained that "the whole issue got pretty nasty" before debate ended, including a failed motion for "TI [to] withdraw from JEDEC pending resolution of the patent issue!"  *Id.*  The meeting also involved Micron reporting various TI patents, TI self-disclosing some of its patents, and Philips announcing a patent that issued on June 30, 1992, which Motorola claimed was reported too late.  *Id.*  Rambus also disclosed its '703 patent covering sync clock technology at the September 23, 1993 meeting.  *See* Hersey Decl., Ex. B at 177:25-178:4 (Crisp deposition admitting disclosure); Craig Decl., Ex. M (Dec. 1993 minutes reflecting addition of Rambus patent to tracking list).  Crisp claims he disclosed the '703 patent "because that was the first patent that Rambus had that issued."  Hersey Decl., Ex. B at 178:2-4.  Crisp admitted that he decided to disclose the patent at the meeting, that he was personally confused about the JEDEC disclosure policy, and that he was criticized at Rambus for having made the disclosure.  *Id.* at 180:19-181:23.  He also admitted that he had never read the patent before disclosing it.  *Id.* at 183:1-9.

The next significant interaction between Rambus and JEDEC occurred at the May 24, 1995 meeting.  *See* Hersey Decl., Ex. 27 (internal Rambus email dated May 24, 1995 from Crisp summarizing meeting); *but see* Craig Decl., Ex. R (JC-42.3 minutes from May 24, 1995 making no mention of Rambus).  Hyundai (now Hynix) presented a proposal for SyncLink DRAM.  Craig Decl., Ex. R at 10.  The minutes reflect that, "Patent issues were a concern in this proposal.  It was stated that no known patents exist on this proposal.  It was intended to be an open standard."  *Id.*

Crisp's email notes that Intel's representative affirmatively asked whether Rambus patents cover the proposal.  Hersey Decl., Ex. 27 at 72.  The committee chair then asked Rambus whether or not it knows of any patents that may read on "Synchlink."  *Id.* at 73.  An HP representative challenged Crisp, noting that since he had been to all of the SyncLink meetings, he "should know

exactly what will and will not be a Rambus patent issue." *Id.* At the end of the meeting, two Intel

representatives approached Crisp and asked for his thoughts about the SyncLink proposal. *Id.* Crisp

responded that his personal opinion was that "it would be virtually impossible for them not to

infringe some aspect of what [Rambus] had done." *Id.* Crisp felt that Rambus may want to "walk

into the next JEDEC meeting and simply provide a list of patent numbers which have issued and say

. . .'you decide for yourselves what does and does not infringe.'" *Id.* Crisp recognized though that

"we may not want to make it easy for all to figure out what we have especially if nothing looks

really strong." *Id.* Nonetheless, he proposed preparing a list of patent numbers covering SDRAMs

to "emphasize our point in this matter that member companies of JEDEC do patent their work and it

does read on the JEDEC standards." *Id.* at 74.

An email exchange between Crisp and the HP representative that questioned him at the

meeting (Hans Wiggers) also sheds light on these events. Wiggers wrote to Crisp on June 10 that:

> We have held all out work group meetings in the public domain and you have
> attended these meetings I assume in good faith. If you know of any way in which
> the proposed Ramlink standard violates patents held by Rambus or others, than [sic]
> I think you have a moral obligation to bring this to my attention, including
> information about which patents are being violated. Just making idle comments or
> vain threats is not responsible behavior in my opinion.

Hersey Decl., Ex. 28. Crisp replied on June 13, 1995, stating:

> Regarding patents, I have stated to several persons that my personal opinion is that
> the Ramlink/Synclink proposals will have a number of problems with Rambus
> intellectual property. We were the first out there with high bandwidth, low pincount
> DRAMs, our founders were busily at work on their original concept for the first
> Ramlink meeting was held, and their work was documented, dated, and filed
> properly with the US patent office.
>
> Much of what was filed has not yet issued, and I cannot comment on specifics as
> these filings are confidential. I was asked at the last JEDEC meeting to report on our
> patent coverage relative to SyncLink as proposed at JEDEC at the next meeting in
> Crystal City in September. Our attorneys are currently working on this, so I think
> I will be in a position to make some sort of official statement at that time and plan
> to do so. In the meantime, I have nothing else to say to you or the rest of the
> committee about our patent position. If you want to search for issued patents held
> by Rambus, then you may learn something about what we clearly have covered and
> what we do not. But I must caution you that there is a lot of material that is currently
> pending and we will not make any comment at all about it until it issues.

Hersey Decl., Ex. 28.  Crisp publicized Rambus' position that SyncLink and Ramlink DRAM technology may violate Rambus patents at an IEEE meeting discussing the SyncLink standard on August 21, 1995.  Hersey Decl., Ex. 30.

Crisp presented the official statement he had promised Wiggers at the next JEDEC committee meeting on September 11, 1995.  *See* Craig Decl., Ex. S, Attach. C.  The statement notes that "to fully determine Synclink patent risk, this committee should look not just to Rambus but internally."  *Id.*  The statement continued, "For example, we are aware of 13 US patents relating to SDRAMs which were issued to member companies of this committee.  All were active participants in the SDRAM standardization process.  Included in this list are Hitachi, Mitsubishi, Mosaid, Motorola, Oki, Samsung, TI and Toshiba."  *Id.*  After describing the "less stringent patent policy" under which Synclink was developed, Rambus concluded that "products defined by committees are not guaranteed to be free of patent encumberances [sic]."  *Id.*  Finally, Rambus closed its statement:

> At this time, Rambus elects to not make a specific comment on our intellectual property position relative to the Synclink proposal.  Our presence or silence at committee meetings does not constitute an endorsement of any proposal under the committee's consideration nor does it make any statement regarding potential infringement of Rambus intellectual property.

*Id.*

Crisp's email to Rambus following the meeting provides further details.  Crisp noted that the statement "generated some discussion" and was considered vague by some members.  Hersey Decl., Ex. 32.  Crisp stated that he clarified the statement by explaining how patent disclosure had worked at JEDEC so far:

> I reminded them of the 14 patents relating to SDRAMs and that our silence was not an agreement that we have no IP related to Synclink as we had heard that Hyundai had believed (of course I did not mention Hyundai's name).  I simply reminded them that the member companies are constantly receiving patents on things they are standardizing and that they seldom report the patents.  Rather, other companies are the ones which 'tattle' on others.  I also reminded them that we have actually reported a patent to the committee in the past and in so doing it put us in a league within JEDEC which has only a small number of members.

*Id.*  Crisp also recommended that Rambus make a statement committing to licensing its patents on

United States District Court

For the Northern District of California

reasonable terms to remove "much of the animosity we experience from [JEDEC]." *Id.* In a later

deposition, Crisp testified that his statement about Rambus' self-reported patent was intended to

convey that Rambus was being forthcoming with its patents. Hersey Decl., Ex. 33 at 744:1-10.

Rambus attended one additional JEDEC meeting (December 6, 1995) before resigning. *See*

Craig Decl., Ex. T.[2] A possible factor in Rambus' decision to resign was a December 19, 1995 letter

from its outside counsel advising Rambus of the FTC's consent order against Dell Computer, which

charged Dell with violating the FTC Act for failing to disclose patents during a standard-setting

process and then seeking to enforce them. *See* Hersey Decl., Ex. 37; *see also In re Dell Computer

Corp.*, Docket No. C-3888, *available at*: http://www.ftc.gov/os/caselist/c3888.shtm.

Rambus sent a formal letter of resignation from JEDEC on June 17, 1996. The letter noted

that, "Rambus plans to continue to license its proprietary technology on terms that are consistent

with the business plan of Rambus, and those terms may not be consistent with the terms set by

standards bodies, including JEDEC." Hersey Decl., Ex. 40. Rambus added, "We trust that you will

understand that Rambus reserves all rights regarding its intellectual property." *Id.* Finally, Rambus

concluded, "To the extent that anyone is interested in the patents of Rambus, I have enclosed a list of

Rambus U.S. and foreign patents. Rambus has also applied for a number of additional patents in

order to protect Rambus technology." *Id.* The list attached to the letter did not disclose Rambus'

"Integrated circuit I/O using a high performance bus," Patent No. 5,513,327, which issued on April

30, 1996.

**B.**      **Hynix**

During the same time period, Rambus had individual dealings with Hynix. On August 31,

1994, Crisp met with a Hynix representative, Bob Proebsting, to discuss RDRAM and SDRAM.

Hersey Decl., Ex. 6. Proebsting told Crisp that Hynix intended to include PLL technology in its

---

[2] Prior to the final meeting Rambus attended, JEDEC sent out proposals for improvements to future generations of SDRAM. *See* Hersey Decl., Ex. E. The proposal included various features that Rambus now claims are covered by its patents.

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                                              8

SDRAMs and asked whether Rambus had any patents on doing so. *Id.* Crisp told Proebsting that he could not comment; Proebsting responded that he doubted any such patents would be valid anyway. *Id.* While Crisp said nothing, he felt that Rambus should inform Hynix if it believes Hynix may infringe. *Id.*

In early 1995, Crisp became aware that a Hynix employee, Farhad Tabrizi, was Rambus' biggest obstacle to Hynix licensing Rambus' patents to make RDRAM. Hersey Decl., Ex. 26. Tabrizi was apparently committed to adopting "free and open standards" and did not want to pay Rambus licensing fees. *Id.* Crisp's email to Rambus' board indicates that he planned to go to Korea to negotiate with Hynix, but that he was concerned about avoiding Tabrizi. *Id.* He hoped to intimate that if Hynix goes along with the standards process, it will find itself "mired in a big intellectual property trap." *Id.* However, Crisp worried that if Tabrizi heard about Rambus' intellectual property, he would leak that information to JEDEC. *Id.*

Crisp made the trip to Korea in early April, 1995, and followed up a few days later with a fax to Hynix's Director of Memory Business Operations. *See* Hersey Decl., Ex. D. The fax warned Hynix that the standards for the Ramlink memory devices will likely infringe Rambus patents. *Id.* To further urge Hynix to adopt RDRAM, the fax also mentioned SDRAM in passing, noting that it took two years for JEDEC to approve SDRAM while the committee had not yet begun to consider the Ramlink proposal. *Id.* While emphasizing that it would be "very risky" for Hynix to adopt Ramlink, the fax made no warning or further mention regarding SDRAM. *Id.*

The negotiations between Hynix and Rambus concluded with a license on December 28, 1995. Hersey Decl., Ex. 56. The license agreement grants Hynix the right to make "Rambus ICs," which include "Rambus Memories" and "Other DRAMs." *See id.* at ¶¶ 1.10, 3.1(a). The royalty rate for "Other DRAMs" was higher than Hynix would have preferred, *see* Hersey Decl., Ex. F at 98:13-16, but Hynix believed it necessary as "insurance" in case its SyncLink products infringed Rambus patents. Hersey Decl., Ex. F at 99:8-12. The "Other DRAMs" clause covered any DRAM that "incorporates part of the Rambus Interface Technology but is not Compatible with the Rambus

United States District Court

For the Northern District of California

Interface Specification."  Hersey Decl., Ex. 56 at ¶ 1.5.  Over the next few years, Rambus became

aware that Hynix had begun making DDR SDRAMs that Rambus believed infringed, Rambus did

not demand payment under the "Other DRAMs" clause of the Hynix license.  Hersey Decl., Exs. 57-

58.

Crisp continued to meet with Tabrizi after the license was concluded.  Hersey Decl., Ex. 60.

Tabrizi was concerned that Rambus' RDRAM could not be made cheaper than SDRAM.  *Id.*  While

Crisp asked Tabrizi for more information about the SDRAM features, he made no comment

regarding possible infringement.  *Id.*

### C.      Micron

Unlike Hynix, Micron does not point to any evidence in the record of a relationship with

Rambus beyond Rambus' activities at JEDEC.[3]  Micron representatives attended each JEDEC

meeting.  *See* Craig Decl., Ex. B at 14:2-9; Ex. C at 761:14-765:3.  These representatives distributed

the JEDEC minutes within Micron, including to a design group that may have reviewed the patents

on the minutes' tracking lists.  Craig Decl., Ex. B at 230:8-20.  A Micron employee, Terry Lee, has

testified that had Micron known of Rambus' patents and patent applications, it would have opposed

including various features in the SDRAM standard.  Craig Decl., Ex. E at 6716:15-6717:25.

### D.      Nanya

Unlike Hynix and Micron, Nanya was not a member of JEDEC while Rambus was a

member.  Freitas Decl., Ex. A at 118:4-5.  Nanya did however begin manufacturing SDRAM

compliant with the JEDEC standard in 1996 or 1997.  *Id.* at 119:21-23.  According to Nanya's

30(b)(6) witness, Nanya does not know now if it knew about JEDEC's patent disclosure policies

when it began manufacturing SDRAM.  *Id.* at 119:24-120:2.  Rambus and Nanya appear to have not

had any contact before November of 2000.  *Id.* at 123:25-124:4.  As of June 2001, Nanya does not

appear to have investigated Rambus' patents, inquired about Rambus' role at JEDEC, or learned

---

[3]      Rambus appears to have tried to license its technology to Micron at some point in 1995.
*See* Perry Decl., Ex. I.

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE
FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART
RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                                        10

anything about Rambus' representations to the organization.  Perry Decl., Ex. J at 135-136.

## II.  ANALYSIS

Rambus' three motions for summary judgment challenge the sufficiency of the Manufacturers' fraud claims and Micron's negligent misrepresentation claim.

### A.        Motion for Summary Judgment No. 4 – Reliance

Rambus' fourth motion for summary judgment argues that the Manufacturers cannot prove justifiable reliance because none of them has any witness that heard the three allegedly deceptive statements Rambus made to JEDEC.  The Manufacturers' reliance theories are not simple, nor are they uniform given the different factual circumstances of each Manufacturer.  Although each Manufacturer's theory of reliance differs, various aspects of the law regarding reliance apply to them all.

Under California law, "[t]he necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage."  *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995).  The misrepresentation element of fraud can be met by "the telling of a half-truth calculated to deceive."  *Hynix Semiconductor Inc. v. Rambus Inc.*, 441 F. Supp. 2d 1066, 1076-77 (N.D. Cal. 2006) (quoting *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004)).  As framed by Rambus, the Manufacturers' claims rest solely on three alleged "half-truths" that Rambus conveyed to JEDEC.

"Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction."  *Alliance Mortgage Co.*, 10 Cal. 4th at 1239.  Ordinarily, one must prove that one read or heard a misrepresentation to have relied on it.  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1088 (1993).  On the other hand, an omission is never conveyed, making it impossible for one to hear or read it.  Therefore, in cases where the misrepresentation is an omission, "[o]ne need only prove that,

had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093-94 (1993).

California law does not clearly state which standard controls for proving reliance in a "half-truths" case. *See Vega*, 121 Cal. App. 4th at 294-95 (remanding case and requiring reliance to be determined "on the evidence," but providing no standard). On the one hand, a person must hear a half-truth to be deceived by it. On the other hand, the half-truth calculated to deceive likely puts the one who hears it at ease. It is the omitted portion of the half-truth that would have led the person to behave differently. Therefore, to establish reliance in a case premised on "half-truths," a plaintiff must show that they heard the half-truth, but can be found to have relied on it if they would have behaved differently "had the omitted information been disclosed."

A person does not have to have heard a misrepresentation in the first instance. *See Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1548 (1998). Instead, liability also extends to third persons if "the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." *Id.* (quoting Restatement Second of Torts § 533). The maker of a fraudulent statement does not need to intend that a specific third party hear the statement, only that the maker know it will be conveyed to a particular class of persons. *Id.*

### 1. Nanya

Of all the Manufacturers, Nanya possesses the weakest case for reliance because it had the most limited dealings with Rambus. Nonetheless, Nanya argues that it can prove reliance sufficient to support its claims because Nanya relied on its "understanding of JEDEC processes and policies" and that Nanya "believed that JEDEC's standards were free of patents held by JEDEC members such as Rambus." Nanya Opp. at 3. In essence, Nanya argues that Rambus defrauded JEDEC into believing Rambus did not own patents covering aspects of the JEDEC standard, and that JEDEC then conveyed to Nanya that the JEDEC standard was free of patents held by JEDEC members. Nanya therefore argues that its reliance on JEDEC's representation allows it to assert a claim against

United States District Court

For the Northern District of California

Rambus.

Nanya analogizes its situation to that of fraudulent representations that become embedded in third-party certifications.  *See* Restatement Second of Torts § 533, comment f.  Under the Restatement, one who misrepresents creditworthiness to a credit agency can be liable for fraud when a third party relies on the agency's representation that a person is creditworthy.  *Id.*  "The fact that the rating company does not communicate the figures misstated by the maker of the misrepresentations is immaterial. It is enough that their substance is summarized with reasonable accuracy or that the rating given expresses the effect of the misstatements made." *Id.*

Rambus argues that comment f should be limited to the context of credit-rating companies. That argument lacks support, as the next line that Rambus quotes from the Restatement recognizes that a credit-rating is only "one of the situations" where this principle of indirect misrepresentation applies.  Rambus next argues that the credit-rating context is distinguishable from the present context because a credit rating is a more "direct" representation than the JEDEC standard.  Rambus' distinction is not dispositive.  If Rambus disclosed half-truths to JEDEC calculated to deceive it into believing Rambus did not hold patents to the JEDEC standard, JEDEC then represented to third parties that its standard was free of patents held by JEDEC members, and those third parties then relied on this "certification" when making JEDEC-compliant products, the third party could establish reliance sufficient to support a claim for fraud.

This theory of reliance goes beyond the scope of Rambus' motion for summary judgment. Rambus' motion is premised solely on the basis that each Manufacturer must have directly heard the alleged "half-truths" to support a claim for fraud.  Under California law, this is not the case.  The Manufacturers can each establish reliance if the substance of Rambus' allegedly deceptive half-truths were conveyed to them.[4]  Because Rambus' motion does not address bases for reliance other than the

---

[4]    To be sure, each Manufacturer must be able to prove that they heard some representation regarding Rambus.  This may be impossible for Nanya to establish at trial, as Nanya's 30(b)(6) witness has testified that Nanya did not know whether Rambus was a member of JEDEC when it began making JEDEC-compliant DRAMs.  *See* Freitas Decl., Ex. A at 123:20-24.

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                                                      13

United States District Court
For the Northern District of California

Manufacturers' directly hearing the three alleged half-truths, Rambus' motion for summary judgment on reliance must be denied.

### 2. Micron and Hynix

Furthermore, Rambus' motion for summary judgment on reliance with respect to Micron and Hynix is misplaced because it improperly restricts their claims to only three alleged instances of deception. Rambus fails to meet its burden on summary judgment with respect to these parties because it ignores the full scope of Rambus' dealings with each of them, particularly Hynix. Putting aside the three half-truths that Rambus submits the Manufacturers could not have relied on or the indirect theory of reliance articulated above, the Manufacturers could have relied on the remainder of their courses of dealing with Rambus.

Summary judgment is particularly inappropriate because California law permits a party to establish reliance by circumstantial evidence, which the case law suggests can be more reliable and probative than direct evidence. *See Vazquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971); *Hunter v. McKenzie*, 197 Cal. 176, 185 (1925). Reliance is therefore ordinarily a question of fact that can rarely be decided on summary judgment. *Alliance Mortgage,* 10 Cal. 4th at 1239 (quoting *Blankenheim v. E. F. Hutton & Co.,* 217 Cal. App. 3d 1463, 1475 (1990)). Given Rambus' failure to address the whole scope of its dealings with these two parties, summary judgment cannot be granted.

At oral argument, Rambus asked that the court at least enter a partial summary judgment that the Manufacturers' did not directly hear the three alleged half-truths discussed above. The court does not believe that summary adjudication of such narrow facts will help narrow the issues for trial. Proper jury instructions regarding reliance will suffice. Accordingly, Rambus' motion for summary judgment on reliance is denied.

### B. Motion for Summary Judgment No. 3 – Representations

Rambus' third motion for summary judgment attacks the Manufacturers' fraud claims on two additional grounds. First, Rambus argues that the alleged misrepresentations made by Rambus are not actionable because they relate to future events. Second, Rambus argues that one cannot rely on

United States District Court

For the Northern District of California

misrepresentations regarding future government action because one cannot rely on government action under California law.

A misrepresentation about future events generally cannot support a claim for fraud because statements about future events are deemed opinions. *Borba v. Thomas*, 70 Cal. App. 3d 144, 152 (1977). Three well-recognized exceptions exist to this general rule: "(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion." *Id.* The second exception for fiduciaries or other trusted persons does not apply to the facts of this case. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 441 F. Supp. 2d 1066, 1077-78 (N.D. Cal. 2006) (citing *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096, n. 7 (Fed. Cir. 2003)).[5] The first exception, possessing "superior knowledge," has developed specialized meaning. *See Pacesetter Homes, Inc. v. Brodkin*, 5 Cal. App. 3d 206, 212-13 (1970). It is more than "greater acumen," but instead is often, though not exclusively, meant as knowledge that induces the defrauded party to enter the transaction. *Id.*

Rambus argues that to the extent the Manufacturers' fraud claims are premised on alleged misrepresentations and omissions that Rambus failed to disclose its pending patent applications, intentions to amend patent applications to cover standards, and intentions to assert those patents, these misrepresentations and omissions relate only to the future and therefore are not actionable. Any misrepresentations or omissions about Rambus' patent applications and plans regarding patent

---

[5]      Hynix tries to revitalize its argument that its licensing relationship with Rambus gives rise to a "confidential relationship." Opp. at 26. The court has already rejected this argument. *See Hynix*, 441 F. Supp. 2d at 1078 (rejecting fiduciary duty and noting disclaimer in license of any joint venture relationship). Changing the name of the argument does not change the argument, a confidential relationship is synonymous with a fiduciary relationship. *Stevens v. Marco*, 147 Cal. App. 2d 357, 372 (1956). To the extent Hynix's argument relies on *Stevens*, the cases are entirely distinguishable. The parties in *Stevens* were not in a mere licensee-licensor relationship as the Manufacturers argue. Instead, the parties were more akin to assignee-assignor and found to have been engaged in a joint venture, *see id.* at 376-77, precisely the relationship Hynix and Rambus disclaimed. While the circumstances of Hynix's licensing relationship with Rambus may give rise to a claim, they do not give rise to a claim because of a fiduciary relationship.

**United States District Court**

For the Northern District of California

applications fall within the first exception to the general rule, however, because only Rambus could know the status of its patent prosecution. *See Cordis Corp. v. SciMed Life Systems, Inc.*, 982 F. Supp. 1358, 1360-61 (D. Minn 1997) (noting the importance of preserving the secrecy of patent applications). The Manufacturers allege that Rambus' deceptions regarding its patenting activities led JEDEC to adopt the standards it did and further led the Manufacturers to make allegedly infringing DRAMs. Rambus' knowledge of its prosecution plans therefore meets even a limited, transactional reliance definition of "superior knowledge," and hence can support a possible fraud claim.

Rambus also argues that any misrepresentation or omission premised on its issued patents cannot support a finding of fraud because such information is equally accessible to all parties. *Magpali v. Farmers Group, Inc.v*, 48 Cal. App. 4th 471, 482 (1996), *but see Vega*, 121 Cal. App. 4th at 295 ("[T]he contention that publicly available information cannot form the basis for a concealment claim is mistaken. The mere fact that information exists somewhere in the public domain is by no means conclusive."). Despite the strong contrary language in *Vega*, the court expressly distinguished the case before it from situations where facts were "readily accessible." *Vega*, 121 Cal. App. 4th at 295, n. 11. Information about an easement has been deemed "readily accessible" where it could be discerned from the public records kept regarding the property. *Stevenson v. Baum*, 65 Cal. App. 4th 159, 166 (1998). Information was also held readily accessible in *Borba* because the water bureau which had to approve the transaction would have provided its approval policy to a purchaser had he asked. 70 Cal. App. 3d at 154. Issued patents are available to all. However, the realities of searching for patents related to a subject area distinguishes this situation from checking a deed or calling a bureau to ask about its policies. The Patent Office has issued millions of patents, and discerning the boundaries of their claims can be vexing. While all issued patents are public records, it is naive to compare checking all issued patents to checking property records at a title office. Doing so obliterates the difference between "accessible" and "*readily* accessible." Evidence may prove that the existence of additional relevant Rambus patents

1   may have been "readily accessible" to the Manufacturers.  The court will not hold, however, that

2   merely because patents are public records, they are "readily accessible."  *Accord Vega*, 121 Cal.

3   App. 4th at 295 (declining to find that financing statement on record with the Delaware Secretary of

4   State was "readily accessible").

5        Because Rambus' assertions about future events fall into various exceptions to California's

6   general rule prohibiting them from supporting a claim for fraud, the court denies its motion for

7   summary judgment on the fraud claims and will not summarily adjudicate that the Manufacturers

8   may not assert reliance based on assertions about future events.

9        Rambus also argues that the Manufacturers' fraud claims must fail because "each of those

10  claims depends on alleged statements concerning future decisions by a government agency,

11  specifically, the Patent Ofiice," and that under California law a plaintiff cannot justifiably rely on

12  statements regarding government actions.  The California case law Rambus cites for this proposition

13  suggest that it is unreasonable for a person to rely on representations that a public body will do

14  something when the power to do so resides solely with the public body.  *See Holder v. Home Sav. &*

15  *Loan Ass'n*, 267 Cal. App. 2d 91, 106-07 (1968).  The court in *Borba* explained the *Holder* case as

16  another illustration of the general rule that, "where there is no relation of special trust or confidence

17  between the buyer and seller, and where the means of knowledge of the pertinent facts are equally

18  available to both parties, neither person can justifiably rely on the expressions of opinion by the

19  other concerning future events."  70 Cal. App. 3d at 155.  The court has already explained how

20  Rambus' knowledge of its patents and patent applications was not equally available to the

21  Manufacturers.  Even if the *Holder* case stood for a special rule regarding the reasonableness of

22  relying on government action, it is distinguishable because the status of patent applications does not

23  depend solely on the decision of public officials, as the setting of tax rates in *Holder* did.  Rambus

24  controlled the prosecution of its patent applications, and where a patent application satisfies the

25  requirements of patentability, the Patent Office *must* issue a patent.  *See* 35 U.S.C. § 151.

26       Accordingly, the court denies Rambus' motion for summary judgment on the basis that one

27

28  ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE
    FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART
    RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
    — C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
    TSF                                                         17

1   cannot rely on misrepresentations or omissions concerning future action by the Patent Office and

2   will not summarily adjudicate that proposition.

3       **C.      Motion for Summary Judgment No. 5 – Negligent Misrepresentation**

4       Rambus' fifth motion for summary judgment attacks Micron's negligent misrepresentation

5   claim on the grounds that such a claim requires the plaintiff to identify a false assertion, and not a

6   mere omission or implied representation.  Micron opposes the motion, arguing that the statements it

7   alleges violate the law all satisfy the "positive assertion" element of a negligent misrepresentation

8   claim.

9       Negligent representation derives from similar circumstances as a claim for fraud, though it

10  differs with respect to a few elements.  A claim for negligent representation does not require

11  *scienter*; a defendant may be liable for making a statement "as to which he or she lacked any

12  reasonable ground for believing the statement to be true." *Charnay v. Cobert*, 145 Cal. App. 4th

13  170, 184 (2006).  On the other hand, the lesser mental state for negligent representation is balanced

14  by its requirement of a false "positive assertion" or "assertion of fact," and not a mere "implied

15  assertion." *Wilson v. Centruy 21 Great W. Realty*, 15 Cal. App. 4th 298, 306 (1993); *Yanase v.

16  Auto. Club of S. Cal.*, 212 Cal. App. 3d 468, 473 (1989).  To be clear, "[n]egligent misrepresentation

17  is narrower than fraud." *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 984 (2003).  Unlike

18  fraud, which can be premised on misleading statements or omissions, a negligent representation

19  claim "requires a false statement of a past or existing material fact." *Id.*  This heightened

20  representation requirement makes sense.  If negligent misrepresentation encompassed the same

21  universe of representations that fraud does, it would completely displace the tort of fraud.

22      Rambus identifies six allegedly false statements by Rambus in Micron's pleadings that it

23  states comprise Micron's basis for making a negligent misrepresentation claim.  As a preliminary

24  matter, Micron states that it has "identified several other affirmative misrepresentations in its

25  Answer and Counterclaims," but it does not identify the additional statements that it alleges

26  constitute negligent misrepresentation, let alone cite to the paragraphs of its answer and

27

28  ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE
    FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART
    RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
    — C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
    TSF                                                                    18

United States District Court

For the Northern District of California

1

counterclaims that contain these statements. *See* Micron Opp. at 3 & fn. 2. Micron cannot fend off

2

Rambus' summary judgment motion by merely claiming that additional misrepresentations exist. It

3

must show them. At oral argument, Micron did not draw the court's attention to any other allegedly

4

negligent misrepresentations.

5

Micron then specifically discusses four statements that it argues constitute false "positive

6

assertions." Micron's opposition begins by asserting that Rambus' comment in response to the June

7

1992 JEDEC ballot was a false positive assertion because the ballot requested voters to "alert the

8

Committee accordingly" to any patents involving the ballot. *See* Brewer Decl., Ex. A. Micron

9

misconceives the nature of the tort of negligent misrepresentation. At worst, Rambus omitted to

10

state that it was aware of patent applications or planned patent applications involving the ballot.

11

Nonetheless, this was at worst an omission, not a positive assertion, as negligent misrepresentation

12

requires. While Rambus' June 1992 ballot response may be misleading, and its failure to identify the

13

legal problems associated with the technology may be considered a "deceptive half-truth," the

14

statement is not a false positive assertion.

15

Micron next argues that Rambus' comments in response to the 1995 SyncLink proposal

16

constitute a false positive assertion. Specifically, Micron points to Crisp's statement that "products

17

defined by the committee are not guaranteed to be free of patent encumbrances." Micron Opp. at 7.

18

Micron later characterizes this as an "incomplete disclosure" and accuses Crisp of "withholding

19

critical information." Such arguments may help support a claim that the statement was fraudulent.

20

They are tantamount to admissions, however, that the statement was not a negligent

21

misrepresentation because the positive assertion was not false.

22

Micron next alleges that Rambus' resignation letter from JEDEC was a false positive

23

assertion, specifically, because the list of patents included with the letter failed to include Rambus'

24

Patent No. 5,513,327. Rambus argues that the list is not a false positive assertion because the letter

25

does not claim that the statement is a "complete" list. The court disagrees. The letter did not have to

26

state that it was including a "complete" list for it to be reasonably understood in that light. There is a

27

28

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE
FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART
RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                                                      19

genuine issue of material fact as to whether the letter contains a false positive assertion.

Micron's opposition addresses one last statement made by Rambus: a "party line" to release to the media regarding a recently issued patent. *See* Brewer Decl., Ex. CC. The email contains the following exchange that Micron alleges constitutes a negligent misrepresentation:

> Q: Do Double Data Rate (DDR) SDRAMs use this patent?
> A: We don't know yet. No DDR products exist for us to evaluate.

*Id.* The first defect in Micron's argument is that there is no evidence this statement was ever released to the media; Micron merely submits the internal Rambus email in support of its opposition. Micron does not introduce evidence that Rambus ever made the assertion. Micron correctly points out that the court must draw all reasonable inferences in its favor given the summary judgment context, and argues that it is reasonable to infer that an internal draft of a press release was later shared with the public. The court does not have to decide the reasonableness of such an inference because the second defect in Micron's claim is that the representation is not a false statement of material fact. Micron introduces evidence suggesting that Rambus believed, or desired, DDR SDRAM to infringe the patent. *See* Brewer Decl., Ex. DD. That does not, however, convert Rambus' statement of opinion regarding possible infringement into a false statement of fact.

Accordingly, the court grants Rambus motion for summary judgment on Micron's negligent misrepresentation claim, except that there is a genuine issue of material fact as to whether Rambus' resignation letter from JEDEC contained a false assertion.

//
//
//
//
//
//
//
//

1

2
### III.  ORDER

3        For the foregoing reasons, the court denies Rambus's motion for summary judgment no. 3

4 regarding representations about future events.  The court also denies Rambus's motion for summary

5 judgment no. 4 on justifiable reliance.  The court grants Rambus' motion for summary judgment no.

6 5 on negligent misrepresentation, except that there is a genuine issue of material fact as to whether

7 Rambus' resignation letter from JEDEC contained a false assertion.  Micron's claim for negligent

8 misrepresentation therefore survives to the extent it is based on that assertion.

9

10

DATED:   11/26/07

11
_Ronald M Whyte_

12                                          RONALD M. WHYTE
                                           United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE
FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART
RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                          21

**United States District Court**
For the Northern District of California

1

**Notice of this document has been electronically sent to:**

2

**Counsel for Plaintiff(s):**

3

| | |
|---|---|
4| Craig N. Tolliver | ctolliver@mckoolsmith.com |
| Pierre J. Hubert | phubert@mckoolsmith.com |
| Brian K. Erickson | berickson@dbllp.com, |
5| David C. Vondle | dvondle@akingump.com |
| Gregory P. Stone | gregory.stone@mto.com |
6| Carolyn Hoecker Luedtke | luedtkech@mto.com |
| Peter A. Detre | detrepa@mto.com |
7| Burton Alexander Gross | burton.gross@mto.com, |
| Steven McCall Perry | steven.perry@mto.com |
8| Jeannine Y. Sano | sanoj@howrey.com |

9

**Counsel for Defendant(s):**

10

| | |
|---|---|
| Matthew D. Powers | matthew.powers@weil.com |
| David J. Healey | david.healey@weil.com |
11| Edward R. Reines | Edward.Reines@weil.com |
| John D Beynon | john.beynon@weil.com |
12| Jared Bobrow | jared.bobrow@weil.com |
| Leeron Kalay | leeron.kalay@weil.com |
13| Theodore G. Brown, III | tgbrown@townsend.com |
| Daniel J. Furniss | djfurniss@townsend.com |
14| Jordan Trent Jones | jtjones@townsend.com |
| Kenneth L. Nissly | kennissly@thelenreid.com |
15| Geoffrey H. Yost | gyost@thelenreid.com |
| Susan Gregory van Keulen | svankeulen@thelenreid.com |
16| Patrick Lynch | plynch@omm.com |
| Jason Sheffield Angell | jangell@orrick.com |
17| Vickie L. Feeman | vfeeman@orrick.com |
| Mark Shean | mshean@orrick.com |
18| Kai Tseng | hlee@orrick.com |

19

Counsel are responsible for distributing copies of this document to co-counsel that have not registered
20 for e-filing under the court's CM/ECF program.

21 **Dated:**      11/26/07                                          TSF
                                                           **Chambers of Judge Whyte**
22

23

24

25

26

27

28 ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 3 ON REPRESENTATIONS ABOUT THE
FUTURE; DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 4 ON RELIANCE; AND GRANTING IN PART
RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 5 ON NEGLIGENT MISREPRESENTATION
— C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                           22