1    Gregory P. Stone (SBN 078329)
     Andrea Weiss Jeffries (SBN 183408)
2    Fred A. Rowley, Jr. (SBN 192298)
     MUNGER, TOLLES & OLSON LLP
3    355 South Grand Avenue, 35th Floor
     Los Angeles, CA 90071-1560
4    Telephone: (213) 683-9100
     Facsimile: (213) 687-3702
5    Email: gregory.stone@mto.com
     Email: andrea.jeffries@mto.com
6    Email: fred.rowley@mto.com

7    Peter A. Detre (SBN 182619)
     Rosemarie T. Ring (SBN 220769)
8    Jennifer L. Polse (SBN 219202)
     MUNGER, TOLLES & OLSON LLP
9    560 Mission Street, 27th Floor
     San Francisco, CA 94105
10   Telephone: (415) 512-4000
     Facsimile: (415) 512-4077
11   Email: peter.detre@mto.com
     Email: rose.ring@mto.com
12   Email: jen.polse@mto.com

     Rollin A. Ransom (SBN 196126)
     SIDLEY AUSTIN LLP
     555 West Fifth Street, Suite 4000
     Los Angeles, CA 90013-1010
     Telephone: (213) 896-6000
     Facsimile: (213) 896-6600
     Email: rransom@sidley.com

     Pierre J. Hubert (Pro Hac Vice)
     Craig N. Tolliver (Pro Hac Vice)
     McKOOL SMITH PC
     300 West 6th Street, Suite 1700
     Austin, TX 78701
     Telephone: (512) 692-8700
     Facsimile: (512) 692-8744
     Email: phubert@mckoolsmith.com
     Email: ctolliver@mckoolsmith.com

13   Attorneys for RAMBUS INC.

14                    UNITED STATES DISTRICT COURT

15         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

16

17   RAMBUS INC.,                          CASE NO.:  C 05-00334 RMW

18              Plaintiff,                 **RAMBUS INC.'S NOTICE OF MOTION
                                           AND MOTION *IN LIMINE* NO. 13 TO
19         vs.                             EXCLUDE EVIDENCE OF OR RELIANCE
                                           UPON THE INFINEON SETTLEMENT
20   HYNIX SEMICONDUCTOR INC., et al.,     AGREEMENT, AGREEMENTS
                                           AFFECTED BY THE *INFINEON*
21              Defendants.                RULINGS, AND RELATED
                                           NEGOTIATIONS**

22                                         **[REDACTED PUBLIC VERSION]**

23
                                           Hearing date:  December 19, 2008
24                                         Time:            2:00 pm
                                           Courtroom:   6
25                                         Judge:         Hon. Ronald M. Whyte
                                           Trial Date:    January 19, 2009
26

27   RAMBUS INC.,                          CASE NO.:  C 05-02298 RMW

28              Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD.,
et al.,

                Defendants.

RAMBUS INC.,

                Plaintiff,

vs.

MICRON TECHNOLOGY INC., et al.,

                Defendants.

CASE NO.:  C 06-00244 RMW

RAMBUS'S MOTION IN LIMINE NO. 13 TO EXCLUDE
TAINTED AGREEMENTS AND NEGOTIATIONS;
CASE NOS. 05-334 RMW; 05-2298 RMW; 06-244 RMW

1    PLEASE TAKE NOTICE that on December 19, 2008 at 2:00 PM or as soon

2  thereafter as counsel may be heard, in the Courtroom of the Honorable Ronald M. Whyte in the

3  United States District Court for the Northern District of California, at 280 South First Street, San

4  Jose, California, Plaintiff and Counterclaim-Defendant Rambus Inc. ("Rambus") hereby moves

5  under Federal Rule of Evidence 403 to preclude Defendants and Counterclaimants Hynix

6  Semiconductor Inc., Hynix Semiconductor America Inc., and Hynix Semiconductor

7  Manufacturing America Inc., collectively "Hynix"; Defendants and Counterclaimants Micron

8  Technology, Inc. and Micron Semiconductor Products, Inc., collectively "Micron"; Defendants

9  and Counterclaimants Nanya Technology Corporation and Nanya Technology Corporation USA,

10  collectively "Nanya"; Defendants and Counterclaimants Samsung Electronics Co., Ltd., Samsung

11  Electronics America, Inc. and Samsung Austin Semiconductor, L.P., collectively "Samsung,"

12  from introducing evidence of, having their experts rely upon, or otherwise making any reference

13  to the 2001 Rambus-Samsung amended license agreement, the 2002 Rambus-Mitsubishi Interim

14  Agreement, the 2004 Rambus-Elpida Amended License Agreement, the 2005 Infineon Settlement

15  and License Agreement, the 2005 Samsung offers and counteroffers, or any negotiations

16  pertaining to any of these agreements (hereinafter "Tainted Agreements and Negotiations").

17    This Motion is based on this Notice of Motion and Motion; the Memorandum of

18  Points and Authorities attached hereto; the Declaration Of Andrea Jeffries In Support Of

19  Rambus's Motion *In Limine* No. 13 To Exclude Evidence Of Or Reliance Upon The Infineon

20  Settlement Agreement, Agreements Affected By The Infineon Rulings, And Related Negotiations

21  (filed concurrently with this motion); the Declaration of Bill Ward In Support of Rambus Inc.'s

22  Motion Under *Daubert* To Preclude The Manufacturers' Damages Experts From Relying On The

23  Infineon Settlement Agreement, Certain Amended License Agreements, And Certain License

24  Renegotiations (Oct. 24, 2008); and all of the Court's records and files in this action, and on such

25  other and further written and oral argument as may be presented at or before the hearing on this

26  matter.

27

28

1  DATED:  December 3, 2008          MUNGER, TOLLES & OLSON LLP

2                                    SIDLEY AUSTIN LLP

3                                    McKOOL SMITH PC

4

5                                    By:_____/s/ Andrea Weiss Jeffries_____

6                                          Andrea Weiss Jeffries

7                                    Attorneys for Plaintiff RAMBUS INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RAMBUS'S MOTION IN LIMINE NO. 13 TO EXCLUDE
TAINTED AGREEMENTS AND NEGOTIATIONS,
CASE NOS. 05-334 RMW; 05-2298 RMW; 06-244 RMW

# TABLE OF CONTENTS

                                                                                                    **Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ........................................................................................................ 2

        A.    The Tainted Agreements and Negotiations Directly Resulted From The
              Infineon Rulings Against Rambus ................................................................. 2

        B.    The Defendants May Seek To Use The Tainted Agreements And
              Negotiations To Prove A Reasonable Royalty ............................................... 3

III.    ARGUMENT ............................................................................................................. 4

        A.    Evidence Relating To The Tainted Agreements And Negotiations Would
              Be Unduly Prejudicial To Rambus, Confusing, and Highly Consumptive
              Of Time .......................................................................................................... 4

        B.    The Tainted Agreements and Negotiations Are Not Probative Of A
              Reasonable Royalty ....................................................................................... 5

        C.    None Of The Defendants' Attempts To Undermine The Court's Prior
              Rulings Is Persuasive .................................................................................... 6

IV.     CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Fromson v. Citiplate, Inc.*,
  886 F.2d 1300 (Fed. Cir. 1989) ............................................................................. 10

*Fromson v. Western Litho Plate & Supply Co.*,
  853 F.2d 1568 (Fed. Cir. 1988) ............................................................................. 10

*Fromson v. Western Litho Plate and Supply Co.*,
  1989 WL 149268 (E.D. Mo. 1989) ........................................................................ 10

*Medtronic, Inc. v. Boston Scientific Corp.*,
  2002 WL 34447587 (D. Minn. 2002) ....................................................................... 4

*Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.*,
  862 F.2d 1564 (Fed. Cir. 1988) ..................................................................... 6, 7, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Defendants should be precluded under Federal Rule of Evidence 403 from introducing evidence of Rambus's settlement agreement with Infineon and other agreements and negotiations that were affected by the *Infineon* rulings against Rambus. This Court has twice previously excluded this evidence from trial — in *Hynix I* and the January 2008 Conduct Trial — and should do so again here.

Because the rulings in *Infineon* against Rambus undermined the infringement, validity, and enforceability of the patents in suit, the Infineon settlement agreement and the renegotiations of Rambus's license agreements with Samsung, Mitsubishi, and Elpida in the wake of those rulings have little probative value, if any, as to what a reasonable royalty rate would have been, assuming Rambus's patents to be infringed, valid, and enforceable.

Moreover, any minimal relevance of the Tainted Agreements and Negotiations would be overwhelmed by the substantial prejudice to Rambus, confusion of issues, and consumption of time that would be required if the agreements or negotiations were allowed. Rambus would be forced to explain to the jury the history of the *Infineon* litigation and the adverse rulings that led to the renegotiations and Infineon settlement. For these reasons, the Court should exclude this evidence under Federal Rule of Evidence 403.[1]

### II. BACKGROUND

**A.  The Tainted Agreements and Negotiations Directly Resulted From The Infineon Rulings Against Rambus**

Rambus entered into SDR/DDR license agreements in 2000 with at least six

---

[1] Rambus has filed a motion on different grounds, *Daubert* and Rule 702, to preclude the Defendants' damages experts from relying on these agreements and negotiations because their methods of reliance are inconsistent with the legal principle that the patents are known to be infringed, valid, and enforceable in the hypothetical negotiation. *See* Rambus Inc.'s *Daubert* Motion No. 3 To Preclude The Manufacturers' Damages Experts From Relying On The Infineon Settlement Agreement, Certain Amended License Agreements, And Certain License Renegotiations (Oct. 24, 2008) (hereinafter "*Daubert* motion No. 3").

1    DRAM manufacturers, including Samsung, Mitsubishi, and Elpida. ████████

2    ████████████████████████████████████████████████████████████████

3    ████████████████████████████████   *See* Daubert Motion No. 3, at 2.

4            As detailed in Rambus's *Daubert* motion No. 3, a series of *Infineon* rulings

5    starting in 2001 severely undermined the perceived value of Rambus's patents.  The first such

6    ruling was the *Infineon* district court's narrow construction of Rambus's patent claims in March

7    2001.  *See id.* at 2-3.  That ruling was quickly followed by the district court's finding in May

8    2001 that Infineon did not infringe Rambus's patents as a matter of law based on its narrow

9    construction.  *See id.*  Dealing a third blow, the *Infineon* jury found in that same month that

10   Rambus committed fraud in connection with its standard-setting activities at JEDEC.  *See id.*

11           Samsung, Elpida, and Mitsubishi seized on these rulings in *Infineon* to redefine

12   their royalty obligations under the 2000 agreements.  *See id.* at 3-5. ████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████

21           Subsequent to the renegotiations with Samsung and Mitsubishi and during the

22   renegotiation period with Elpida, Rambus achieved some positive turns in its litigation —

23   namely the Federal Circuit *Infineon* appeal and the Administrative Law Judge's decision in the

24   FTC proceedings.  *See id.* at 5-6.  These developments, however, could not undo the damage that

25   the previous litigation events had done to Rambus's patent portfolio. ████████████

26   ████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████

1     ██████████████████████████████████████████████

2     ██████████████████████████████████████████████

3            Another adverse ruling in 2005 prompted settlement of the *Infineon* litigation.  In

4 March 2005, Judge Payne announced from the bench his intention to hold Rambus's patents

5 unenforceable on the basis of unclean hands. *See id.* at 6.  As described by Samsung's counsel in

6 the September 2008 trial, "Infineon had [Rambus] over a barrel." and Judge Payne's

7 announcement "forced [Rambus] to give a very good deal to Infineon" in order to avert further

8 disaster that might follow if Judge Payne made spoliation findings.  Ward Decl.[3], Ex. S (Oct. 1,

9 2008 trial transcript), at 1079:3-11; *see Daubert* motion No. 3, at 6.

10            It was in this environment in early 2005 that Samsung and Rambus attempted to

11 negotiate a new agreement to commence upon expiration of Samsung's 2000 license agreement in

12 June of 2005. *See id.* at 7.  In those negotiations, Samsung offered only a $3.5 million quarterly

13 payment. *See id.*  As explained by Jay Shim, Samsung's Vice President and General Patent

14 Counsel, Samsung offered that amount because of the "uncertainties regarding Rambus patents

15 and litigations."  Ward Decl., Ex. G (Sept. 24, 2008 trial testimony of Jay Shim), at 373:21-74:8;

16 *see Daubert* motion No. 3, at 7.  After the negotiations broke down, Rambus filed the present suit

17 against Samsung.

18 **B.**    **The Defendants May Seek To Use The Tainted Agreements And Negotiations To**
         **Prove A Reasonable Royalty**

19

20           Rambus anticipates that the Defendants will attempt to use evidence of the Tainted

Agreements and Negotiations at the upcoming January 2009 trial to prove the amount of a

21

reasonable royalty ████████████████████████████████████████████

22 ███████████████████████████████████████████████████

23

24 ███████████████████████████████████████████████

25 ███████████████████████████████████████████████████

26 ─────────────────────────────────────────────

[3] As used herein, "Ward Decl." refers to the Declaration of Bill Ward In Support of Rambus

27 Inc.'s Motion Under *Daubert* To Preclude The Manufacturers' Damages Experts From Relying
On The Infineon Settlement Agreement, Certain Amended License Agreements, And Certain

28 License Renegotiations (Oct. 24, 2008).

1   ████████████████████████████████   *See Daubert* motion No. 3, at 8-10.

2                                    **III. ARGUMENT**

3          The Infineon Settlement Agreement and other Tainted Agreements and

4   Negotiations should be excluded under Federal Rule of Evidence 403.  As discussed below, the

5   unfair prejudice to Rambus, risk of confusion, and consumption of time from allowing that

6   evidence would substantially outweigh any probative value the agreements might have.  *See, e.g.,*

7   *Medtronic, Inc. v. Boston Scientific Corp.*, 2002 WL 34447587, at 26 (D. Minn. 2002) (finding

8   "minimal probative value" of settlement negotiations "outweighed by the potential for needless

9   distractions of the jury from the principal issues of the case at hand, which are legion" where

10  settlement came from "complicated and unique circumstances" inconsistent with hypothetical

11  negotiation).

12  **A.     Evidence Relating To The Tainted Agreements And Negotiations Would Be Unduly
            Prejudicial To Rambus, Confusing, and Highly Consumptive Of Time**

13

14          Any reference to or evidence of the Infineon settlement agreement or its terms

15  would require Rambus to explain the circumstances of the settlement to the jury.  Exposing the

16  jury to Infineon's unclean hands claim and Judge Payne's oral announcement regarding that claim

17  — which is not an issue for the jury to decide — would necessarily cause Rambus tremendous

18  prejudice.  Moreover, presenting these issues to the jury may cause confusion among jurors as to

19  the issues in that case and the present one.  In addition, as this Court recognized when it excluded

20  the Infineon settlement agreement in *Hynix I* under Rule 403, "both sides would have to spend an

21  inordinate amount of time placing the Infineon litigation in context.."  Order on Patent Trial

22  Motions *In Limine*, Case No. C00-20905, Dkt. No. 1790 (Mar. 9, 2006), at 19.  For all of these

23  reasons, the Infineon settlement agreement and any reference to it should be excluded.

24          Likewise, if any of the renegotiated agreements with Samsung, Mitsubishi, and

25  Elpida were admitted, Rambus would need to explain the history and impact of the rulings in the

26  *Infineon* litigation in order to place the renegotiations in context.  This would necessarily put

27  Judge Payne's claim construction and non-infringement rulings and the *Infineon* jury's JEDEC-

28  related fraud decision before *this* jury.  As this Court found in *Hynix* I, "there is a severe risk that

1   the jury will be misled, confused, and that Rambus will be unfairly prejudiced if the Court admits

2   evidence of Rambus's alleged JEDEC wrongdoing." *Id.* at 15.  Therefore, the Court should

3   exclude any evidence of agreements affected by the adverse *Infineon* rulings, as it did in the

4   *Hynix I* patent trial.  *See id.* at 19; Jeffries Decl.[4] Ex. A (*Hynix* Patent Trial Tr.), at 949:3-949:22;

5   950:3-950:7; 952:15-952:22.

6          In opposition to Rambus's *Daubert* motion No. 3, the Defendants contended that

7   "the degrees to which economic conditions and litigation affected" the Tainted Agreements and

8   Negotiations should be decided by the jury.  *Daubert* Opp. at 10.[5]  But this would engender the

9   exact problems — prejudice, confusion, and undue consumption of time — that Rule 403 is

10  designed to avoid.  Therefore, the Defendants should not be permitted to present evidence of the

11  Tainted Agreements and Negotiations to the jury.

12  **B.     The Tainted Agreements and Negotiations Are Not Probative Of A Reasonable Royalty**

13         The prejudice, confusion, and undue consumption of time from allowing the

14  Tainted Agreements and Negotiations would dwarf any probative value they might have.  There

15  is little, if any, conceivable relevance to the Infineon settlement agreement, particularly given the

16  circumstances under which it was negotiated.  When this Court excluded the agreement in the

17  *Hynix I* patent trial under Rule 403, the Court correctly recognized the minimal relevance of the

18  agreement because it was negotiated in light of Judge Payne's imminent unenforceability ruling:

19

20         Because the Infineon license came after Judge Payne dismissed
           Rambus's patent claims on the basis of unclean hands, it stands in
21         stark contrast to the situation here, where Rambus has survived
           Hynix's unclean hands challenge.  This severely diminishes the
22         relevance of the Infineon license.

23  Order on Patent Trial Motions *In Limine*, Case No. C00-20905, Dkt. No. 1790 (Mar. 9, 2006) at

24  _____

25  [4] As used herein, "Jeffries Decl." refers to the Declaration Of Andrea Jeffries In Support Of
    Rambus's Motion *In Limine* No. 13 To Exclude Evidence Of Or Reliance Upon The Infineon
    Settlement Agreement, Agreements Affected By The Infineon Rulings, And Related Negotiations
    (filed concurrently with this motion).

26  [5] As used herein, "*Daubert* Opp." refers to Micron, Samsung, and Hynix's Opposition To
27  Rambus, Inc.'s *Daubert* Motion No. 3 To Preclude The Manufacturers' Damages Experts From
    Relying On The Infineon Settlement Agreement, Certain Amended License Agreements, And
28  Certain License Renegotiations (Nov. 14, 2008).

1  19.

2         Similarly, the Court excluded the renegotiated Samsung and Elpida agreements in

3  the *Hynix I* patent trial based on its "understanding [] that the renegotiation was affected, or

4  caused by, the <u>Infineon</u> litigation," an understanding that Hynix's counsel confirmed.  Ward

5  Decl., Ex. T (March 22, 2006 trial transcript), at 952:15-21.  During the 2008 Conduct Trial, this

6  Court again excluded the renegotiated Samsung and Elpida agreements and the *Infineon*

7  settlement, finding that they have no probative value of what a reasonable royalty would have

8  been, assuming Rambus's patents are valid, infringed, and enforceable:

9               [T]hese additional licenses have ***little, if any, relevance*** to what a
               ***reasonable*** and non-discriminatory ***royalty rate would have been***
10              ***assuming Rambus's patents are valid, infringed and enforceable***.
               The Infineon license was negotiated following a district judge's
11              announcement that he intended to dismiss Rambus's patent claims
               on the basis of spoliation of evidence.  The resulting royalty rate
12              ***has no probative value on what a reasonable*** and non-
               discriminatory license ***rate was for Rambus's technology***.
13              Similarly, the amended agreements with Elpida and Samsung were
               caused by the district judge's now-reversed claim construction and
14              the jury's now-reversed fraud verdict in the *Infineon* litigation.

15  Order Regarding Two Pending Trial Motions, Case No. CV-00-20905-RMW, Docket No. 3318,

16  at 5 (N.D. Cal. Feb. 26, 2008) (emphasis added).  Although this Court has not previously ruled on

17  the admissibility of the Mitsubishi renegotiated agreement, that renegotiation occurred under the

18  same circumstances as the Samsung renegotiation.  *See* Daubert Motion No. 3, at 4.  Therefore,

19  the Court's reasoning as to the Samsung and Elpida amendments applies equally to the Mitsubishi

20  renegotiated agreement.

21         This Court's previous rulings are consistent with numerous other cases holding

22  that agreements negotiated under circumstances inconsistent with the assumption of infringement,

23  validity, and enforceability have little, if any, probative value of a reasonable royalty.  *See, e.g.,*

24  *Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.*, 862 F.2d 1564, 1572 (Fed. Cir. 1988)

25  (distinguishing "highly probative" value of a royalty after the patent was found valid and

26  infringed, from cases discounting the probative value of a license that "was negotiated against a

27  backdrop of continuing litigation and . . . infringement of the . . . patent").

28

**C.** **None Of The Defendants' Attempts To Undermine The Court's Prior Rulings Is Persuasive**

In opposition to Rambus's *Daubert* motion No. 3, the Defendants asserted various theories of relevance for the Tainted Agreements and Negotiations, but none are persuasive. Hynix, Micron, and Samsung argued that the Tainted Agreements and Negotiations reflect, in part, economic conditions that existed at the time of the hypothetical negotiations. *See Daubert* Opp., at 7-10. But this argument, even if it were true (which it is not, as explained below), does not make the Tainted Agreements and Negotiations probative of a reasonable royalty. It is the taint of results *adverse* to Rambus in litigation that renders the agreements of little probative value. *See Studiengesellschaft*, 862 F.2d at 1570-72.

Furthermore, the Defendants are wrong that the Tainted Agreements and Negotiations reflect economic conditions. There is no evidence that, in the absence of the adverse litigation rulings, the Tainted Agreements would have existed, or the terms of the agreements would have been what they were.

The 2005 Infineon settlement agreement clearly was driven by adverse events in the litigation – *i.e.*, events that are flatly inconsistent with the assumption of validity, infringement, and enforceability that underlie the hypothetical negotiation. As described by Samsung's counsel in the September 2008 trial, the terms of the settlement were dictated by Judge Payne's imminent harmful litigation ruling: "Infineon had [Rambus] over a barrel . . . they were trying desperately to avoid Judge Payne entering spoliation findings that would have had collateral estoppel effect everywhere else, and that's why they were forced to give a very good deal to Infineon." Ward Decl., Ex. S (Oct. 1, 2008 trial transcript), at 1079:4-11.

With respect to the 2001 Samsung amendment, Samsung's own statements establish that the amendment was the result of the rulings against Rambus in *Infineon*. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Similarly, Mr. Shim recently testified before this Court that Samsung's renegotiation was driven by the uncertainties around Rambus's patents as a result of

1   the *Infineon* litigation.  *See, e.g., id.*, Ex. G at 431:14-434:2 (Sept. 24, 2008 trial transcript) (Jay

2   Shim testifying that in the late 2000-early 2001 time frame Samsung had strong concerns about "a

3   patent enforceability issue . . . it was mostly about the facts coming out from the Infineon

4   litigation and other litigations, fraud issues, and I think subsequently, I don't know whether it was

5   right at this time, the unclean hands issues.  These go more to the fundamentals of whether or not

6   we can do a license under that circumstances.").

7   ████████████████████████████████

8   ██████████████████████████████████████████████

9   ███████████████████████████████████████████████████

10  ██████████████████████████████████████████████

11  ████████████████████████████████████████████

12  ██████████████████████████████████████████

13  ████████████████████████████████████████

14  █████████████████████████████████████

15  ████████████████████████████████████████████████

16  ███████████████████████████████████████████████████

17  ███████████████████████████████████████

18  ██████████████████████████████████████████████

19  ████████████████████████

20          The Mitsubishi renegotiation likewise occurred because of the *Infineon* rulings,

21  and none of the Defendants have suggested otherwise.  *See Daubert* Opp. at 9 (arguing that the

22  economic conditions at the time of the Mitsubishi amendment "would have been close to the

23  conditions" at the time of Micron's hypothetical negotiation, but no argument that economic

24  conditions precipitated the Mitsubishi amendment); Nanya's *Daubert* Opp. (no mention of the

25  Mitsubishi amendment).[6] █████████████████████████████

26  ────────────────────────

27  [6] As used herein, "Nanya's *Daubert* Opp." refers to Nanya Technology Corporation's And Nanya
    Technology Corporation USA's Opposition To Rambus Inc.'s *Daubert* Motion No. 3 To Preclude

28  Dr. Robert E. Hall's Opinions Based On The 2004 Elpida Agreement And The 2001 Samsung
    Agreement (Nov. 14, 2008).



9    Hynix's

10  counsel acknowledged to the Court in the 2006 *Hynix I* trial that the Elpida renegotiation "was

11  affected, or caused by, the <u>Infineon</u> decision." Jeffries Decl., Ex. A (Hynix Patent Trial Tr.), at

12  952:15-952:22.

19  In its opposition to Rambus's *Daubert* motion No. 3, Nanya challenged the extent

20  to which litigation impacted the Elpida amendment. Nanya's *Daubert* Opp., at 14-17. Nanya

21  contended that "[t]he evidence Nanya will present at trial will show that Rambus believed in 2004

22  that its position was quite strong." *Id.* at 15. But Nanya offered *no* evidence to show that *Elpida*

23  believed that Rambus's position was "quite strong" under the circumstances. *Id.* at 14-17.

26  Nanya also suggested that "the various legal challenges against [Rambus] had been

27  resolved in its favor by 2004" because the Federal Circuit's *Infineon* decision in 2003 held that

28  Rambus was not liable for fraud and that its patent claims should not be narrowly construed, and

RAMBUS'S MOTION IN LIMINE NO. 13 TO EXCLUDE
TAINTED AGREEMENTS AND NEGOTIATIONS;
CASE NOS. 05-334 RMW; 05-2298 RMW; 06-244 RMW

1   the ALJ found in 2004 that Rambus had not violated section 2 of the Sherman Act. *Id.* at 15.

2   But this argument ignores that the previous adverse litigation rulings had irreversible effects on

3   the market. ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████

7   ████████████

8   ███████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████ "In determining the true measure of a

11  reasonable royalty, a court should not select a 'diminished royalty' rate a patentee may have been

12  forced to accept 'by the disrepute of his patent and the open defiance of his rights.'" *Fromson v.*

13  *Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1577 n.15 (Fed. Cir. 1988) (*Fromson I*)

14  (internal quotations and citation omitted), *overruled on other grounds, Knorr-Bremse Systeme*

15  *Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004). On remand from

16  *Fromson I*, the patentee, Fromson, moved to exclude "evidence of offers to license or licenses of

17  the Fromson patent" that the alleged infringer proffered as indicative of a reasonable royalty rate.

18  *Fromson v. Western Litho Plate and Supply Co.*, 1989 WL 149268, at 2 (E.D. Mo. 1989)

19  (*Fromson II*). The district court found that this evidence had "minimal probative value" and

20  reasoned that "[t]he probative value of these offers should be discounted because the offers

21  occurred in an atmosphere of widespread infringement." *Id.* at 3. On appeal, the Federal Circuit

22  affirmed the district court's refusal to consider this evidence, citing footnote 15 from its decision

23  in *Fromson I. See Fromson v. Citiplate, Inc.*, 886 F.2d 1300, 1303 (Fed. Cir. 1989) (*Fromson*

24  *III*).

25  Like the offers and licenses in *Fromson*, the Elpida renegotiations and amendment

26  have minimal probative value because Rambus's patents were in a state of disrepute following the

27  numerous adverse rulings since 2001 and because a number of manufacturers had persisted in

28  openly defying its patent rights. ██████████████████████████████████

- 10 -

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████ The

3 diminished royalty rate that Rambus was forced to accept under these conditions is not probative

4 of a reasonable royalty rate.

5 ### IV. CONCLUSION

6 
7    For the foregoing reasons, Rambus respectfully requests that the Court preclude

the Defendants from introducing evidence of, having their experts rely upon, or otherwise making

8 any reference to the 2001 Rambus-Samsung amended license agreement, the 2002 Rambus-

9 Mitsubishi Interim Agreement, the 2004 Rambus-Elpida Amended License Agreement, the 2005

10 Infineon Settlement and License Agreement, the 2005 Samsung offers and counteroffers, or any

11 negotiations pertaining to any of these agreements.

12 
13 DATED:  December 3, 2008      MUNGER, TOLLES & OLSON LLP

14                  SIDLEY AUSTIN LLP

15                  McKOOL SMITH PC

16 
17            By:     */s/ Andrea Weiss Jeffries*

18                  Andrea Weiss Jeffries

19            Attorneys for Plaintiff RAMBUS INC.

20 
21 
22 
23 
24 
25 
26 
27 
28 

RAMBUS'S MOTION IN LIMINE NO. 13 TO EXCLUDE
TAINTED AGREEMENTS AND NEGOTIATIONS;
CASE NOS. 05-334 RMW; 05-2298 RMW; 06-244 RMW